EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kamme O<br>3503 Winding Road<br>Hearne, TX 77859 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 31C-2015-01426 | **Gerard Ladera,**<br>**Investigator** | **(713) 651-4945** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____

**Rayford O. Irvin,**
**District Director**

SEP 2 1 2017

*(Date Mailed)*

Enclosures(s)

cc:
Joni E. Baker
Director, Equal Opportunity & Diversity
TEXAS A & M UNIVERSITY
301 Tarrow St., John B. Connally Bldg., Room 605A
College Station, TX 77840

Lowell Keig, Executive Director
TWC / Civil Right Division
101 E. 15th Street, Room 144-T
Austin, TX 78778

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Texas Workforce Commission, Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Kamme O** | **(979) 575-1091** | ▓▓▓▓▓ |

| Street Address | City, State and ZIP Code |
|---|---|
| **350❚ Winding Road** | **Hearne, TX 77859** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Texas A&M University, Environmental Health & Safety** | **15+** | **(979) 845-2132** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1111 Research Pkwy. TAMU 4472** | **College Station, TX 77843-4472** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☒ SEX | ☒ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | ☐ DISABILITY | ☒ OTHER *(Specify below.)* **TCHRA** | |

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **4/21/15** | |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  PERSONAL HARM: I have been and continue to be discriminated against and set up for failure.

II.  RESPONDENT'S REASON FOR ADVERSE ACTION: No reason given.

III.  DISCRIMINATION STATEMENT: I believe that I have been and continue to be discriminated against, in violation of Title VII of the 1964 Civil Rights Act, as amended, the Texas Commission on Human Rights Act, and the Age Discrimination in Employment Act, as amended, because of my age (49), my gender (female), my religious beliefs and in retaliation for my ongoing complaints of gender discrimination.

I began working for Texas A&M University August 13, 1992, presently with TAMU Environmental Health & Safety since September 1999, as a Fire Inspector. I have always performed my position in a professional, proficient and courteous manner. My employment situation dramatically changed on or about April 21, 2015, when I learned that there was going to be a restructuring of the Environmental Health and Safety Department via the EHS monthly staff meeting. It appears that I was the only employee uninformed of the restructure before the staff meeting. Under the restructuring plan, I was moved out of my group in Fire & Life Safety and out of my Fire Inspector III position and put into the position of Occupational Safety Inspector III in the Occupational group. I have no experience or certifications that the new position description requires and I believe that I was moved into that position in an attempt to set me up for failure and in retaliation for my ongoing complaints of *****TEXT CONTINUES ON NEXT PAGE*****

| | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT *[signature]* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* **June, 17, 2015** |
| **6-17-15** Date   *[signature]* Charging Party Signature | ASHLEY CONTRERAS NOTARY PUBLIC STATE OF TEXAS COMM. EXP. 10/28/2017 NOTARY WITHOUT BOND |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| Texas Workforce Commission, Civil Rights Division | | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

gender, age and religious discrimination. Also, I am the only employee at EHS that is certified for Pyrotechnics and Flame Effects, since 2005, renewed annually – even though I have never been trained, asked or included in any permit given at TAMU by EHS ever. I've asked, but James Rainer, Assistant Director-Fire/Life Safety/Environmental Compliance insists he be the one.

Over the past 15 years I have been very clear about my interest in learning and advancing in my position with TAMU EHS. I believe that throughout my employment I have been discriminated against by James Rainer, my supervisor, because of my gender, while his supervisors enabled him. I've met with two different directors in the past 15 years about my concerns of this, and the behavior not only continued, James Rainer has been promoted numerous times: Fire Safety Supervisor, Fire Safety Manager, and EHS Assistant Director. Mr. Rainer continually promotes and trains male employees and ignores me. Mr. Rainer often stands in the door of the office across the hall and talks to the men but totally ignores me and only communicates with me when he absolutely has to. I believe Mr. Rainer purposely moved the men out of the office with me to the interior office across the hall to isolate me. When I have asked Mr. Rainer for copies of my own code books which are relevant to my position and my male counterparts have, Mr. Rainer tells me to "just borrow his". While Mr. Rainer was my hiring supervisor, he clearly hired me specifically for inspecting the female Resident Hall rooms and intended for me to apply for the position with Resident Life when it was created, but I did not and have been observing men get promoted over and over and then leave TAMU.

After the first Res Life inspection 1999, Mr. Rainer had no plan for me when we returned from the Christmas holiday. When I asked what I was to do next? He put me off. After about 2 weeks of surfing on the computer, waiting for direction, I went and told him that I can learn, if he would just show me. He then looked at a pile of papers stacked on the floor behind his desk and asked me if I could put those in numerical order.

Beginning in 2008 I applied for the Construction Supervisor position four separate times, which I believe I am highly qualified for, but I was only given one interview (after having met with two different Directors in-between) Christopher Meyer and John Salsmam. Christopher Meyer was present for both meetings, the second one as a witness, his title had changed to Vice President – then the position was put on hold, remodeled and then Adam Chavarria received it. I was told by Mr. Rainer that I was not considered for the Construction Supervisor position because I don't have construction experience, which is false. I reminded Mr. Rainer that I have a U.S. Department of Labor Carpenter Apprenticeship Certificate that I received for my participation in a Carpenter program hosted at TAMU – by pointing to it on the wall behind me. Men that did not have construction experience were considered for the position, hired and trained. The second time I did not get an interview, James Rainer asked me to give my Fire Inspector Certification study notes to the man Nathan Jennings that he did hire, that did not have that certification, but he did have Minor League BASEBALL experience and Mr. Rainer loves baseball.

## *****TEXT CONTINUED ON NEXT PAGE*****

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. **SIGNATURE OF COMPLAINANT** *Ashley Contreras* |
| 6-17-15 *Date*     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* June, 17, 2015 |



ASHLEY CONTRERAS
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 10/28/2017
NOTARY WITHOUT BOND

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Texas Workforce Commission, Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

Adam Chavarria (approximately 28 years old) is currently in the FLS Construction Supervisor position. Mr. Chavarria went from being a student worker with no Fire Inspection experience right into a Fire Inspector II position and then promoted into the Construction Supervisor position a year after that. Mr. Chavarria had no experience or training and I believe that he was selected for the promotion because he is a young male with similar student worker background like Mr. Rainer.

I also interviewed for what would have been my promotion in 2010 and it was instead given to the part-time FLS Inspector, Richard Fegan, that had less than 2 years TAMU experience and no Resident Life inspection experience, when I had 11 years Resident Life Inspection experience and 7+ years TAMU campus experience.

Since beginning my employment with EHS in 1999, I have never been asked to escort the State Fire Marshall, as male employees are asked to do (John Fellers, Derek Milner, Brian Poplin, Chris Beasley, Jeff Kirkwood, Cary McCarroll, Jarvis McKyer, Richard Fegan, Brent Jemelka, Jorge Garza, Chris Kelly, Danny Lackey, David Zeiger, Derek Philips, Jacob Daily, Eric Falke, Nathan Jennings, Adam Chavarria, Corey Schultz, have all been asked.) I have not been asked or trained to look over building plans, as males employees mentioned, are asked to do. I have been left out of training opportunities and promotions because Mr. Rainer treats the men in my department in a much more favorable manner – taking them with him to conferences out of state (John Fellers, Cary McCarroll, Jorge Garza, Jeff Kirkwood, Richard Fegan, Derek Milner, Derek Philips, and David Zeiger have all gone to out of state conferences).

In 2013, there was an update to the titles and position descriptions – Mine changed from "Safety Specialist" to "Fire Inspector III". The position description reads that I am to be the point of contact in the absence of the Fire Manager, but I have not been allowed to learn my position. Even when the current manager vacated in February of 2014 (before he left, he suggested I find another job), Mr. Rainer told the Fire Inspector I and II's to report to him, not me. Fifteen years I have done nothing but inspections and I basically trained myself – James Rainer has never offered to train me or include me, but he did tell me that I am "too thorough" in or about mid-2000. The past two years I have BCC the emails I sent to Mr. Rainer, to the current Director, Christina Robertson also and she only enabled this "restructure".

I believe that my religious beliefs concerning what happens after death make Mr. Rainer uncomfortable. Several years ago, October 27, 2006, Mr. Rainer told me that I "should leave God at home," in front of my then manager, John Fellers. Mr. Rainer has made me feel shunned because of my religious beliefs/experiences and has said that I offended someone at work regarding my beliefs but he has never given me any specifics. It is as if EHS (Christopher Meyer, John Salsman, Christina Robertson, Richard Fegan, John Fellers, Jeff Kirkwood, Adam Chavarria, David Zeiger, Jacob Daily, Jorge Garza, Chris Beasley, Cary McCarroll, Brent Jemelka, Chris Kelly, Danny Lackey, Eric Falke, Nathan Jennings – basically everyone in management) believes whatever Mr.

*****TEXT CONTINUED ON NEXT PAGE*****

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 6-17-15 _____<br>Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*<br><br>June, 17, 2015 |

ASHLEY CONTRERAS
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 10/28/2017
NOTARY WITHOUT BOND

## CHARGE OF DISCRIMINATION

* This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Texas Workforce Commission, Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

Rainer says about me and is afraid of what they think people will think of me, but no one asks me. And I am excluded.

April 21, 2015 I learned of the EHS plan to restructure the department during the EHS staff meeting, while the other employees had been informed the day before, by their supervisors. I only received a phone call at 7:22am by David Zeiger, FLS Assistant Manager, the day of the EHS Staff meeting announcement and was not given any specifics.

April 26, 2015, I emailed Sheri Yetter, TAMU HR a 4 page letter asking for an investigation of James Rainer and Environmental Health & Safety. (I had met with her January 2014 also – but I did not submit a complaint because this is emotionally exhausting.) April 28, 2015, I was told by Brad Urbanczyk, EHS Assistant Director, that I would be relocating to an interior office after 15 years of being at that same desk by the window (with many plants) on May first.

May 1, 2015 I was told I needed to move from my desk immediately and there was a line of people including, John Fields, Eric Falke, Babette Perkins, Swati Kale, David Zeiger, Tracy Smith, Jacob Daily, Sergio Luna, Michael Bowe, waiting to move my things. It was like a fire drill. My things were moved in just over an hour – as soon as I arrived on May first. The desk was also removed completely and that corner is currently vacant. EHS moved my best friend Babette Perkins, Environmental Health & Safety Specialist III into the desk right next to where my desk was located for 15 years and me into her previous desk. When she asked if she could sit by the window, she was told that corner is to remain empty. Currently I am sitting in a dark area with very bad lighting and I gave my plants to my friend.

May 4, 2015, I met with Sheri Yetter, TAMU Human Resources Administrator. I was told the investigation should take 15 days from the date that I submitted the form I was given from her that day, unless they requested more time.

May 7, 2015, was the first time in 15 years my annual evaluation meeting with David Zeiger, FLS Assistant Manager was witnessed by Christina Robertson, EHS Director. And there were items I disagreed with last year that affected this year's.

May 8, 2015, I submitted the first of three complaints to Sheri Yetter, TAMU HR, about the assorted discriminations.

May 12, 2015, I noticed my position title had been changed from Fire Inspector III to Occupational Safety Inspector III when I went online to the TAMU SSO login. When I researched that position description I learned that I do not have the required certifications or education to be an Occupational Safety Inspector III. So far, absolutely no one as EHS has even mentioned the title and position change to me.

*****TEXT CONTINUED ON NEXT PAGE*****

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

6-17-15

Date

Charging Party Signature

**NOTARY** – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Ashley Contreras

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(*month, day, year*)

June, 17, 2015

ASHLEY CONTRERAS
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 10/28/2017
NOTARY WITHOUT BOND

# CHARGE OF DISCRIMINATION

- This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Texas Workforce Commission, Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

May 14, 2015, I submitted a second complaint to Sheri Yetter, TAMU HR, concerning sections of my 2014 annual evaluation being retaliation.

May 20, 2015, I submitted a third complaint to Sheri Yetter, TAMU HR, concerning my position and title having been changed without notice or reason to me. And how I do not have the required education or certifications for the Occupational position.

May 27, 2015, as part of the CPR Training Group I received an award at the Awards Banquet -- They announced my years of service as "14 years" instead of "15+ years EHS, 23+ years total years of service" the way others were announced. We were also not informed we were even being given an award or told to make sure to BE THERE.

May 28, 2015, my open records request from TAMU was due and did not arrive.

May 29, 2015, I emailed and inquired about the records request and the response letter I received from Trevor Poremba, Legal Assistant II, Office of General Counsel, tporemba@tamus.edu (979) 458-6136 referred to me as "Mr. O" and pushed the next information request due date to June 11, 2015.

June 2, 2015, for the first time in an EHS Staff meeting slides played in the background during the meeting — All of them with "INTEGRITY" themes and after that a PowerPoint presentation of the results, including the employee comments of a Climate of the Department survey conducted February 26, 2015 that was told to be "Confidential".

June 5, 2015, I received a letter from the Division of Finance & Administration, Human Resources informing me that my request for an investigation submitted May 8, 2015 has been approved.

I believe that I have been and continue to be discriminated against because of my gender, my age, my religious beliefs and in retaliation for registering complaints regarding gender discrimination.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

6-17-15
Date

Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Ashley Contreras

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

June, 17, 2015

ASHLEY CONTRERAS
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 10/28/2017
NOTARY WITHOUT BOND

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 1A15782 AMENDED |
| | [X] EEOC | 31C-2015-01426 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

## AMENDMENT

I wish to amend Charge No. 31C-2015-01426 to include that on or around January 29, 2016, I was informed by Christina Robertson (Director), Brad Urbanczyk (Assistant Director), Swati Kale (Supervisor) and John Fields (Supervisor) that I was fired from my employment due to unsatisfactory work performance. I believe that this action is pretextual and that my firing is in retaliation to my complaints of gender discrimination and the filing of the EEOC charge.

I believe I was terminated from my employment in retaliation for filing complaints of employment discrimination and for filing a charge of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act (ADEA) of 1967, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2/6/16 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* February 6, 2016 |
| Date        Charging Party Signature | |

JAIME GOODMAN
Notary Public, State of Texas
My Commission Expires
APRIL 16, 2019

AggieCarpenterMom@gmail.com                    EEOC 31C-2015-01426: Kamme O VS Texas A&M University

## 1999-2016 Overall Evaluations:

Volunteered to draw cartoons for Safety Dispatch Newsletter. (2006-2010)

| | | | |
|---|---|---|---|
| **1999-2000** | Safety Tech I | Exceeds | James Rainer |
| **2000-2001** | Safety Tech I | Exceeds | James Rainer |
| **2001-2002** | Safety Tech I | Exceeds | James Rainer |
| **2002-2003** | Safety Tech II | Exceeds | James Rainer |
| **2003-2004** | Safety Tech II | Exceeds | James Rainer |
| **2004-2005** | Safety Tech II | Exceeds | James Rainer |
| **2005-2006** | Safety Tech II | Exceeds | James Rainer |
| **2006-2007** | Safety Tech II | Exceeds | John Fellers |
| **2007-2008** | Safety Specialist | Meets | John Fellers |
| **2008-2009** | Safety Specialist | Meets | John Fellers |
| **2009-2010** | Safety Specialist | Meets | John Fellers |
| **2010-2011** | Safety Specialist | Meets | Richard Fegan |
| **2011-2012** | Safety Specialist | Exceeds | Richard Fegan |
| **2012-2013** | Safety Specialist | Exceeds | Richard Fegan |
| **2013-2014** | Fire Inspector III | Exceeds | James Rainer |
| **2014-2015** | Fire Inspector III | Achieves | David Zeiger |
| **2015-2016** | Occupational Safety Inspector III | Termination 02-12-2016 | Swati Kale |



July 7, 2007 – KammeO meets with EHS Director Christopher Meyer about JAMES RAINER telling her, "the reason she did not get an interview for the CONSTRUCTION FIRE SAFETY" position is because she does not have CONSTRUCTION experience.

COPY

### Texas A & M University - Physical Plant Department
### Apprenticeship Program
### Bi-monthly Performance Reports
### Fiscal Year 1996

NAME *Kamme Wilson*                    FOR THE MONTHS OF JAN. / FEB.
APPRENTICE LEVEL - ①II III IV          WORK CENTER *C C I*
TRADE *Carpenter*

Taking into consideration the apprentice's training status and experience, please circle the appropriate rating below on a scale from 1 (Lowest) to 10 (Highest).

#### Trainer

**Ability to receive required training**

Low    1    2    3    4    ⑥    7    8    9    10    High

**Knowledge and skills in performing the job**

Low    1    2    3    ⑤    4    6    7    8    9    10    High

**Interest and enthusiasm in performing the job**

Low    1    2    3    4    5    ⑥    7    8    9    10    High

**Manner in which instructions are carried out**

Low    1    2    3    4    5    6    ⑦    8    9    10    High

**Manner and degree in which responsibility is accepted**

Low    1    2    3    4    5    ⑥    7    8    9    10    High

**Quality and quantity of work completed**

Low    1    2    3    4    5    6    ⑦    8    9    10    High

**Care of University owned tools, equipment, and vehicles**

Low    1    2    3    4    5    6    ⑦    8    9    10    High

**Condition and neatness of serviced area after a job is completed**

Low    1    2    3    4    5    6    ⑦    8    9    10    High

**Safety habits**

Low    1    2    3    4    5    6    ⑦    8    9    10    High

**Grooming and dress**

Low    1    2    3    4    5    ⑥    7    8    9    ⑩    High

#### Supervisor

**Interest and enthusiasm in performing the job**

Low    1    2    3    4    ⑤    6    7    8    9    10    High

**Manner and degree in which responsibility is accepted**

Low    1    2    3    ④    5    6    7    8    9    10    High

**Care of University owned tools, equipment, and vehicles**

Low    1    2    3    4    ⑤    6    7    8    9    10    High

**Congenial working relationship and cooperation with other employees**

Low    1    2    3    4    ④    5    6    7    8    9    10    High

**Tardiness and absence record**

Low    1    2    3    4    ⑤    6    7    8    9    10    High

**Adherence to Department / University rules and regulations**

Low    1    2    3    4    ⑤    6    7    8    9    10    High

### Use reverse side for comments & remarks

G9b AN/FEB

**Trainer Comments:** (Required when blocks 1, 2, 3 or 8, 9, 10 are circled)._____

_____

_____

_____

_____

**Trainer Remarks:** (Required in all cases. Stress strong and weak points not covered above).____

_Trainee is improving on her Tasks_
_But visits To often with other Employees?_
_She is a Good worker and is well Liked_
_By others, I THINK she will continue To_
_Im Prove as Time Goes By._

**Supervisor Comments:** (Required when blocks 1, 2, 3 or 8, 9, 10 are circled)._____

_____

_____

_____

_____

**Supervisor Remarks:** (Required in all cases. Stress strong and weak points not covered above).

_KAMME MAY TALK TO MUCH ON JOB!_
_~~BEING FEMALE SHE IS A DISTRACTION TO MALE~~_
_~~EMPLOYEES ON JOB !~~_
_I THINK HER LEARNING ABILITY IS AVERAGE!_

_____

JAMES Coyle          BILL COURTNEY          Kamme O. Wilson
Trainer's Name (print)    Supervisor's Name (print)    Apprentice's Name (print)

_James Coyle_        _Bill Courtney_

## Texas A & M University - Physical Plant Department
### Apprenticeship Program
### Bi-monthly Performance Reports
### Fiscal Year 1996

NAME _Ramme Wilson_                    FOR THE MONTHS OF MAY/JUNE
APPRENTICE LEVEL ①II III IV            WORK CENTER _CAR_
TRADE _CAR_

Taking into consideration the apprentice's training status and experience, please circle the appropriate rating below on a scale from 1 (Lowest) to 10 (Highest).

### Trainer

Ability to receive required training
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Knowledge and skills in performing the job
L o w   1   2   3   4   5   6   ⑦   8   9   10   High

Interest and enthusiasm in performing the job
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Manner in which instructions are carried out
L o w   1   2   3   4   5   6   ⑦   8   9   10   High

Manner and degree in which responsibility is accepted
L o w   1   2   3   4   5   6   ⑦   8   9   10   High

Quality and quantity of work completed
L o w   1   2   3   4   5   6   ⑦   8   9   10   High

Care of University owned tools, equipment, and vehicles
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Condition and neatness of serviced area after a job is completed
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Safety habits
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Grooming and dress
L o w   1   2   3   4   5   6   7   8   ⑨   10   High

### Supervisor

Interest and enthusiasm in performing the job
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Manner and degree in which responsibility is accepted
L o w   1   2   3   4   5   ⑥   7   8   9   10   High

Care of University owned tools, equipment, and vehicles
L o w   1   2   3   4   5   ⑥   7   8   9   10   High

Congenial working relationship and cooperation with other employees
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Tardiness and absence record
L o w   1   2   3   4   5   6   7   ⑧   9   10   High

Adherence to Department / University rules and regulations
L o w   1   2   3   4   5   6   ⑦   8   9   10   High

### Use reverse side for comments & remarks

MAY/JUNE 1996

**Trainer Remarks:** (Required in all cases. Stress strong and weak points not covered above).

Kammie works well with others and performs all work asigned to Her to the best of her ability She is very willing to learn every thing she can about the Carpenter Trade.

**Supervisor Comments:** (Required when blocks 1, 2, 3 or 8, 9, 10 are circled).

As trainee learns more about the carpentry trade, the higher her interest and enthusiam goes. Trainee gets along well with coworkers and customers. Tardiness or absence is not a problem.

**Supervisor Remarks:** (Required in all cases. Stress strong and weak points not covered above).

Kammie is a hard and courteous worker as is related to me by the people she works with as well as the customers she has worked for. Any weak points of the trainee are not apparent to me at this point.

JAMES COYLE
Trainer's Name (print)

Sam Young
Supervisor's Name (print)

Apprentice's Name (print)

James Coyle
Trainer's Signature

Samuel Young
Supervisor's Signature

KAMME O. WILSON
Apprentice's Signature



# The United States Department of Labor

## Bureau of Apprenticeship and Training
## Certificate of Completion of Apprenticeship

*This is to certify that*

### Kamme Owens Wilson

*has completed an apprenticeship for the occupation*

### Carpenter

*under the sponsorship of*

### Texas A&M University - Physical Plant Department

*in accordance with the basic standards of apprenticeship*
*established by the Secretary of Labor*

Assistant Vice President for Physical Plant

Apprenticeship Supervisor

Apprenticeship and Training Representative

**August 24, 1998**
Date Completed

Secretary of Labor

Director, Bureau of Apprenticeship and Training





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**SAN ANTONIO DISTRICT OFFICE**
5410 Fredericksburg Road - Suite 200
San Antonio, Texas 78229

Office: (210) 2..
FAX (210) 281-7..
TDD (210) 282-7610
WebSite: www.eeoc.gov

Kamme O. Wilson
7122 East Old San Antonio Road
Bryan, TX 77808

RE: Texas A & M University

Dear Ms. Wilson:

The Commission is in receipt of your March 16, 2000, letter regarding your employment with the above referenced employer.

The Civil Rights Act of 1964, as amended, has a 300 day statute of limitations based on the date your allegations are received by this office. You letter was received on March 20, 2000. Therefore, the statute of limitations has expired regarding any/all issues which occurred prior to May 24, 1999.

1. <u>For each incident</u> of harassment which occurred <u>on or after May 24, 1999</u>, provide:

   a. Date of incident.

   b. Identify the individual (name and position title) who subjected you to harassment.

   c. Explain exactly what the individual did or said that you believe is harassment.

   d. Identify witnesses to the harassment (name and position title).

   e. Explain <u>why</u> you believe the harassment was <u>because of your sex, female.</u>

   f. Explain whether your employer has a policy prohibiting harassment. If so, explain how that policy states you are to report incidents of harassment.

   g. Explain whether you reported the harassment to any supervisor or management official. If so, <u>and for each time you reported the harassment,</u> provide the date; the name and position title of the supervisor or management official to whom you complained; explain exactly what you complained about; and explain what action was taken.

Kamme O. Wilson
Page 2

2. <u>For each incident</u> of sexual harassment which occurred <u>on or after May 24, 1999,</u> provide:

    a.    Date of incident.

    b.    Identify the individual (name and position title) who subjected you to sexual harassment.

    c.    Explain exactly what the individual did or said that you believe is sexual harassment.

    d.    Identify witnesses to the sexual harassment (name and position title).

    e.    Explain whether your employer has a policy prohibiting sexual harassment. If so, explain how that policy states you are to report incidents of sexual harassment.

    f.    Explain whether you reported the sexual harassment to any supervisor or management official. If so, <u>and for each time you reported the sexual harassment,</u> provide the date; the name and position title of the supervisor or management official to whom you complained; explain exactly what you complained about; and explain what action was taken.

Upon receipt of the above information, a Charge of Employment Discrimination will be prepared and forwarded to you for your review, date, signature, and return to the Commission.

Sincerely,

_3/21/00_
Date

John A. Ahlstrom
Investigator
(210) 281-7651

Kamme O
Fire Inspector III
Environmental Health & Safety, Texas A&M University
1111 Research Parkway MS#4472
College Station, Texas 77843-4472
Cell: 979-575-1091
Work: 979-862-4040
kammeo@tamu.edu

Sheri Yetter, SPHR
Human Resources Administrator
750 Agronomy Road, Suite 1201
1255 TAMU
College Station, Texas 77843-1255
979-862-3331
sby@tamu.edu

Sunday, April 26, 2015

To whom it may concern,

Tuesday, April 21, 2015 I received a phone call at home, at 7:22am, from my current supervisor Dave Zeiger. He said he was calling to let me know that there is going to be a restructuring of EHS and it will be announced in the morning meeting. That he had to meet with the state fire marshal and would not be in the meeting. That he wasn't sure of all the specifics, they would tell us in the meeting. That he was calling to tell me so I wouldn't be blind-sided in the meeting. It is unclear why I was not informed on Monday as my coworkers were?

I went to work as usual. The EHS meeting began at 8:30am.  (My hours are 8:30-5:30 M-F.) When the subject of the EHS "restructuring" was discussed there was no mention of specifics. So, I raised my hand and asked Christina Robertson, "When will we know the specifics?" She was clearly uncomfortable, and looked directly to James Rainer, who also squirmed uncomfortably. She said, "I thought you were called this morning?" I said, "I was. Dave phoned me, but he didn't explain past there is a restructure plan. When and how will I know the details?"  I honestly don't remember if she said anything after that or what – Jeff Truss was beside me and showed me a copy of the PDF of the restructure plan and I was SO blown away by what I saw, it's taken me all week to try and decide what to do, what to write, what to ask.  The seven day window to file a complaint is near – so here I am.

The restructure plan moves me out of the FLS (Fire & Life Safety) group and lists me under Brad Urbanczyk instead of James Rainer. It leaves the other full-time FLS budgeted employees all working for

Page **1** of **5**

James Rainer. The title has been updated to read "Construction FLS". I have fifteen years working with the FLS group; of the three employees listed under "Construction FLS": Adam Chavarria began as a student worker checking fire extinguishers, was hired as a Safety Technician II September of 2013 and then promoted to Assistant Manager over construction 10-31-2014. (A position I have applied for 3 times, only receiving an interview once & that year the position was not filled but then reconfigured and posted again. I applied again under the new positon description, but never heard anything. The position sat vacant again for some time. It was re-posted again, I did not have the emotional energy to apply – nor do I remember even being aware that the construction position had been posted again, as I am generally often left out of FLS communications.   The first time I did not get an interview for the FLS Construction position James Rainer came into my office and told me it was "because I didn't have any construction experience." And I pointed him to the USA Department of Labor Certificate that reads CARPENTER on my office wall.  He got flustered and left the room. That was like 2008/2009.  The year Nathan Jennings got the FLS Construction position James Rainer actually came into my office and asked if I would give Nathan a copy of my Fire Inspector I certification study notes – because Nathan didn't have that certification that I already had, yet I wasn't given an interview for the position Nathan was hired to do.) Unlike me, Derrick Milner, Nathan Jennings and Adam Chavarria were all given the opportunity to LEARN the FLS Construction job, even though I have more years of experience here at Texas A&M and the Environmental Safety Department.

Dave Zeiger is the third manager I have worked for that was hired after I was in 1999.  His start date was October of 2014.  Before him it was Richard Fegan, a part timer at FLS EHS that had never even been on a Resident Life inspection – something I had eleven years of experience with at the time of that interview. He resigned February 2014. As of September 2013 my job description reads that in the absence of the Fire Life Safety Manager I am the person to contact, but the FLS team was instructed that James Rainer would be acting supervisor after Richard Fegan left.  James Rainer did not even bother to reply to an email I sent him and BCC the Director about "Looking forward to the opportunities ahead", where I asked if Richard Fegan could show me what I would need to know before he left.

Jacob Daily just started working here at EHS in January of 2015. He's just about to graduate from TAMU. I've been observing how he is included with the assorted FLS duties that occur on campus – while I have almost never been, even though I have asked over & over again for years. It is apparent to me that my coworkers are NOT encouraged to include me.  And now it is readily apparent to me that EHS as a department supports the discrimination I have been receiving from James Rainer by moving me

to out of the FLS group.  It's James Rainer that avoids me, ignores me, trains and promotes MEN over giving me the opportunities to learn and expand my career with EHS.  In the 15 years I have worked for James Rainer he has never taken me with him to a meeting or campus or anything – yet he spent all sorts of time and energy training the MEN.

Since 2012 I have been having to use an iPad application named FIREHOUSE to enter my inspection reports. The ways that application has failed are too numerous to explain here. There used to be 26.5 FEET of items to scroll through, many redundant, until Dave Zeiger actually recently spent some time editing the items listed in the application. Over the years my attempts to explain the issues with the FIREHOUSE application and just how tedious entering an inspection is on an iPad have been almost totally ignored by James Rainer and EHS. I made lists of issues. I made lists of suggestions. I began to have a hearing issue in my right ear due to the bone in my neck and have filed a workman's comp claim for the injury to my neck – due to the ergonomics issue of having to work on that iPad instead of my desktop PC. And upon submitting the claim it was suggested to me "that it's probably just age".

It is my belief that the only reason James Rainer ever hired me to begin with was because it was the first year of the Resident Life inspections (1999) and he needed a FEMALE to inspect the female resident rooms.  I was hired in September of 1999 and right away I was very busy until Christmas vacation with the Resident Hall inspections. When I returned from vacation, since the resident inspections were complete, I had literally nothing to do. I asked James Rainer, who was my direct manager at the time, what would he like me to do, and he kept saying that he had something, but he had to do something first to get it ready, but he was too busy.  Finally, I went back to his office and told him that whatever it is, I could learn, that I would ask questions if I didn't understand. That's when he looked at this large stack of floorplans on the floor behind his desk and then asked me, "Do you think you can put these in numerical order?"

Not once in 15 years have I ever been asked to escort the State Fire Marshal Inspectors. I have had the Pyrotechnics and the Flame Effects certifications since 2005 and not once been asked to use them or trained how to fill out an open burn request.  I learned schematics during my carpenter apprenticeship at TAMU and I had four years of drafting during high school. My carpenter I position at Physical Plant was to design, plan, and estimate, build and install cabinets.  I built the cabinets outside my office working as a carpenter for TAMU, the same desk and office for 15 years, at EHS. Where I observe men be hired and trained, promoted and/or move on over & over again. There are many more

instances where I have been discriminated against and mistreated but this letter is already rather long and I am emotionally tired.

  If you are wondering why I have waited so long to file a complaint and request an investigation about this discrimination there are a few reasons:

1.) 1995 My evaluation at Physical Plant that read "Being female she is a distraction to the male workers..." disappeared. I was asked if I misunderstood, that they lost it. I asked if they would like a copy of it, I have one at home? (THAT evaluation was only PROOF that I was being mistreated on the job, it was not everything that occurred.)

2.) 1999 My exit interview also disappeared and was not forwarded to the people I requested receive a copy.

3.) 1999 My exit interview did not come to EHS in my employee file.

4.) 2000-2001, after waiting for the probationary period to be over, I met with TAMU HR that was located downstairs from my office at EHS and asked about that exit interview situation. The response I received then was not supportive and I was told that if I pursued it I could be sued for slander. (Charles Sippial was interim over HR then, he had been the Director of Physical Plant when I was written up for being female.)

  All this time I have been waiting and hoping for the opportunity to be included and learn all the assorted responsibilities of Fire & Life Safety – but now this restructure plan appears to boot me OUT of FLS completely by titling it "Construction" and treating me like I have no construction experience and could not learn.  It is not me that could not learn, it is James Rainer that refused to learn to work with me.  And while I've asked two different previous Directors for help with this, James Rainer just gets promoted over and over again. James Rainer has spent practically his entire working career at Environmental Health & Safety, beginning as a student worker and eventually now as an Assistant Director with a salary of $90,000+ annually.  Enough discrimination already, STOP.

Sincerely,

KammeO

**Kamme O** | Fire Inspector III

Environmental Health and Safety | Texas A&M University

ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu

 Gmail                                    **Kamme O <bestillandknow.kammeo@gmail.com>**

---

## Eye Wash Inspections -

---

**KammeO <bestillandknow.kammeo@gmail.com>**                    Tue, Nov 10, 2015 at 2:19 PM
To: Derek Howard <hk-law@austin.rr.com>

As I have been inspecting Jack E. Brown building- I noticed the eyewash shower tags are reading 2012 - so I emailed photos to Swati Kale and asked WHO inspects them?  Previously, since I am FIRE LIFE SAFETY, I wasn't actually "encouraged" to check on "everything" I see - so I tended not too. But now since EHS slammed all the inspectors "together" - I decided to notice & document... and ask... because I really am not crossed trained on LAB whatever... but I certainly can notice the obvious whatever:


Wed 11/4/2015 3:16 PM

### Kale, Swati G
RE: 0386 Eye Wash Showers 2015

To   O, Kamme

---

Thanks for the information. EHS tests the showers.

Swati

**From:** O, Kamme
**Sent:** Wednesday, November 04, 2015 1:13 PM
**To:** Kale, Swati G <swati_17@tamu.edu>
**Cc:** Urbanczyk, Bradley D <burbanczyk@tamu.edu>
**Subject:** 0386 Eye Wash Showers 2015

FYI – So far, it appears as if the eye-wash showers in Jack E. Brown are out of date:
Who is responsible for inspecting them?
KO



Well, today, Alvin mentioned that he had the eyewash showers up to date when he was doing them - but EHS has him inspecting HOODS. (Not sure since when?)
Anyway - what I am wondering about is - EHS has been overloading ME with FLS inspections with NO REGARD for the VACATION TIME that I used. When I asked if it mattered that I was ON VACATION, I was told it didn't matter. When I returned from VACATION the end of July I was told "since I am behind on inspections, I am not allowed to use vacation time"..... Well, I have NEVER heard of ANYONE ever being told that since I've been at TAMU. So, I'm like, "GRRR, retaliation."
If the eyewash showers are BEHIND by 2012 - supposed to be done annually - WHO ELSE is "behind" at EHS???  And WHY am I the only employee that I know of that is not allowed to use My vacation time???

So, I have another retaliation complaint to file about that NO USE OF VACATION thing - and more evidence:

KO

Out of Date Shower Tests

1220-1228 Animal Isolation Buildings – 2012
1508 Hobgood – 2013
0969 Bus Operations – 2012
1040 Cardiovascular Pathology Lab – 2013
2944 Center for Food Safety – 2013
0971 Commissary Dining – 2013
0516 Computing Information Systems – 2009
7063 Conservation Research Lab – 2013
0513 Doherty – 2013
1232 Equine Pavilion – 2010
0435 Harrington Education Center Office – 2010
1165 Hazardous Waste Storage – 2013
1297 Heat Transfer Research – 2004
1098 Hyperbaric Research Lab - 2013
0432 Langford Architecture Center – 2009
0740 McNew Lab – 2011
1505 Meat Science and Technology – 2009
7441 Riverside Pump Station – 2013
1095 Nuclear Science Center – 2013
0970 Physical Plant-Grounds Maintenance – 2011
0957 Purchasing and Stores – 2013
1560 Recreational Sports Complex – 2011
0478 Scoates Hall – 2013
0806 Soil Testing Lab – 2013
1904 Texas Center for Preclinical Studies – 2013
0958 Transportation Services – 2013
7090 TTI Safety Division Hangar – 2013
1085 Veterinary Small Animal Hospital – 2013
4050 Waste Water Treatment – 2013
8004 TEEX Waste Water Lab – 2013
8578 Water Lab at Central Utility Plant – 2013
4053 WWTP Disinfection Lab - 2012


= This according to a WORD DOC that I located on the Office H: Drive, 0386 isn't on this list - no idea if this is the only list??

From:      Kale, Swati G
To:        O, Kamme
Cc:        Urbanczyk, Bradley D
Subject:   Annual/Vacation Leave
Date:      Friday, November 13, 2015 11:38:28 AM

Kamme O,

Due to the progress shown in the recent reports, the restriction on your annual/vacation leave is being removed.
Based on the future evaluations the restriction may be reinstated.

Thanks,

*Swati*

**Swati Kale** | OS&H Inspector Supervisor
Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

ph: 979.845.7067 | fax: 979.845.1348 | swati_17@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - - -
**It's Time for Texas A&M**

# Complaint & Appeal Form
## Non-faculty Employee

Privacy Notice: State law requires that you be informed that you are entitled to: (1) request to be informed about the information collected about yourself on this form (with a few exceptions as provided by law); (2) receive and review that information; and (3) have the information corrected at no charge. To make requests, contact hrpolicy@tamu.edu or (979) 862-3331.

**INSTRUCTIONS** Please provide the information requested on this form. This information will be used by Texas A&M University, Policy & Practice Review (P&PR) following the procedures and timeframes referenced in *System Regulation 32.01.02, Complaint and Appeal Process for Nonfaculty Employees*, and *System Regulation 08.01.01, Civil Rights Compliance*. P&PR staff is available to provide guidance and assistance during any step of the process.

**TYPE OR PRINT - USE BLACK OR BLUE INK**

| | |
|---|---|
| Kamme O<br><br>Complainant's Name | 12-01-2015<br><br>Date |
| Occupational Safety Inspector III<br><br>Title | 801005252<br><br>UIN |
| PO Box 1231, College Station, Texas 77841<br><br>Mailing Address | 979-575-1091 cell, 979-862-4040 office<br><br>Current Phone Number |
| bestillandknow.kammeo@gmail.com<br>kammeo@tamu.edu<br>Email address (optional) | TAMU Environmental Health & Safety<br><br>Department |
| 08-13-1992<br><br>Date of Hire | 11-20-2015<br><br>Date of Action or Incident that led to this Complaint. |

1. What is the subject of your complaint (Example: Wages, termination, etc.)

   Retaliation

2. On what date(s) did you discuss this complaint with the appropriate member of management?

   .

3. Who is your complaint against?

   Swati Kale, TAMU EHS

Deadline to submit Complaint form is _____ by 5:00p.m.

**Office Use only**

Date Received: _____ Time Received: _____ Received by: _____

12-01-2015 Retaliation of EHS towards Kamme O

9:30-10:40am, Friday November 20, 2015 - "October Review Meeting", Supervisor Swati Kale and employee Kamme O, witnessed by John Fields.

Here I am again, submitting yet another retaliation complaint, this time I was actually dared to file this complaint, by Swati Kale 11-20-2015. It appears she is upset by the fact that I have filed complaints about the discrimination and retaliation of TAMU EHS, as during the October Review meeting on 11-20-2015 Swati Kale stood over her desk, with a raised voice and while continuously pointing her finger toward me, yelled, "I'm done being nice. You want to file a complaint about me screaming at you?! GO AHEAD, DO THAT! DO THAT! I DARE YOU! DO IT! I'm done being nice to everyone!"
She yelled and hit her fist on her desk multiple times, while standing up facing me seated in front of her desk. She was so upset, I just sat there, arms on my chair, waiting to see if she was going to come over the desk at me?? I think she must have hit the desk about ten times or more? She yelled at me saying, "DON'T YOU LIE TO ME RIGHT IN FRONT OF MY FACE, DON'T YOU CHALLENGE ME!"  I told her as calmly as I could that we clearly have a communication problem that the only time she talks to me, other than asking me if I am leaving or why I am still at the office, is during the review meetings.

Swati Kale seems to expect me to think however she thinks, be like she is, automatically, without any previous discussion. We seem to have different definitions of general vocabulary. My asking for clarification, in attempt to make sure that I understand what is asked of me, seems to be perceived as being disrespectful. The thing is, since the restructure, no one really knows what it is we are supposed to be doing. Everyone is basically doing what they know how to do while wondering what is going to change and how? There is serious lack of communication at EHS and Swati Kale's behavior during the October review meeting is just MORE evidence of what a stressful MESS the "restructure" has made of Environmental Health & Safety.

During the 11-20-2015 meeting there was discussion about the meaning of "schedule" – what Swati thought she was asking for from me and what I have been given as a schedule for the past 16 years are not the same type of thing. While I'm thinking "a list of building locations for the month", it seems that Swati was expecting an hour by hour estimate of when, what and where for the month – because eventually that is what she handed me at the 10-21-2015 meeting and the 11-20-2015 meeting.  Swati complained that she had spent two hours creating that schedule for me; I wonder why she would rather spend two hours creating an hour by hour schedule than take the time to actually communicate with

12-01-2015 Retaliation of EHS towards Kamme O

me? I inquired if she was creating hour by hour schedules for all of her employees and she said, "No." I told her that being micro managed hour by hour and being told to make sure that I LEAVE at five o'clock feels like retaliation to me. That she has never asked me what I do or how I do it, what buildings I have contacted, am in the process of inspecting or have completed inspecting - before she makes these hour by hour schedules. How can I know what I am being reviewed on if the only communication is at the review meetings? She got upset and said we were just going around in circles. She also raised her voice and said something to the effect of, "What do you want me to do, bring a love seat here?!!" That reference seemed very out of place and seemed to me to be some sort of jab at whatever Swati perceives my reason for going to a psychologist is or not.  The irony being that after years of dealing with the ongoing discrimination and emotional abuse from TAMU EHS, visiting a psychologist is the one objective conversational situation that I can count on to be both logical and honest and without the passive aggressive manipulations that this "restructure" clearly resembles.

When I mentioned that it takes time to adjust to a restructure and why, Swati Kale sarcastically asked me how much time did I want two years?! Ten years?!  When I attempt to explain how and why the inspection situation is what it is, Swati tells me she does not want to hear about July, that is "in the past". So, I asked her why there has not been an inspector meeting since June 30th? She said I was just trying to be difficult. What I was attempting to get Swati to notice is how when I have justified reasons she says "that's in the past" but when it is about EHS or the "restructure" then somehow THAT is current even if it was July or June, or May?

Originally, April 21st, the day EHS announced the "Restructure" John Fields came up to my office and told me "not to worry, he would treat me better than I have been being treated"... but then seems like it was May 5th at the first meeting of the "Inspectors" is when I was informed that not John Fields, but Swati Kale would be my supervisor. Appears EHS knew where I would be relocated, that my desk of 16 years would be removed and what to change my position title to BEFORE deciding who would actually be my supervisor? Appears John Fields wound up amidst the situation anyway as a "witness".

Swati Kale has been employed by EHS for five years, while I have been with EHS for sixteen years. Swati Kale was promoted to a supervisor position October 2013. EHS restructured May first of 2015 and repositioned me to work for Swati Kale aware there was a huge potential for issues, given how I was uninformed, relocated and the silent passive aggressive change of my position title. It is unfair to place

12-01-2015 Retaliation of EHS towards Kamme O

Swati Kale in the position of having to deal with the discrimination situation that has been on going towards me since 1995. EHS certainly has gone to great efforts over the years, so that James Rainer would not actually ever have to work with me.

Apparently EHS thought the "problem" was me, instead of having the perception that I am the messenger that TAMU and EHS have an on-going discrimination problem. Otherwise, why in 16 years, has EHS completely avoided having a meeting including myself and James Rainer to discuss the assorted discrimination situations? It appears that since I have not just gone away – EHS decided to restructure me, as I cannot just be "lost" or "thrown away" like that 1995 TAMU Physical Plant evaluation was "handled" and I am still apparently "female" after all these years.

What a waste of talent really – if I were a "Good Old Boy", a retired Fireman, or a male student worker how different my experience would have been at Texas A&M University.



# HOWARD & KOBELAN
### ATTORNEYS AT LAW

**100 CONGRESS, SUITE 1720**
**AUSTIN, TEXAS 78701**

DEREK A. HOWARD
THOMAS F. KOBELAN
LOGAN E. HOWARD

TELEPHONE: (512) 480-9300
FAX: (512) 480-9374
EMAIL: hk-law@austin.rr.com
www.howardkobelan.com

December 4, 2015

EEOC                                    *Via First Class Mail and*
Attn: Jamie Valdez                      *Fax: 210-281-2522*
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229

     Re:    Kamme O v. Texas A&M University, Environmental Health and Safety ("EHS")
              EEOC Charge No.: 31C-2015-01426

Mr. Valdez,

       Kamme O believes that she continues to be subjected to discrimination and retaliation for filing a complaint of gender discrimination. Please see Ms. O's additional information below.

       I filed a Charge of Discrimination with the Texas Workforce Commission on June 18, 2015.

       On or about July 17, 2015, I was told by Swati Kale, Supervisor, that I would not be able to use my accrued vacation time with no date for that restriction to end because inspections are behind. Beginning on or around June 30th, Ms. Kale began assigning me an excessive workload. June 30th I met with Ms. Kale she told me everyone was starting with a "clean slate" because of the departmental restructure May 1st. June 30th was also the second meeting of EHS, the July 2015 list of inspections assigned to me equaled approximately three times the amount of buildings to inspect compared to any month in the past decade. I believe the excessive workload is an attempt to set me up to fail because even if I had not submitted for an extended vacation during the month of July, back in April 2015, I would not have been able to complete every inspection assigned on that July 2015 list. I believe that the denial of my vacation time is in retaliation for my filing a Charge of Discrimination against Texas A&M University, Environmental Health and Safety.

       On or about November 20th, 2015 I asked Ms. Kale, with John Fields as witness to the Review meeting about other employees that are behind on inspections and I asked if they have been disallowed the use of their vacation time. I do not believe that any other employee has been disallowed the use of their vacation time because of the status of inspections.

On or about October 21, 2015, Ms. Kale began to micromanage me and increased her surveillance of me by giving me a detailed schedule of all of the inspections that I needed to do after already having emailed me a different list of inspections October 1st.

Tuesday, November 10th I submitted a retaliation complaint to TAMU HR – and then Friday, November 13th I received an email from Ms. Kale that I would be able to use my vacation time again. There was never an explanation of how many inspections justify the suspension of vacation use.

If you have any questions, please do not hesitate to call.

Sincerely,

Derek A. Howard

DAH/lad

cc.     Client

 Gmail

Kamme O <diversitygrrrl@gmail.com>

---

**TAMU Building Inventory List - 0116 and 2135**
1 message

---

**Kamme O <diversitygrrrl@gmail.com>**                                    Thu, Dec 29, 2016 at 9:32 PM
To: Clinton.Williams@tdi.texas.gov
Cc: Fire.Marshal@tdi.texas.gov, Ernest.McCloud@tdi.texas.gov

Howdy Captain Williams,
I changed My mind about sending You the information that I mentioned to You on the phone 12-06-2016:

**FireHouse Application Inspection Dates tend to be RANDOM since the beginning, late 2012.**
I thought I would email You the information that I have about those 2012 DEMOLISHED buildings, I was given to inspect
December 2014, that EHS shows were inspected December 2013.


This year I happened to be organizing My paperwork from 16 years of EHS Fire Safety inspections and I saw that I
wrote "GONE 2013" - I remembered the way I HEARD it said... and it dawned on Me, "DECEMBER 2013?"  So, I
checked the building inventory that I attached to this email for You and building 0116 and building 2135 show to have
been Demolished 2012.


If You will **CNTRL F: 0116** and go thru the .txt document - it shows the 0116 years 2009 to 2012. "demolished 2012".
You will locate **2135** the same way...

```
2009C    0054      SAMPLE PROCESSING LABORATORY      e
2009C    0055      STORAGE SHED      06      Active
2009C    0056      PHYSICAL PLANT UTILITIES
2009C    0                                        ve
2009C    0                                      IT  e
2009C    0                                          A
2009C    0                                          A
2009C    0                                          A
2009C    0                                          A
2009C    0                                          A
2009C    0                                          e
2009C    0114      OFFICE METAL BUILDING      02      A
2009C    0116      TVMC-WILDLIFE & EXOTIC ANIMALS     e
```

Find                                                          ✕

Find what:  [0116]                                 [Find Next]

                    Direction
                  ○ Up    ● Down                   [Cancel]

☐ Match case

**Get an iPad - Try entering an inspection Yourself - find out if/how the date of inspection is actually created?**
Since late 2012 when the iPad & Firehouse were put in use, the dates of the inspections may or may not actually be the
date of the inspection.
From what I understand, EHS is currently still using the same FIREHOUSE application for inspections, even though
since 2012 it's been excuse after excuse.  2015 I told David Zeiger, who was My supervisor that day, that typing up a
WORD document and saving it as a PDF would make more sense. His response to Me was, "None of the Guys can
type."

(From 2012 until early 2015 there was literally 26.5 FEET of scrolling just to get from one end of the inspection program
to the other. YES, I measured it with a ruler.)

**James Rainer has known of the problems with the FireHouse application since the beginning.**
I emailed Him LISTS of issues & suggestions for edits.
Instead James Rainer (and I had BCC the Director Christina Robertson these also, more than once) No action or
response from either of them.
EHS treated Me like I was just a "trouble maker - complainer" instead of a loyal & thorough employee of TAMU,
concerned about SAFETY.

1/4

1999-2016 I inspected the buildings on campus and yet not one time can I recall having been introduced to a State Fire Marshal.... go figure?

***

Remember the phone call Tuesday, 12-06-2016, I mentioned the door is missing from the very top of the **0462 Academic Building**?
SEE the sunshine coming in?
Notice the stair-rails are missing?
I didn't go UP those stairs, but I was able to zoom a look at the door with My camera.
**0462 is a 1914 building - the one with the DOME that is advertised often.**
There's supposed to be some sort of electrical grounding issue?? but I don't know for sure - just heard about the building itself having some sort of "grounding issue". There were extension cords in mechanical rooms - with exposed wooden flooring. It was something to do with the "grounding issue" as to WHY they were not able to add more outlets....???

It was My experience over the years working for EHS/James Rainer - that I was not included via meetings or information and when I found out information that seemed important to Me there was a "I'll take care of it" attitude, but no actual communication or explanation of what happened next, if anything?
I will never forget James Rainer telling Me, "You are too thorough" as if it is a negative thing??

12-12-2017

*TXSFM would not confirm or deny the FALSE DATES of Inspection @EHS
*2015 I emailed the TAMU VP of Finance examples of the FireHouse
iPad application failures/issues. The program had 26.5' of scrolling to get from
beginning to end. 2012-2016.

2/4



The stair signage in 0480 BOLTON HALL was usually always wrong - duplicate stairwell identification, "no roof access" when there actually IS roof access. I wrote that up more than once.

Ironically, 0463 Psychology Building has duplicate room numbers throughout. There's an "A" & "B" building sort of, is to say, two buildings create 0463.

The year I went thru 0446 RUDDER TOWER - the stair signage listed RE-ENTRY when there was in fact NONE on ANY floor. I informed EHS. "They" handled it. I have no idea what was decided about that situation? I was also not sent back to inspect 0446 Rudder Tower again.

The year I inspected 0468 Evans Library I could not get OUT of the ground floor EXIT stair. Upon contacting the building proctor, HE SAID, "Oh, We have them on a DELAYED EGRESS for a MINUTE & a HALF. WE HAVE ALL THE LIBRARIES that way."
I also informed EHS of this. I don't know what was done about any of it - I was never again sent to inspect another library on the TAMU campus.

The 0971 Food Services Warehouse - had an EMERGENCY EXIT, back right-hand corner, that had NO STAIRS, 12' drop to the exterior.  The year I noticed that, the manager that was escorting Me said, "How am I supposed to PAY for it?"  It did eventually get stairs. The building had gone TEN YEARS without stairs at that location.

3/4

I may not be able to QUOTE every CODE - but I know campus room by room for the most part.  And My experience with EHS/James Rainer was the concern was more about "profit" than "safety", that is My perception of course, decide for Yourself?

Oh, and the eye-washes on campus may or may not be years behind? They were years behind November 2015, I submitted a complaint to TAMU HR about it titled

11-10-2015 Complaint -- "Vacation Retaliation – Eye Wash Inspections YEARS Behind"                 3 days after I submitted that complaint to HR 11-13-2015 **My access to vacation use was reinstated "based on progress"**. Then 9 working days after that there was a "corrective action document" issued against Me for being behind on inspections - which is what TAMU EHS based the 01-29-2016 effective 02-12-2016 Termination on. (ignoring every issue, including the ones I submitted about the failure of the iPad-FireHouse situation.)

When I started at EHS in 1999, I asked James Rainer about the extension cords used in the Mechanical Rooms across campus - He told Me something to the effect of the SFM says it's okay...?  Then in 2002 SFM inspected campus & TAMU got dinged for extension cord use in Mechanical Rooms.
Not one time 1999-2016 did EHS ever have ME accompany a SFM. Go figure? I did offer, and ask too.

James Rainer & I went round and round over the years about open electrical connections above the ceiling tiles to the projectors installed on campus. Eventually that began to change.

**I hope this information helps the State Fire Marshal make the Texas A&M University Campus SAFE.**
It is My perception that EHS is more about profit/expense than SAFETY.

If the inspection DATES are supposed to be "accurate legal documents" - then, well, not exactly since 2012, and EHS knows it.

Sincerely,

KammeO

DiversityGRRRL@gmail.com
979-575-1091

---

**5 attachments**



**11-2016 0116 Inspected 2013 - Demolished 2012.jpg**
252K



**11-05-2015 Eyewash SLIDE.JPG**
120K

 **[Archive_Inv_Bldgs].txt**
2867K

**11-2016 KO Response to TAMU Position Document - EHS B.S._005.pptx**
707K

