KAMME O   v.   TEXAS A&M UNIVERSITY and SYSTEM        4:17-cv-03877

1.  PLAINTIFF'S RESPONSE TO Document 7.................................................................1 page

2.  PLAINTIFF'S APPEAL FOR COURT APPOINTED LEGAL REPRESENTATION.............8 pages

3.  Lawyer Decline Notifications...........................................................................11 pages

4.  EHS email – MONICA HARTMAN....................................................................1 page

5.  Evidence of Discrimination, Certifications v. Younger Male......................2 pages

6.  Evidence of FALSE INSPECTION DATES @ TAMU EHS...................................1 page

7.  BACKDATED First Report of Injury...................................................................1 page

8.  Email: To SUSAN KARLI, "could be just age" neck injury...........................2 pages

9.  Email: July 14, 2015 – WORKERS COMP DENIED.........................................2 pages

10. Email: July 16, 2015-2nd Request for Physician's Certification for FMLA...............1 page

11. July 17, 2015 – Partial Transcript of VACATION SUSPENDED meeting....................5 pages

12. July 24, 2015 – TAMU HR PPR email: FMLA plan for "unexcused absence"............2 pages

13. August 13, 2015 - Email: To V.P. of Finance – "FIREHOUSE issues" page on............1 page

14. November 2015 COMPLAINT – Eyewash Shower Inspections YEARS BEHIND.......8 pages

15. VACATION SUSPENSION v. "progress shown on recent reports"..............................1 page

16. October 20, 2015: Position Title Changed May 1, 2015................................1 page

17. Response to TAMU EHS Memorandum............................................................8 pages

18. FIRE SAFETY PRESENTATION survey comments about KammeO.............................1 page

19. November 20, 2015 Gmail, DAY OF the Verbal Assault by SWATI KALE....................1 page

20. December 4, 2015 email to TAMU PPR: "Afraid to go in there, help?".................2 pages

21. January 5, 2016 EXTENSION of INVESTIGATION – (NO OUTCOME to Plaintiff)........1 page

22. COVERLETTER to Job Application at TAMU EHS 2013................................1 page

23. Unanswered email to Supervisor RICHARD FEGAN.......................................2 pages

24. Unanswered email to EHS Director JOHN SALSMAN..................................1 page

25. January 29, 2016 Termination Letter, 47 workdays after COMPLAINT of Eyewash Shower
    Inspections YEARS BEHIND...............................................................................1 page

United States Dist
Southern District of T
FILED
FEB 01 2018
David J. Bradley, Clerk of

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 0 1 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| KAMME O | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:17-cv-03877 |
| | § | |
| TEXAS A&M UNIVERSITY | § | |
| and System | § | |
| Defendant. | § | |
| | § | |

<u>PLAINTIFF'S RESPONSE TO Document 7, Filed in TXSD on 01/22/18:</u>

1. December 14, 2017 Plaintiff filed an "APPLICATION to Proceed in Forma Pauperis", (4:17-mc-03315) **(There is only one Complaint submitted)**

   a. One set of 54 +/- pages is what Plaintiff sent TXS Court 12/12/2017, accepted 12/14/2017, entered 12/18/2017 = 4:17-mc-03315.

   b. 12/26/2017 = CASE FILED 4:17-cv-03877

2. Dr. Joni E. Baker, Director of Equal Opportunity and Diversity for Texas A&M System is the CONTACT LISTED on the EEOC Complaint 31C-2015-01426, 90 day Right to Sue letter:

On behalf of the Commission

Rayford O. Irvin,
District Director

SEP 2 1 2017
(Date Mailed)

Enclosures(s)

cc:    Joni E. Baker
       Director, Equal Opportunity & Diversity
       TEXAS A & M UNIVERSITY
       301 Tarrow St., John B. Connally Bldg., Room 605A
       College Station, TX 77840

       Lowell Keig, Executive Director
       TWC / Civil Right Division
       101 E. 15th Street, Room 144-T
       Austin, TX 78778

   a.

JANUARY 26, 2018          4:17-cv-03877

AggieCarpenterMom@gmail.com                    4:17-cv-03877

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 01 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| KAMME O, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.17-3877 |
| | § | |
| TEXAS A&M UNIVERSITY and | § | |
| System | § | |
| | § | |
| Defendant. | § | |

PLAINTIFF'S APPEAL FOR COURT APPOINTED
LEGAL REPRESENTATION:

1. **Plaintiff Respectfully appeals** the Court's ORDER to
   DENY Court Appointed Legal Representation and requests
   the COURT reconsider as to guarantee the Plaintiff her
   right to DUE PROCESS against a STATE UNIVERSITY of
   TEXAS, as she has had no experience as an attorney and
   the case is both lengthy and complicated.

2. Plaintiff qualifies as *in Forma Pauperis*    -
   Employment Lawyers appear to advertise that they
   defend "Executives".

3. **Plaintiff has contacted an excessive amount of Law
   Firms** in the Continental U.S.A. via telephone, email,
   Twitter, AVVO.com, Facebook, the ACLU, the NWLC, Lone
   Star Legal Aid, Peckham-Martin, Attorney Bryan E.
   Wilson, Daiclaw.com, Bush-Law, Baron and Bud, Azalaw,
   Ellwanger Law, Kennard Law, Vagnini Law Firm,
   Scharfman Law, Leichter, Welscher, Fiddler &

1

Associates, Armstrong Law, HLRS.org, NWLC.org, Lazars, Spencer & Scott Law, Warren & Zurick, Devadoss Law, EEOCAdvocates.com, Attorney Peter Costeal, Poerschke Law Firm, Murphy Law Practice, Shane A. McCellan, ROSSLAWGROUP.com, Watson Law Firm, Payne Law Group, TXLAWHELP.org, Baylor.edu professor, Attorney Stewart Campbell, Attorney Mahoney, Kilgore & Kilgore, Coane.com, ACLU.org, LAPIDUS & KNUDSEN, Cohen & Associates, Filteau & Sullivan, Bush-Law, Vas Manthose, AzaLaw, Attorney Bryan E. Wilson, Wayne Rife, BRUCHEZ.com and that's not all of them – but it's what I have written down in my calendar.

4. **Defendant's responses to the EEOC complaint 31C-2015-01426 is mostly the omission of facts & documents, conjecture and misrepresentation of the Plaintiff.**

5. **CONFLICT of INTEREST**: Vice President of TAMU Finance, Jerry Strawser was **listed as management for both** TAMU Human Resources and the department where the Plaintiff was employed – Environmental Health & Safety.

    a) The final decision of _every written complaint_ submitted by the Plaintiff was signed off on by the V.P. of Finance as "no valid evidence".

    b) OPEN RECORDS doesn't have to release documents if the investigation found "no valid evidence", according to the GOVT CODE.

    c) After the Plaintiff was terminated from her 23+ years of employment at TAMU – **Human Resources was RESTRUCTURED to be directly**

**under the PRESIDENT of TEXAS A&M UNIVERSITY, effective August 1, 2016.**

6. TAMU Human Resources Policy & Practice Review **violated Policy, encouraging RETALIATION** by taking 67 working days to answer the Plaintiff's initial written complaint received April 27, 2015.

   a. First Complaint by the Plaintiff was not answered until July 31, 2015.

2.5   If additional time is needed to complete the investigation, an ▓extension of up to▓ ▓fifteen (15) business days▓ may be allotted to P&PR with approval from the AVP HRAS. Notification of the extension will be sent to the complainant, complainant's supervisor and department/unit head and the respondent, respondent's supervisor and respondent's department/unit head. The extension ▓should not be for more than fifteen (15) business days▓ unless required by unusual circumstances.

7. **TAMU PPR letters were vague and misleading** – omitting dates and details of which Complaint was being answered. TAMU PPR combined COMPLAINTS of **on-going RETALIATION** with the original 04-26-2015 Complaint of DISCRIMINATION.

   a. TAMU PPR Sheri Yetter had met with the Plaintiff January 3, 2014 – the discrimination situation was not new-news to those assigned to investigate it. **Plaintiff believes that the RESTRUCTURE of the department of Environmental Health & Safety was at least in part to protect JAMES RAINER, who TAMU EHS had been using & rewarding for discriminating against the Plaintiff since 1999, when he hired her to inspect the female resident hall rooms.**

8. **Plaintiff has <u>audio of witnessed meetings 2015-2016</u> and <u>can prove</u> that at no time did she yell at anyone.**

9. Plaintiff believes that the Defendant refusing to promote her after the 2007 meeting with the TAMU Environmental Health & Safety Director CHRIS MEYER is RETALITORY in nature, to keep her position **"HOURLY"**, **to be able to create a hostile work environment:**
   a. <u>**There was/is not time CLOCK.**</u>
   b. <u>**Supervisors APPROVED the bi-weekly TIMESHEETS.**</u>
   c. <u>**All TIMESHEETS for the Plaintiff list her as TIMELY.**</u>
   d. **"late to work" was first and generally only mentioned at annual evaluations; used to limit training & % raises.**

10.   Plaintiff never gave any presentation mentioning "sex with her boyfriend" as is written in the EEOC witness statement, as JAMES RAINER.
   a. **Plaintiff actually successfully presented FIRE SAFETY 2010-2013.** She was <u>**never told WHY**</u> she was not allowed to continue giving the Fire Safety presentations in late 2013. <u>She even asked during the 2013-2014 evaluation by JAMES RAINER why EHS stopped allowing her to give the SAFETY PRESENTATIONS?</u> And he only fidgeted an answer about "they wanted to shorten the presentation".
   b. Plaintiff gave the Fire Safety presentation 2010-2013, **until** the Plaintiff's POSITION DESCRIPTION actually included "giving presentations".
   c. Plaintiff volunteered to accept the responsibility of giving the Fire Safety

4

presentations when her supervisor JOHN FELLERS vacated the position 2010.

    **a)** EHS later gave the promotion to RICHARD FEGAN (no Res-Life inspection experience), but **Plaintiff continued to present Fire Safety because the survey <u>reviews by the audience were so POSITIVE.</u>**

**11.   <u>Plaintiff's first report of injury 03-27-2015 was back-dated and then denied by WORKER's COMP.</u>**

12.   Plaintiff was told injury was **<u>"probably just age"</u>**, April 2015 by SUSAN KARLI.

**13.   <u>Plaintiff was offered FMLA numerous times 2015:</u>**

    a. By email, in office mailbox, by voicemail, by meeting with SUSAN KARLI and then also by a meeting with EHS Director CHRISTINA ROBERTSON, witnessed by SWATI KALE.

    b. At no time did the Plaintiff request FMLA and refused signing each time it was told to her *"we are just trying to make sure you get the benefits you deserve"*.

**14.   <u>TAMU intended to terminate the Plaintiff's employment</u>** for <u>previous unrelated doctor appointments</u> that she took regularly for type II diabetes – had she signed the documents for FMLA.

**15.   <u>Use of vacation was suspended in attempt to force Plaintiff to use FMLA.</u>**

a. **MEN who were YEARS behind on eye-wash shower inspections were not suspended from using their vacation time. (same supervisor)**

b. Plaintiff used vacation leave to rest injured neck after the Worker's Comp was denied. Not enough emotional energy to keep track of both documentation processes. Neck still hurts.

16. **Plaintiff had current CERTIFICAITONS of Pyrotechnics and Flame Effects from 2005-2016 that went completely unused.** While the younger male that JAMES RAINER mentored was listed online as the person to contact for a BURN PERMIT. Plaintiff was the only person who had those Certifications, but **JAMES RAINER refused to have anything to do with the Plaintiff and TAMU EHS rewarded him for it year after year after year with promotions, raises and by continuing to shun the Plaintiff.**

17. **November 20, 2015 SWATI KALE,** the Plaintiff's supervisor since summer of 2015, **stood yelling & beating her fist on the desk at the Plaintiff** for over an hour while the employees in the EHS office stood in the hallway listening. **SWATI KALE yelled at the Plaintiff, "GO AHEAD, I DARE YOU, I DARE YOU TO FILE ANOTHER COMPLAINT WITH HR!"**

18. **TAMU listened to the audio** of the Plaintiff's supervisor yelling and threatening her during that November 2015 meeting JANUARY 4, 2016, **BEFORE the**

**Plaintiff was wrongfully terminated JANUARY 29, 2016 for "work performance".**

19.   <u>**TAMU PPR did not answer the 11-10-2015 written COMPLAINT about the Eye-wash Showers being YEARS BEHIND INSPECTION**</u> – the men that worked for SWATI KALE were not suspended from vacation or having witnessed meetings and micro-managed revolving schedules.

    a. Plaintiff sent PHOTOS of the eyewash showers and the database to HR PPR with the 11-10-2015 COMPLAINT.

20.   **The Plaintiff phoned TAMU HR and asked for help,** expressing that <u>every meeting was worse than the one before</u> and that she was afraid for her safety at the office because of the **hostile work environment.**

    a. No one did anything to protect the Plaintiff. No one listened. No one cared how many years the Plaintiff had been discriminated against. No one cared to even follow the laws or the policies.

21.   <u>Even the Anonymous complaints against the Plaintiff were RETALIATION</u>, as the info is false – and reads as if it was written by Susan Karli, the same person that told the Plaintiff it was "old age" and then back-dated the injury report so that the Worker's Comp would be denied.

22.   Plaintiff submitted evidence of <u>**FALSE INSPECTION DATES of the Fire Safety Inspections**</u> by ADAM CHAVARRIA, the younger male, mentored for the CONSTRUCTION FIRE SAFETY MANAGER position by JAMES

AggieCarpenterMom@gmail.com                    4:17-cv-03877

RAINER to the TEXAS STATE FIRE MARSHAL'S OFFICE
December 29, 2016.

a. **TXSFMO has avoided answering to the complaint of FALSE DATES of INSPECTION at TEXAS A&M UNIVERSITY.**

b. TXSFMO sent the younger female hired instead of the PLAINTIFF 2016 to TEXAS A&M UNIVERSITY in 2017 to inspect a few of the items the Plaintiff submitted to the TXSFMO. The report is full of mistakes, is very vague, does not even list room numbers.

Plaintiff thanks the Court for its' time.

Kamme O
3503 Winding Road
Hearne, Texas 77859
979-575-1091
AggieCarpenterMom@gmail.com

4:17-cv-03877

4:17-cv-03877

# M Gmail

Kamme O <diversitygrrrl@gmail.com>

---

## Kamme O - Employment law referral
1 message

---

**Receptionist** <receptionist@thecochranfirmdallas.com>                     Mon, Jan 23, 2017 at 12:27 PM
To: "DiversityGRRRL@gmail.com" <DiversityGRRRL@gmail.com>

Thank you for the opportunity to review your claim. Please be advised that this firm will be unable to represent you in the above-referenced case. I have referred your case to Valli Kane & Vagnini and their number is 516.203.7180. This firm specializes in Employment law. You may also wish to contact either the Dallas Bar Association at 214.220.7400 or the State Bar of Texas at 800.252.9690 for a referral.


## Clarisa M. Cantú

# THE COCHRAN FIRM

D A L L A S ,  P . L . L . C .

3400 CARLISLE ST., SUITE 550 • DALLAS, TEXAS 75204

Telephone: (214) 651-4260  Fax: (214) 651-4261

receptionist@thecochranfirmdallas.com


CONFIDENTIALITY NOTICE:
This e-mail may contain confidential and privileged matter for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply e-mail or telephone, and delete all copies of this message.

4:17-CV-03877

 Gmail

**Kamme O <diversitygrrrl@gmail.com>**

## RE: New Contact Us From Website
1 message

**Bess Masterson** <dem@kilgorelaw.com>                                    Sun, Oct 8, 2017 at 10:49 AM
To: "DiversityGRRRL@gmail.com" <DiversityGRRRL@gmail.com>
Cc: Theodore Anderson <tca@kilgorelaw.com>, Elizabeth Bicknell <ecb@kilgorelaw.com>

Ms. O,

Thank you for letting us review your potential claims.  Sorry to hear about your situation.  Our attorneys have
reviewed the facts of your cases but unfortunately we are unable to help.  We wish you good luck with your situation.

Thanks,
Bess Masterson

 **KILGORE LAW**

Bess Masterson

Of Counsel

dem@kilgorelaw.com

214.969.9099

214.379.0843 Fax



Kilgore Law Center

3109 Carlisle Street



# WE HAVE RECEIVED YOUR COMPLAINT.

Thank you for submitting your complaint to the ACLU of Texas. Please be aware due to the high volume of complaints, we can only take on a small percentage of complaints that we receive. If you do not hear from us within eight weeks from receipt of this message, then our caseload is such that we regrettably are unable to assist you with your complaint.

We are unable to respond to telephone calls regarding the status of complaints.

Please note that neither this message nor receipt of your complaint implies any agreement to undertake representation on your behalf.

Thank you,

ACLU of Texas
www.aclutx.org

Go back to the form





4-17-cv-03877

**Kamme O <diversitygrrrl@gmail.com>**

---

## NWLC Request for Assistance

**Kamme O** <diversitygrrrl@gmail.com>
To: "Lowell, Caitlin" <CLowell@nwlc.org>


Thu, Jan 18, 2018 at 10:01 AM

It's January 2018. I filed My case pro se in December, against Texas A&M University. I've contact so many attorneys online, on the phone = they say they can't help Me.

My friends are all telling Me I should contact NWLC since the media is all about sexual harassment lately. I'm like, "Hah, yeah? No. Already did."

I submitted a request for a court appointment Attorney.. it was declined.. I'm going to appeal it, like I appealed the legal aid that I qualify for but " they don't handle fee generating cases".

I have the impression that if the person is WORKING CLASS and worked for THE STATE no one wants to bother with the case???

I have lots of documentation and audio.   I'm learning how to write legal documents now too.

Justanswer.com has been the most help so far. Hell, even the lawyer I did have back in 2015-16 was not paying attention... He seriously didn't fight for Me. Once I figured out his conflict of interest I let him go.

Textcase.com will search the PDFs and look up the case references and search cases... It's not cheap but it works since I live rural going to a legal library is over an hour away.

TAMU HR did lots of bogus things. They didn't answer the complaint I submitted before they fired Me, about the men were/are behind on inspections and THEY weren't suspended from using vacation.

I figured out, TAMU backdated My workers comp claim to get Me to request FMLA. Then they tried 3 times to get Me to sign the FMLA request... I recorded the witnessed meeting.

When that didn't work, they suspended Me from using vacation from JULY to NOVEMBER.
I have a copy of the document TAMU planned to give Me if I had requested FMLA ... It reads if the FMLA wasn't approved, the sick leave I used in dates listed would be considered "unapproved absences". The thing is, the dates they picked were appointments I used regularly because of type 2 diabetic. And the neck injury pain isn't VISIBLE... so?

Anyway if I'd requested FLMA they would've used it to fire Me.
That's WRONG on so many levels.

Go look at the photos I've posted on TWITTER .. or look up My LINKEDIN...

I've heard NLWC got a million dollar donation lately.... So tell Me again, what the real reason I don't deserve representation? Because I've been disriminated against by TAMU since 1996 and I have the evidence.

Please tell NWLC to reconsider.

O

[Quoted text hidden]

 Gmail

Kamme O <bestillandknow.kammeo@gmail.com>

---

**DEREK HOWARD**
1 message

4:17-CV-03877

**KammeO** <bestillandknow.kammeo@gmail.com>
To: Derek Howard <hk-law@austin.rr.com>

Mon, Dec 12, 2016 at 12:17 AM

Mr. Howard,
At what point will You SPEAK with Me about the status of My case? Namely thoughts about the 260 & 66 pages from TAMU to the EEOC and the other evidence that I sent to You?
When I phone You - I'm often told that You say, "Tell her to email Me."
WHY is that exactly?
We have met twice in person - May 21, 2015 and June 15, 2016.

May 21, 2015 - Upon meeting, You stated that You are friends with the Chancellor of TAMU. And I said, "Who?" You said, "Sharp." And I told You, "Oh, I don't like Him." And You asked, "Why?" And I told You, "Because He is profit oriented, not community oriented." Then I basically boo-hooed the 20 year over & over discriminations I'd been through already.

I did not worry about "conflict of interest" at the time - because CODES are CODE, LAWS are LAW.. it's not "personal", it's a common sense, right/wrong type thing.
That was BEFORE 2015 TAMU HR ignored all of the evidence & complaints I submitted. They even ignored the audio that THEY recorded in an attempt to spur Me into an argument November 20, 2015. (When I mentioned the audio to You - back after that meeting had occurred You weren't interested - said it wouldn't help My case. I don't think You had listened to it when You told Me that..... because You didn't seem to be aware of how terrible I was being treated, or care?)

**I am curious- have You researched what other complaints there are similar to Mine against the TAMU SYSTEM? What are they?**

I called November 30th - stated that I felt like You were avoiding Me since the conversation about "why didn't You tell Me the EEOC would not speak to Me without permission from You?" - I spent all summer feeling like the EEOC was ignoring Me & You just LIE!!... You don't communicate with Me, You don't explain. And when I do speak with You, You tell Me things like "create a list of witnesses & subject matter" or "create a one page list of what/how I think TAMU discriminated against Me".

Given how much documentation I have provided TAMU HR and Your office with - You already have witness info and details of the discrimination and it seems to Me, You basically redirect by giving Me "busy work".

And what's with the comment "They tend to get upset when covered up in paperwork"? It's all evidence. This has been going on FOR YEARS at TAMU, 2015 was practically non-stop retaliation. Pretty sure beginning with the meeting I had with Sheri Yetter in early 2014. (I explained to Her THEN that I was not allowed or enabled to do the job description that I had. Convenient that EHS restructured in 2015, bascially a year later.

Somehow I just expect more interest & interaction from You, My attorney?
But I am beginning to wonder if I should have just left as soon as You mentioned that You are friends with Sharp?...and well, how is that friendship not a conflict of interest?

TAMU is basically waiting on Me to either give up or drop dead.
You are quiet - like the way HR was to Me....

I'm like, How about YOU explain to Me the ways You think TAMU has discriminated and retaliated against Me? I shouldn't have to keep explaining this to You - You are the one that is supposed to be versed in the LAW. So, how about You tell Me?
And what can be done about it, really?

How exactly are You planning to defend ME?
What are You expecting Me to expect from You?

# ELLWANGER LAW
### EQUAL RIGHTS ATTORNEYS

November 14, 2017

**VIA U.S. MAIL**
Ms. Kamme O
PO Box 1231
College Station TX 77841

Dear Ms. O:

Thank you for contacting Ellwanger law regarding claims you believe you may have against Texas A&M University concerning your employment.  I appreciate the confidence you have shown in Ellwanger Law, but for various reasons the firm has decided not to represent you in this matter. If you have need in the future for legal assistance, I hope you will again consider our firm.

When we spoke on October 27, 2017, I explained that while we did not yet represent you, our conversations about the potential representation and any documents we shared while considering the representation were privileged. Those communications remain privileged. Any physical documents of yours that are in our possession are being returned and are enclosed with this letter. We will delete any electronic documents of yours from our computers within 30 days of this letter unless you instruct us otherwise.

In declining to represent you in this matter, Ellwanger Law is not expressing an opinion about the merits of your claims or whether you will ultimately prevail if you pursue the claims. You should not interpret our decision to decline representation as discouraging you from pursuing your claims with another law firm. Indeed, because the statute of limitations likely puts a time limit on when you can bring your claims, we recommend that if you want to pursue your claims you should contact another law firm immediately. If you need help finding another law firm, the Texas State Bar runs a Lawyer Referral Service that can be reached at 800-252-9690. We are not charging you for any legal fees or expenses. Please call if you have any questions.

Yours truly,

*/s/ Vas Manthos*
Vasilios "Vas" Manthos, Esq.

4:17-cv-03877

4:17-cv-03877

 Gmail

Kamme O <diversitygrrrl@gmail.com>

---

## FW: New Form Entry: Contact Form

1 message

**Vivian Clark** <vclark@henkelawfirm.com>                     Mon, Nov 20, 2017 at 8:03 AM
To: "DiversityGRRRL@gmail.com" <DiversityGRRRL@gmail.com>

I am sorry we are unable to assist you as we no longer handle employment law.  I suggest you contact Charles Peckham at 713-574-9044.

**From:** DiversityGRRRL@gmail.com [mailto:no-reply@editmysite.com]
**Sent:** Friday, November 10, 2017 11:02 AM
**To:** Charlie Henke <chenke@henkelawfirm.com>
**Subject:** New Form Entry: Contact Form

 LexisNexis®

You've just received a new submission to your Contact Form.

**Submitted Information:**

**Name**
Kamme O

**Address**
3503 Winding Road
Hearne, Texas USA 77859

**Phone Number**
9795751091

**Email**
DiversityGRRRL@gmail.com

**Comment**
23 year employee of Texas A&M University.

90 Day Right to Sue letter date: 09-21-2017

4:17-cv-03877

 Gmail

Kamme O <diversitygrrrl@gmail.com>

---

## RE: Right to Sue

**Ruby Torres** <rtorres@pmlaw-us.com>                              Fri, Dec 1, 2017 at 9:11 AM
To: Kamme O <diversitygrrrl@gmail.com>

Sorry Ms. O, but unfortunately we are unable to help. Please call HLRS at (713) 237-9429. They may be able to help refer you to someone who can help.

Thank you.

Ruby Torres, Legal Assistant
rtorres@pmlaw-us.com

 PECKHAM MARTIN

Peckham Martin, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044 – Telephone
(713) 493-2255 – Facsimile
www.pmlaw-us.com

**From:** Kamme O [mailto:diversitygrrrl@gmail.com]
**Sent:** Thursday, November 30, 2017 8:35 PM
**To:** Ruby Torres <rtorres@pmlaw-us.com>
**Subject:** Re: Right to Sue

[Quoted text hidden]

 Gmail

Kamme O <diversitygrrrl@gmail.com>

---

## Re: [Daic Law] Contact Us
1 message

4:17-cv-03877

**Megan Daic** <megan@daiclaw.com>                                    Fri, Dec 29, 2017 at 4:52 PM
To: Kamme O <DiversityGRRRL@gmail.com>

Good afternoon,

Thank you for your online inquiry to Daic Law. Unfortunately, we will be unable to assist you with your case.

I would suggest that you contact the Texas State Bar's Lawyer Referral Service at (800) 252-9690 for an attorney referral.

I wish you the best of luck in finding the right attorney for your case.

Take care, and Happy New Year.

Megan A. Daic
Attorney at Law
DAIC LAW
12777 Jones Road, Suite 210
Houston, Texas 77070
(713) 808-5246/Office
(832) 201-0713/Facsimile
Megan@daiclaw.com
www.DaicLaw.com

This communication is solely for the person to whom it is addressed. It contains legally privileged and confidential information. If you are not the intended recipient, you may not forward, disclose, copy, print, or save the message or its attachments. If you have received this message in error, please notify me immediately, and please delete this message.

On Dec 29, 2017, at 4:26 PM, Kamme O <wordpress@daiclaw.com> wrote:

> **Name:** Kamme O
>
> **Email:** DiversityGRRRL@gmail.com
>
> **Phone Number:** 979-575-1091
>
> **Comment:** 23+ year employee @ Texas A&M University, 3 separate careers:
>
> 1992-95 PARKING OFFICER: Left that job because the supervisor complained loudly that My hair is "too long, too red and too curly to be professional - if He could MAKE Me CUT My hair, He WOULD."
>
> 1995-1998: Carpenter Apprentice = 1996 written up by the supervisor that was very "Archie Bunker" style: "Being female she is a distraction to the male workers. While He was a grumpy good-ole-boy, HR was worse: They told Me they couldn't find the evaluation any place, HERE-sign this one?
> I said, "I have copy of it at home would you like one?"
>
> 1998-1999: Carpenter I - came into the work to a brochure laying on My workbench, "HOW TO GIVE A PROSTATE EXAM". - words do not describe the panic & disappointment I felt that day. The EXIT INTERVIEW did not transfer with My personnel file to EHS. The VP of Physical Plant became interim over Human Resources. The EXIT INTERVIEW was not distributed to the persons I requested receive a copy - that HR told Me would get a copy.
>
> 1999 - Safety Tech I @ Environmental Health & Safety: Ironically, I was hired because it was the 1st year of Resident Hall room by room inspections - TAMU didn't want to send a MALE into the female dorm rooms. But then right after the inspections were complete and Christmas holidays ended - JAMES RAINER, My

1 - ONE PAGE OF TWO -

supervisor stopped interacting with Me.

I won't write in the 15+ years of discrimination, passive aggressive retaliation, just know that sat in the SAME DESK, using the same mouse 1999 until May 1, 2015.

2014 I went to HR and asked to be allowed to do the job that I had..."I retire soon anyway."
April 21, 2014 EHS announced the "Restructure" of the department, effective May 1, 2015. This is when the retaliations became steady and I was systematically forced out. EHS sent the office home early, off the clock, and the Director, Assistant Director and 2 Supervisors came into My office, shut the door and handed Me a letter of termination for "work performance". No other details. So, appealing it was an estimated guess.

I was fired 47 working days after turning in a complaint to HR that the MALE inspectors were YEARS behind on the Eye Wash Shower inspections - They had the same supervisor and NONE of Them were suspended from using vacation time - as I had been, without warning, 07-17-2015 to 11-13-2015 (3 days after submitting the complaint there was an email: "based on Your work progress, You can now use Your vacation time." The actual written complaint only received a letter extending the "investigation" dated 01-05-2016.)

31C-2015-01426 filed 06-18-2015
Went from TWC to EEOC to D.C. and then a 90 day Right to Sue was issued 09-21-2017. (That EXIT interview from 1999 was also 09-21-99)

12-14-2017 Complaint Submitted to the Texas Southern District Court (Pro Se) 4:17mc3315, entered 12-18-2017.... I'm waiting to hear that that FEE WAIVER has been accepted.

I have audio of the 11-20-2015 of the female they assigned Me to in 2015 standing, yelling and beating Her fist at Me for over an hour. She DARED Me to file another complaint with HR. TAMU wrote in their response to the EEOC that I yelled at Her. I did not. I never yelled at anyone. The TAMU position statement reads like a TABLOID magazine.

Here's the kicker: After decades of abuse - after asking politely to be allowed to do the job - after no one back in 1996 informed Me of what the EEOC was or that I even had any "rights"...... when I filled out that paragraph that asked for "Resolution", I didn't really know what to ask for - but I had learned that ignorance is the tool TAMU abuses most. So, I aimed high. And well, logic wasn't something HR ever seemed to pay attention to so I requested $333,333,333,333.33 + 8 Home Game Season Tickets, which sections, where I would like parking spaces and an Aggie Ring, size 7 for having graduated the GOOD OLD BOY SYSTEM after 23+ years.

The funny part is that I wrote 3 more 3s than I meant too. LOL @ $333billion.
PROFIT/Money is what motivates TAMU, not so much actual integrity - so I aimed at what TAMU views as "important" to get their attention.

In the COMPLAINT to the court I wrote something like "if TAMU can pay the football coach $10 million to leave, $33 million is acceptable for 23+ years." After requesting that the working class be no longer outsourced. (maintenance, custodial, food services) And I requested that Human Resources be outsourced, so there is no longer a conflict of interest.

Oh, btw - HR was moved from the VP of Finance to directly under the President of TAMU after I was terminated from the job. 01-29-2016, effective 02-12-2016

It would really be nice to actually have someone fight for Me, for a change. I was a great employee - I have My evaluations 1999-2015. I also have 1999-2016 Fire Safety inspection notes in order by month & date. 1994 a student drew a cartoon of Me in the University newspaper - called Me a NICE Parking Nazi... Compared Me to Nicole Kidman. ;-)

Oh & well.... the "religious discrimination" has to do with I bled to death 12-18-1990. EHS management never actually had a conversation with Me about any of it - but I didn't get the promotion the month that the local magazine printed an article about My NDE. I was basically totally shunned after that...2010.

Have You ever worked in an office where the new employees are warned not to come meet You? ...what I am most guilty of is having a MIND of My Own and Perseverance. And well, being female.

4:17-cv-03877

 Gmail

---

**KammeO 31C-2015-01426**

---

**Vasilios Manthos** <vmanthos@equalrights.law>                                   Tue, Oct 31, 2017 at 2:20 PM
To: Kamme O <diversitygrrrl@gmail.com>

Thanks so much for your interest in our firm, and for speaking with us over the phone about a potential lawsuit.
Unfortunately, we are not in a position to represent you at this time.

Since you indicated you have already received a right to sue letter, we urge you to seek an attorney to represent you
as quickly as possible.  In addition, please be sure to keep copies of the documents you emailed to me since we won't
be able to maintain those documents on our system.

It was a pleasure speaking with you.  We wish you the very best of luck with your claims.

Take care,

Vas

Vasilios "Vas" Manthos| Ellwanger Law LLLP

8310-1 N. Capital of Texas Hwy., Ste. 190

Austin, Texas  78731

(737) 808-2264 (o)

vmanthos@equalrights.law

www.ellwangerlaw.com

**From:** Kamme O [mailto:diversitygrrrl@gmail.com]
**Sent:** Friday, October 27, 2017 9:11 PM
**To:** Vasilios Manthos <vmanthos@equalrights.law>
**Subject:** KammeO 31C-2015-01426

4:17-cv-03877



To   O, Kamme

ⓘ You replied to this message on 1/16/2015 10:39 AM.

**Monica D. Hartman, CHMM** | Environmental Safety Assistant Manager
Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

ph: 979.845.7378 | mobile: 979.492.7066 | monica-d-hartman@tamu.edu
facebook.com/theEnvironmentAtTAMU
- - - - - - - - - - - - - - - - - - - - - - - -
http://ehsd.tamu.edu
Twitter:@EnvironmentTAMU

Monica Hartman is listed within the TAMU EEOC 31C-2015-01426 Statements,
This email reads completely different from the "witness statement" by TAMU.

January 6, 2015                    Witness
                           Monica Hartman, Environmental Safety Assistant Manager,
                           EHS, Witness

AggieCarpenterMom@gmail.com                Kamme O v. TEXAS A&M UNIVERSITY      4:17-cv-03877

## EVIDENCE OF DISCRIMINATIONS:

- ☐ Kamme O first acquired the FLAME EFFECTS & the PYROTECHNICS Certifications in 2005.
- ☐ Kamme O's certifications are current and have been current since 2005.
- ☐ **Kamme O is the only current EHS Employee with the Flame Effects Certification.**
- ☐ **Kamme O is the only current EHS Employee with the Pyrotechnics Certification.**
- ☐ Since September of 1999 – when hired at TAMU EHS – Kamme O has not even been asked to attend, witness, learn or fill out a form having to do with either Flame Effects or Pyrotechnics.
- ☐ Kamme O has also not issued a HOT WORK permit or an OPEN BURN permit at TAMU.
- ☐ Kamme O also has the FIRE INSPECTOR I & FIRE INSPECTOR II Certifications.
- ☐ **October 1, 2014** – Corey Schultz commented to KammeO that when he attended James Rainer's class at BLINN COLLEGE, James Rainer told the class, "No one at TAMU is certified in Flame Effects but that he was looking into it."





Environmental Health & Safety

Home  Environmental  ▾  Health  ▾  Safety  ▾  About Us

Search this site



## How do I Request an Open Burn Permit?

Contact:
Adam Chavarria
(979) 458-8521
adam.chavarria@tamu.edu

https://ehsd.tamu.edu/Pages/Open-Burn-Request.aspx

|  |  |
|---|---|
| **Name:** | Adam C. Chavarria |
| **Title:** | Environmental Safety Assistant Manager |
| **Department:** | Environmental Health & Safety |
| **Duties/Keywords:** | |
| **Phone:** | |
| **Email:** | adam.chavarria@tamu.edu |
| **Mail Stop:** | 4472 |
| **Address 1:** | ENV HEALTH & SAFETY |
| **Address 2:** | |



AggieCarpenterMom@gmail.com                Kamme O v. TEXAS A&M UNIVERSITY      4:17-cv-03877

Notes written by KammeO, inside her 2014 Calendar:





**November 31, 2014:  Adam promoted to "Construction Manager"** for Fire & Life Safety after being hired as a TECH II September 2, 2013.

*TECH II was the position BELOW KammeO's position as a "Safety Specialist" and KammeO has applied for the FLS Construction position at least four times in the past. — with only ONE interview & the position sat VACANT for a very long time after that.

Kamme O has construction experience — Adam did not, yet James Rainer didn't seem to have a problem training HIM to do the job...??

<u>**WITNESSES:**</u>

<u>Rainer, James</u>
<u>Adams, Donna</u>; <u>Adkins, Debbie</u>; <u>Amos, Jodi</u>; <u>Arnold, John M</u>; <u>Bell, Aaron</u>; <u>Bien, Derek</u>; <u>Blankenship, Mary</u>; <u>Bowe, Michael R.</u>; <u>Brock, Babette</u>; <u>Brysch, Sean</u>; <u>Charlton, William</u>; <u>Chavarria, Adam</u>; <u>Collins, Theresa</u>; <u>Contreras, Johnny</u>; <u>Corkhill, Charles</u>; <u>Cryer, Cody</u>; <u>Debner, Gretchen</u>; <u>Durkee, Eloura D.</u>; <u>Eubanks, Toni</u>; <u>Falke, Eric</u>; <u>Fegan, Richard</u>; <u>Fields, John</u>; <u>Fischer, Cherie</u>; <u>Frederick, Duane</u>; <u>French, Gabriel</u>; <u>Garza, Jorge</u>; <u>Hartman, Monica</u>; <u>Hermann, Tassie</u>; <u>Hoffman, Maeci</u>; <u>Horne, Austin C</u>; <u>Jackson, Jerry</u>; <u>Jemelka, Blaire M</u>; <u>Kale, Swati G.</u>; <u>Karli, Susan</u>; <u>Kelly, Christopher F</u>; <u>Lackey, Larry J</u>; <u>Luna, Sergio</u>; <u>McCord, Dale</u>; <u>McGirr, Alicia</u>; <u>Menchaca, Daniel</u>; <u>Meyer, Chris</u>; <u>Mills, Robert</u>; <u>O, Kamme</u>; <u>Osborne, Dave</u>; <u>Owen, Christopher</u>; <u>Rainer, James</u>; <u>Rice, David</u>; <u>Robertson, Christina</u>; <u>Robinson, Kristen</u>; <u>Rodriguez, Luis</u>; <u>Smith, Tracy</u>; <u>Speed, Sean</u>; <u>Truss, Jeff</u>; <u>Tutt, James</u>; <u>Urbanczyk, Bradley</u>; <u>Vasudevan, Latha</u>; <u>Walker, Alvin</u>; <u>Ward, Jason</u>; <u>Weintraub, Monica</u>; <u>White, Robert</u>; <u>Wood, Marianna</u>



**Texas A&M University**
**Environmental Health & Safety**
**979.845.2132    4472 TAMU**
**Fire & Life Safety Inspection Report**

**December 13, 2013**
**2012 Demolition:**
1516 Wildlife & EXotic Animal
F & B RD
College Station, TX 77843

I noticed the DATES of the "Wildlife & Exotic" area – because I usually go there ONCE to inspect those 5 buildings. The 2013 Inspection dates are all spread out? Did Adam go out there 4 times or was **_FIREHOUSE the cause of the INCORRECT DATES?_**

**DATE OF INSPECTION** is an item that I asked EHS about many times via FIREHOUSE because the application inserted the date based on the date of the iPad and is unable to edited by the inspector.

Congratulations, an inspection of your facility on Dec 13, 2013 revealed no violations.



**Texas A&M University**
**Environmental Health & Safety**
**979.845.2132    4472 TAMU**
**Fire & Life Safety Inspection Report**

**December 19, 2013**
**2012 Demolition:**
2135 Wildlife & Exotic Animal
2699 F & B RD
College Station, TX 77843

FIREHOUSE Application:
Inspection Date is UNEDITABLE
From it's inception 2012.
(iPad SETTINGS "Create the "Inspection Date")

Congratulations, an inspection of your facility on Dec 19, 2013 revealed no violations.

2 of 5 Buildings Adam Chavarria "inspected" in 2013 show to be DEMOLISHED in 2012.

# 4:17-cv-03877



December 6, 2013

Wildlife Animal Office (1542)
2771 F & B RD
College Station, TX 77843

Congratulations, an inspection of your fac



December 6, 2013

1198 Wildlife Housing
2765 F & B RD
College Station, TX 77843

Congratulations, an inspection of your



December 13, 2013

9760 Wildlife & Exotic Animal
F & B RD
College Station, TX 77843

Congratulations, an inspection of your fac

4:17-CV-03877

BACKDATED

sent
4/1/2015

Send the specified copies to your
Workers' Compensation Insurance Carrier
And the injured employee.

*Employers – Do not send this form to the
Texas Department of Insurance, Division of Workers' Compensation,
unless the Division specifically requests a direct filing.

CLAIM #

CARRIER'S CLAIM #

## EMPLOYERS FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | 2. Sex | 15. Date of Injury (m-d-y) | 16. Time of Injury | 17. Date Lost Time Began (m-d-y) |
|---|---|---|---|---|
| O, Kamme | F ☒ M ☐ | 10/1/2014 | ☐ am ☐ pm | |

| 3. Social Security Number | 4. Home Phone | 5. Date of Birth (m-d-yyyy) | 18. Nature of Injury | 19. Part of Body Injured or Exposed |
|---|---|---|---|---|
| xxx-xx- 6830 | (979) 575-1091 | 03-30-1966 | strain | neck ☐ |

| 6. Does the Employee Speak English? If No, Specify Language | 20. How and Why Injury/Illness Occurred |
|---|---|
| YES ☒ NO ☐ | Ergonomics Issue with iPad use for entering inspections = looking down at lap to enter data. |

| 7. Race | White ☒ | 8. Ethnicity | Hispanic ☐ | 21. Was employee doing his regular job? | YES ☒ NO ☐ | 22. Worksite Location of Injury (stairs, dock, etc.) |
|---|---|---|---|---|---|---|
| | Black ☐ Asian ☐ | | Native American ☐ Other ☐ | | | 1111 Research Parkway |

9. Mailing Address   Street or P.O. Box
PO Box 1231

23. Address Where Injury or Exposure Occurred
Name of Business if Incident occurred on a business site:
Street or P.O. Box   EHS TAMU
1111 Research   County   Brazos

| City | State | Zip Code | County |
|---|---|---|---|
| College Station | TX | 77841 | Brazos |

| City | State | Zip Code |
|---|---|---|
| College Station | TX | 77843 |

| 10. Marital Status | 24. Cause of Injury (fall, tool, machine, etc.) |
|---|---|
| Married ☐ Widowed ☐ Separated ☐ Single ☐ Divorced ☒ | Strain |

| 11. Number of Dependent Children | 12. Spouse's Name | 25. List Witnesses |
|---|---|---|
| 0 | | Babette Perkins |

| 13. Doctor's Name | 26. Return to work date/or expected (m-d-y) | 27. Did employee die? | 28. Supervisor's Name | 29. Date Reported (m-d-yy) |
|---|---|---|---|---|
| | | YES ☐ NO ☒ | Zeiger, Dave | 03-27-2015 |

14. Doctor's Mailing Address (Street or P.O. Box)

City          State          Zip Code

| 30. Date of Hire (m-d-y) | 31. Was employee hired or recruited in Texas? | 32. Length of Service in Current Position | 33. Length of Service in Occupation |
|---|---|---|---|
| 8/13/1992 | YES ☒ NO ☐ | Months 7  Years 22 | Months 7  Years 22 |

| 34. Employee Payroll Classification Code | 35. Occupation of Injured Worker |
|---|---|
| 0406 | Fire Inspector III |

| 36. Rate of Pay at this Job | 37. Full Work Week is: | 38. Last Paycheck was: | 39. Is employee an Owner, Partner, or Corporate Officer? |
|---|---|---|---|
| $19.66 Hourly  $786.40 Weekly | 40 Hours  5 Days | $1,572.80 for  Hours or 10 Days | YES ☐ NO ☒ |

| 40. Name and Title of Person Completing Form | 41. Name of Business |
|---|---|
| Susan Karli/Bus. Administrator I | Texas A&M University |

| 42. Business Mailing Address and Telephone Number | 43. Business Location (if different from mailing address) |
|---|---|
| Street or P.O. Box          Telephone | Number and Street |
| 4472 TAMU     (979) 862 8114 | Texas A&M University Human Resources (1255 TAMU) |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| College Station | TX | 77845 | College Station, | TX | 77843-1255 |

| 44. Federal Tax Identification Number | 45. Primary North American Industry Classifications System Code (6 digit) | 46. Specific NAICS Code (6 digit) | 47. Texas Comptroller Taxpayer No. |
|---|---|---|---|
| 74-6000-531 | XXXX | XXXXXX | XXXX |

| 48. Workers' Compensation Insurance Company | 49. Policy Number |
|---|---|
| Texas A&M System Risk Management | Self Insured |

| 50. Did you request accident prevention services in past 12 months? |
|---|
| YES ☒ NO ☐   If yes, did you receive them?   YES ☒ NO ☐ |

51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)
X Susan Karli          Date 4/1/2015

DWC FORM-1 (Rev. 10/05) Page 3
Form 569c

DIVISION OF WORKERS' COMPENSATION
5-1-2012

**From:** Karli, Susan
**To:** O, Kamme
**Subject:** RE: Contact at HR for workers compensation
**Date:** Wednesday, April 08, 2015 4:09:12 PM
**Attachments:** image001.png

4:17-cv-03877

Thank you for the information.  I will put it in your medical file.

**From:** O, Kamme
**Sent:** Wednesday, April 08, 2015 1:22 PM
**To:** Karli, Susan
**Subject:** RE: Contact at HR for workers compensation



1 OF 2

Don Cumby phoned me back – They had it, but filed as "October" – I explained to him, like I attempted to explain to you, that I couldn't say exactly what DAY or when, that's it's been an ongoing situation since early 2013.   That Friday, 3/27/2015, while entering reports on that iPad is when I finally could not stand looking down at it anymore.  My neck and right ear have BEEN bothering me for quite some time. It's just gotten to the point the ache makes me nauseous.

Beginning 2012/2013 I've asked/explained to Richard Fegan, James Rainer, Christina Robertson and Dave Zeiger many different times that entering the reports on the iPad is tedious, time consuming, often fails to function/sync and is uncomfortable. "Why can't I use the desktop with the larger screen and real keyboard?"  I just hadn't linked the ear/neck discomfort to the ergonomics of it until Friday – because I just could not KEEP looking down, so I was holding it up in the air in front of me.

For the longest time I have BEEN attempting to explain that the FireHouse application is not reliable or accurate and that the iPad is way more work than any inspection data situation previous here at EHS that I am aware of.
What I am told is basically, "it's been paid for" and "it's what we have to use".  From beginning to use the iPad application in late 2012 until after Dave Zeiger was hired - and has worked on communicating with FireHouse to EDIT the application list of items, late 2014 early 2015 – there was literally 26.5 FEET of items to scroll through to enter one item.  Early on if there was a change or edit to a report PDF, Richard Fegan would have me RE-Enter the entire report.  For Wisenbaker – that was 11 pages of notes, FOUR times.

If I had thought that dealing with FireHouse & the iPad was going to create the hearing issue and neck pain that I have been having – I certainly would have complained MORE than the verbal & written    As it has been, I'm just emotionally and physically tired of attempting to explain what I need to do the job proficiently, why and what is not working with the FireHouse application and the iPad, because the general reactions I receive have been excuses and invalidations. Only since Dave Zeiger arrived 9/2014 has the application actually been edited down to 48 items, from the original 108 items @ 26.5'.

I originally left the "date of injury" blank because I just couldn't say exactly what date my neck hurt or my ear did that mono/stereo thing? I explained this to Don Cumby and with my permission, he is

going to change the "date of injury" to 3-27-2015 which is when the injury form was filled out.  (I put the form in Dave Zeiger's mailbox after not seeing him Friday 3/27 – then he didn't find it, because his mailbox moved, until 3/31/2015 Tuesday, after I asked him if he had gotten it, because he hadn't said anything about it to Me?)

I went to the Chiropractor today (4-8-2015) – according to Cliff Walker, the bump I can press to switch the hearing on/off thing is the bone in my neck.
As far as your suggestion that it "could just be age" or "old horse related injury" – I haven't had any notable physical injury for almost a decade and the numbness in my face has always been towards the end of the day at EHS after sitting at my desk, pecking and scrolling on that FireHouse application via the iPad.

Sincerely,
Kamme O

*4:17- cv- 03877*

**Kamme O | Fire Inspector III**
**Environmental Health and Safety | Texas A&M University**
**ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu**
- - - - - - - - - - - - - - - - - - - - - -
www.tamu.edu

*2 of 2*

**From:** Karli, Susan
**Sent:** Wednesday, April 08, 2015 12:00 PM
**To:** O, Kamme
**Subject:** RE: Contact at HR for workers compensation

Thanks.  I faxed it over to the number they have on the report (979 – 862-3128

**From:** O, Kamme
**Sent:** Wednesday, April 08, 2015 11:58 AM
**To:** Karli, Susan
**Subject:** RE: Contact at HR for workers compensation

FYI,
I phoned Don Cumby. He said he doesn't have the first report of injury.. is going to look for it. Where was it sent to, how?

And Don Cumby is 862-5390

KO

4:17-cv-03877

**From:** O. Kamme
**To:** "Ball, Kaye"
**Cc:** "hk-law@austin.rr.com"
**Subject:** RE: Right to Appeal
**Date:** Tuesday, July 14, 2015 1:18:25 PM

"It does not show a direct correlation" – based on what exactly?
I'm the one that knows WHEN & WHAT creates stress/pain in my neck, upper back & inner ear.
There's been no "investigation" of my work environment – that I am aware of.  So, how could you possibly KNOW?
I phoned the number you supplied. Thank you. They'll do whatever it is that they do.

KammeO

*[handwritten: 1 OF 2]*

**Kamme O | Fire Inspector III**
Environmental Health and Safety | Texas A&M University
ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu
------------------------
www.tamu.edu

**From:** Ball, Kaye [mailto:KBall@tamus.edu]
**Sent:** Tuesday, July 14, 2015 8:49 AM
**To:** O, Kamme
**Subject:** RE: Right to Appeal

*[handwritten: JULY 14, 2015 = WORKERS COMP DENIED]*

Ms. O,

I have reviewed the medical notes that I received from Walker Chiropractic and the x-ray from Scott & White.   It does not show a direct correlation between your work environment and the problems you are having with your neck and ear.  Your claim is denied.  If you would like to dispute this
decision, you will need to contact The Texas Department of Insurance-Division of Workers' Compensation to request a Benefit Review Conference.  The number is 1-800-252-7031.  The Office of Injured Employee Council has an ombudsman that can assist you at no charge to you.

Thank you,
Kaye Ball

**Kaye Ball | Claims Adjuster**
Office of the Treasurer | Risk Management
kball@tamus.edu

1262 TAMU | College Station, TX  77840-7896
Tel.  979-458-6330 | Fax 979-458-6247 | www.tamus.edu

John B. Connally Building
301 Tarrow, 5th Floor
College Station, TX  77840-7896

THE TEXAS A&M UNIVERSITY SYSTEM

*[handwritten: STATUS]*

**From:** O, Kamme [mailto:kammeo@tamu.edu]
**Sent:** Monday, July 13, 2015 9:43 AM
**To:** Ball, Kaye
**Cc:** 'hk-law@austin.rr.com'
**Subject:** Right to Appeal

*[handwritten: JULY 13, 2015 = ???]*

Good Morning Kay,
So what did ever happen after this email?  My neck still aches and my ear still does that on & off thing.
Far as I know, no copy of the original document ever made it to EHS.
And the date on the form should have read 03-27-2015, = when I filled it out.

Seems like Susan Karli changed the date to suit HER speculation that "it's probably just age – or an old horse related injury" and that she knew it would get tossed out because of this 30 report thing:

> **You have the responsibility to tell your employer if you have been injured at work while performing the duties of your job.** You must tell your employer within 30 days of the date you were injured or first knew your injury or illness might be work-related.

I reported it as soon as I figured out WHAT was making my neck hurt – because I could not look at that iPad in my lap or on the desk anymore – and I only found out about the ear being neck related when I went to the chiropractor.

And anytime I asked Susan Karli about what to do or how to know -- She was basically, "I don't know".
She came into my office after my supervisor gave her the form I filled out and told me SHE didn't know if she could submit it as an injury or not?
The whole situation caught me off guard = You think you know someone until you find out that you don't.
Susan Karli has been grumpy -- unhelpful and just completely different from who I thought she was ever since I submitted that injury report.

And recently, she called me into her office and "ever-so-sweetly" offered me FMLA.  What is THAT about?
I just declined.
Then she emailed me all the FMLA info anyway.  That's weird. What's the REAL reason for doing that?

*2 OF 2*

March 27, 2015 IS exactly the date that I noticed the connection between my neck & that iPad, because I just couldn't MAKE myself do it without
 holding it UP above my shoulders.  I've been avoiding it as much as possible.

The pain meds the S&W doctor gave me totally KNOCK ME OUT -- even if I take a fourth of it.  I'd really rather find another way to ease the neck
 stress, which is why I went to the chiropractor.
If I have to locate one that will accept the worker's comp situation -- then I will, but I am waiting on you to do what it is that you do.

I'd appreciate it if you would take care of this -- so I can take care of my neck.

Sincerely,
Kamme O

**Kamme O | Fire Inspector III**
Environmental Health and Safety | Texas A&M University
ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - -
www.tamu.edu

---

**From:**    Ball, Kaye
**To:**      O, Kamme
**Subject:**  RE: S&W forms from 05-22-2015
**Date:**    Thursday, May 28, 2015 1:49:31 PM

*MAY 28, 2015 = REQUEST S&W RECORDS*

Hi Ms. O.

 I did receive the notes from Walker Chiropractic and I have requested the notes from the
visit at Scott & White.  I will let you know when I have received these and reviewed everything.

Thank you,
Kaye Ball

*↑ "WILL LET YOU KNOW"*

**Kaye Ball | Claims Adjuster**
Office of the Treasurer | Risk Management
kball@tamus.edu

1262 TAMU | College Station, TX  77840-7896
Tel.  979-458-6330 | Fax 979-458-6247 | www.tamus.edu

John B. Connally Building
301 Tarrow, 5th Floor
College Station, TX  77840-7896

THE TEXAS A&M UNIVERSITY SYSTEM

4:17-cv-03877

**From:** Karli, Susan K
**To:** O, Kamme
**Cc:** Robertson, Christina E
**Subject:** 2nd Request for Physician"s Certification for FMLA
**Date:** Thursday, July 16, 2015 7:45:18 AM
**Attachments:** Kamme O - Second request for Physician"s certification.pdf
image001.png

Attached is the second request letter and form for the Physician's Certification for your benefits covered under FMLA. A hard copy has been placed in an envelope in your mailbox located in the EHSD work area. Please sign the letter and return to me. Also return the Physician's Certification within the 7 days of this letter.

Thanks,
Susan

**Susan Karli** | Business Administrator 1
*I'm an* HR Liaison

Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

ph: 979.862-8114 / fax: 979.845-1348 / susan.karli@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - -
**It's Time for Texas A&M**


# Kamme O v. TEXAS A&M UNIVERSITY    4:17-cv-03877

After Susan Karli backdated the 1st Report of injury and Worker's Comp was denied, EHS TAMU started offering KammeO FMLA over & over.

This email is July 16, 2015 - July 17th is the day of the meeting with Swait Kale, witnessed by the EHS Director Christina Robertson, where KammeO is asked what the status of inspections is, followed by, "until further notice you are not going to be allowed to use any vacation."

The vacation suspension lasted from July 17 to November 13, 2015.

November 10, 2015 is the date of the written COMPLAINT to TAMU PPR: Proof of Retaliation, Eye-wash Showers are YEARS BEHIND inspection by the men that work for Swati Kale and they are not suspended from using vacation time.

TAMU PPR extended the "investigation" on January 5, 2016 and then no answer to the complaint.

January 29, 2015 KammeO was terminated from 23+ years of employment at TAMU, 16yrs EHS.

 Gmail

Kamme O <bestillandknow.kammeo@gmail.com>

---

## 07-17-2015 Audio 28 minutes - Swati ASKS Me for inspections are completed or not - but had already decided to take away the use of vacation.....

---

**KammeO** <bestillandknow.kammeo@gmail.com>                                    Tue, Nov 15, 2016 at 6:39 PM
To: Derek Howard <hk-law@austin.rr.com>

Swati AGREES with Me - Says I have LEGITIMATE COMPLAINTS about FIREHOUSE.

This is the FRIDAY before I leave on VACATION that I submitted back in April for July.  It is also the DAY AFTER Susan Karli emails Me the FMLA form.

This audio begins with Swati asking Me what have I inspected and what haven't.

Christina Roberstson was the surprise witness to this meeting - She's careful to be quiet, except when I mention the dates on the inspections are wrong because of the FIREHOUSE application.


9:00  - KammeO -"Are you including the time I took off on vacation?.."

10:30  - KammeO -**David Zeiger can't type.... ("none of the guys can type")**

11:07 -  KammeO - "All I'm saying is, I'm working as fast I can with what I've got and they've <u>increased the amount of inspections...</u>"

## 11:15 - KammeO - **Get Me some help?**

11:17 - KammeO -I'll go out and I'll knock out all the inspections, that's not the problem. **The problem is getting it in the iPad and actually having the iPad work.** And email it to whoever it's going to..

11:28  - KammeO -Sent files going to the OUTBOX.. not showing up...

11:40 -- KammeO - Never never land...

11:50 - <u>I ASK FOR HELP entering reports and why. I explain how bad and items don't work with FIREHOUSE ... how **My neck HURTS.**</u>

**(My neck still hurts - but I could not pursue BOTH this discrimination situation AND the worker's comp situation.)**

12:03 - Swati, "Make O&M your priority.."

12:04 - KammeO "..it needs to be finished first, because if you touch the iPad it'll delete it."

12:30  - KammeO - talks about  how entering ONE large building on the iPad takes a long time - looks like nothing is being done... while being out on campus inspecting makes the report of the large building wait... Cannot load new buildings without completing the previous, ongoing inspection or it will be lost and have to enter it all again.

**12:52 - KammeO - "I've been with James ONCE in fifteen years"....**

**12:55 - KammeO - "If you compare My inspections with other people's inspections.."**

**12:59 - Christina Robertson: "We're getting off topic.."**

## 13:00 -  KammeO -**"I am saying I need some help with the iPad.."**

## 13:08 - Swati - "that's not going to happen.."

4:17-cv-03877

13:10 - KammeO - "all I can tell you is I'll do that best that I can..."

**13:15 - Swati, "Fine, gimme a list of what is pending according to the month it was assigned to you..."**

13:28 - Swati, "Next, annual leave..

13:40 - Swati tells me **no more annual leave will be approved** until I am caught up on inspections.. just so you know.. because we need to catch up on inspections.

13:58 - KammeO - "That's the first time in 23 years anyone has ever told Me that - but that's good, go for it."

14:05 - KammeO - " Well, can we get an inspection program that actually works?"

***Swati talks about she is already working on that -- but yet this is JULY 2015 and January 29, 2016 I am still using the exact same program on the same iPad.

14:50 KammeO - "I'm the one that's been living with it since 2012.."

## 15:33 - Swait - "I just want you to know that if you submit anything it is not going to be approved."

15:35 - KammeO - "till when?"

15:38 - Swati - "Until ALL assignments are caught up on..

15:40 - KammeO - "then get a program that works.."

15:42 - Swati - "I will, I'm working on it"

**15:44 - KammeO - for YEARS I haven't used any vacation and I was almost to the brink of having to throw it away, so it's like fine, I'll use it ... Y'all don't want me here ... the way you treat Me is emotionally abusive..the way I've been moved...... Not you specifically - THE OFFICE - so.. it's like, okay I've got vacation time, I will get out of your way.. let Me go... you know...**

**16:03 - KammeO - You don't want to work with Me on firehouse, you don't want to listen to anything I have been trying to tell y'all... I have given LISTS and lists of things..**

16:30 - KammeO - it's not about cross train - it's about databases that keep having to be set up.... when John Fellers got the manager position **I was the one that gave him all the data** that created the original excel spreadsheet that was out inspection program, he got all that from Me. Years & years & years of typing up stuff and having it approved, saving the sentences that were approved so that it was consistent...

**16:55 - KammeO - I have all this experience and I'm just left to sit in the corner...**

16:59 - Swati - Okay KammeO, what happened in the past...

**17:02 - KammeO - It's not happening the past it totally happening all along, it just got bumped to you...it's new to YOU..but it is not new to this department**

17:11 - Swati - I don't want to pass a judgment or a comment on that because I wasn't involved. I am not concerned with that. Whatever happened in the past needs to stay in the past..

17:16 - KammeO - it's not in the past because it's not fixed yet...

17:20 - Swati - That's what I'm saying, it's going to be fixed..

## 17:28 - KammeO - I've been working on an unfinished product for three years

## 17:31 - Swati - "I know, but

4-17-CV-03877

17:39 - KammeO - I care about the inspections actually being able to be typed in and go in a feasible amount of time..

17:48 - Swati - We need time to set those things up...

17:55 - KammeO - "I've been hearing THIS for a long time..so okay, I believe you, go ahead

**18:06 Swati - Forget who said what in the past..**

18:07 KammeO - I'm not going to forget because it is what I am still working with. How am I supposed to forget when I am still having to work with it?

**18:13 Swati - I'm not asking you to forget anything...**

18:14 KammeO - You just did

18:15 Swati - Well because that does not concern me..

18:17 KammeO - I'm still working with the SAME STUFF

18:20 Swati - Well because I don't have any alternative

18:23 KammeO - Well then don't tell Me to quit thinking about the past, because don't think about the past means I don't have to work with FIREHOUSE the way it is.

18:30 Swati - You have to keep working with it

18:29 - KammeO - Well then it's not the past

18:31 - Swati - Okay fine if you want to gripe about it that's fine

**18:35 - KammeO - I'm not griping I'm just pointing out we are not, we're in the current and I'm still working with the same stuff that doesn't work**

## 18:41 - Swati - YES, I agree. I agree. I'm not saying that you're not making a legitimate comment here that it's not working, I'm not saying that, that's not working.. I'm just saying that just give me some time to give you another finished program

18:54 - KammeO - That's fine, but in the meantime I'm - don't plan on Me being happy working with the same program that doesn't work

19:00 - Swati - I am not saying that You should...

19:03 - KammeO - It's not even about being happy, it's about being able to get it done in the time there is to get it done.

19:07 - Swati - Kamme, others are doing it, I don't understand why you have a problem doing it?

**19:12 - KammeO - because My neck hurts, because My ear turns on & off, because I am fed up with trying to get it done and it failing. You know, for the first year the daggum dates are wrong...**

19:26 - KammeO - and Fegan didn't know how to get the right date...

19:30 - KammeO - The fact that I have to change the setting in the iPad for the date I want the report to read is crazy..

19:52 - KammeO - Richard Fegan says, oh it doesn't matter, we don't know how to fix it, just do it.

**19:55 - Swati - That's why we are trying to find SOMETHING that will work better** .....and have the same issues again...

# 20:17 - KammeO - I'm just telling You the reports You are dealing with are false...

4:17-cV-03877

20:19 - Christina Roberston (softly)  - The inspections have to be completed

20:23 - KammeO - Okay.

20:33 - Swati -  Yes. I just want you to know **I cannot approve anymore annual leave** until we are caught up on inspections.

20:34 - KammeO - I figured that was coming since I've been getting hit with the FMLA..paperwork all of a sudden.

20:38 - Swati - Well I don't know about that...

20:39 - KammeO - Yeah well nobody ever gave it to Me back when I had MRI's, cat scans & a spinal tap, but they sure think about it now..

21:17 - Swati - Okay..um..next... since we have so many that are to be done.. **give me a list..**

21:53 - Swati - Hours of work, I understand You are on a flex schedule for 830-530? We cannot come early, we cannot stay late..

22:09 - KammeO - fine with Me.

22:15 - Swati - Last thing, Safety Net, calendar check outs, I notice that..

22:34 - KammeO - I don't know how long it will take Me from when to where?

22:36 - Swati - Yes, but...

22:47 - KammeO - It's an "ALL DAY" thing... so You know WHERE I'm at...

22:58  - Swati - Yes but..

23:29 - KammeO - hmm, it's very tedious that calendar & there's 2 different ones and it doesn't always go to the same one...

(Safety NET is not a time clock.. it's an online checkout calendar. One of the choices it has is a box to check for "ALL DAY.) - very tedious time-consuming calendar to get to, to enter....

**28:38 Swati - I need that schedule of when & where... whatever is pending.**

24:16 KammeO - ???

## (So Swait is ASKING ME for the info of what is past due??? AND taking away any use of vacation time??)

25:30 - Swati - Do You have any questions?

25:39 - KammeO - UnUm? Not that I can think of right this minute...

25:44 - Swati - ..explains about not being able to sync the iPad..without it deleting the other ones.

25:56 - KammeO - Yep, far as I know, yeah, I wouldn't touch the iPad without getting it finished

**26:03 - Swati - I told You I cannot approve anymore vacation leave ..okay?** um.. <u>I want the schedule.. I want</u> <u>what's pending...I want the status.. if You've inspected, I want to know</u> when You are planning to inspect...when do You plan to inspect...k

26:20 - Swati - and I told You, You cannot work past 830 to 530 ...

4:17- cv· 03877

26:35 - KammeO - So what is this exactly? What does this mean (the form, it's the first time seeing a review form) ...is there a definition behind writing all this down?

📄 07-17-2015 Swati Vac-Inspec.m4a

26:39 - Swati - <u>**We** want to document it.</u>

26:42 - KammeO - For? Because this is the first time I've ever sat down and everybody is like written it down in this little happy sheet of paper??

26:48 - Swati - Because the work is pending...I want to know why it is pending? If You give Me a schedule and You don't stick to that schedule

26:56 - KammeO - Right, w- **this is the first time You've ever asked Me all of these things, but You wrote them down?** So, I'm curious why We are documenting?

**27:03 - Swati - I don't know why it was not asked before? Okay? Honestly, I don't know.**

27:08 - KammeO - So, basically You're just making sure that You prove that You asked Me this?

27:12 - Swati - No I'm just making sure it gets done in the time You say it will be done.

27:16 - KammeO - Right.

**27:17 - Swati - just so You understand that it's a lot pending, it's not just one assignment or two assignments pending, it's multiple, like 16 or 17 assignments pending , not counting July**

27:30 - KammeO - Hmmm?

27:32 - Swati - because I did not even count July

27:33 - KammeO - That doesn't sound right - I'll have to go look and see?

<u>27:34 - Swati - That's fine I want a complete list from You... okay?</u>

27:37 - KammeO - Yeah? That doesn't sound right. Doesn't seem right at all.

27:42 - Swati - just forward Me those emails, k?

27:43 - KammeO - Mmhmm.

27:48 - Swati - Sign here?

27:50 - KammeO - Okay, I want a copy of this.

27:50- Swati - Sure.

27:52 - KammeO - Where do You want Me to sign it?  Are You going to date it?

28:01 - Swati - MmHm.

4:17- cv-03877

| | |
|---|---|
| **From:** | Yetter, Sheridan L |
| **Sent:** | Friday, July 24, 2015 10:40 AM |
| **To:** | Kuhlmann, Jim R |
| **Cc:** | Cumbie, Donovan R; Satterfield, Anna M |
| **Subject:** | FMLA  denial - Kamme O.doc |
| **Attachments:** | FMLA  denial - Kamme O.doc |
| | |
| **Importance:** | High |

Hi Jim,

I talked to Christina Robertson and have edited the attached FMLA denial letter for Kamme O.  Ms. O did not indicate a need for FMLA, however, based on best practice and training received, the department sent the notice of eligibility for FMLA and request for physician certification to her because of the pattern and frequency of absences.    Because of this, I don't think we should cite specific absences as being 'unapproved', however, I think we should let her know that, until the certification is provided and a determination can be made that her absences for a particular condition would be covered under FMLA, she can use accrued sick leave and vacation (if she no longer has sick leave) for absences that would qualify for sick leave.   Can you draft a letter that communicates this?

Also, there is another issue that might interfere with Ms. O's use of annual leave for sick leave purposes.  Could you please give me a call to discuss?  If you can call on Monday (7/27) before 10:00, Don and I should both be available.

Thanks,

Sheri

APPEARS THE REASON TAMU
EHS KEPT PUSHING ME TO
SIGN FMLA WAS TO TERMINATE
ME FOR USING SICK LEAVE?
I DID NOT REQUEST FMLA.
I DID NOT SIGN ANY OF IT,
AS I DID NOT TRUST TAMU. Kelle

5

4:17-cv-03877

July 23, 2015

Kamme O
PO Box #1231
College Station, TX 77841-1231

Dear Kamme:

This letter is written to notify you of your leave status. and inform you that previous absences noted below will not be designated as leave under The Family and Medical Leave Act (FMLA) at this time.

You were notified in a letter dated (7/16/2015) that you had not provided us with the necessary information to certify your FMLA leave and were given an additional seven calendar days to tend to our request.  We have not received the Certification of Health Care Provider form or other sufficient information as of today's date. Unless and until the required documentation is provided, your absences below will not be designated as FMLA leave. Without that designation, the absences below will not be FMLA protected and will be considered to be unapproved:

6/16/2015 – 2.5 hours
6/18/2015 – 2.00 hours
6/26/2015 – 4.00 hours
7/13/2015 – 4.50 hours

*I MERELY USED THE SICK LEAVE I AM ENTITLED TO — AS USUAL. IF I HAD SIGNED THE FMLA REQUEST THIS IS WHAT TAMU HAD PLANNED.*

System policy requires that you provide appropriate medical documentation to account for your use of sick leave in instances where you are absent from work due to your own medical condition or your need to care for an eligible family member who is ill or injured. Accordingly, please note that your use of leave during the date(s) above is under review to ensure you have provided sufficient documentation to account for your absences.

The leave's designation under review may be restricted or changed to other appropriate leaves (such as vacation, leave without pay, etc.) in the event we find you have not provided us with appropriate documentation.  Additionally, please be aware that you may be subject to disciplinary action for your absences where allowed by Texas A&M rules and regulations.

Please do not hesitate to call me at 862-8114 if you have questions about FMLA leave, your leave status, or the contents of this letter.

Sincerely,

_____           _____
Liaison or appropriate designee                          date

=================================================================

From:     O, Kamme
To:       Kale, Swati G
Cc:      Robertson, Christina E; Fields, John R
Bcc:    Strawser, Jerry R
Subject: FH notes
Date:   Thursday, August 13, 2015 4:01:39 PM

*[handwritten: 4:17-cv-03877]*

*[handwritten: AUGUST 13, 2015]*

*[handwritten: TO V.P. STRAWSER]*

To who it may concern,

       Since late 2012 I have attempted to address assorted issues as they presented themselves with the FireHouse inspection application by keeping notes, creating lists, screen shots, verbally expressing and numerous emails to Richard Fegan, James Rainer and Christina Robertson, and then David Zeiger. Before David Zeiger edited FireHouse earlier this year (2015) the application literally had 26.5' of items to scroll through, some of them repeats. I have been personally inspecting buildings at the TAMU campus since 1999 – and it is beyond me why no one at EHS has ASKED for any input or what items do I find most often?

       Here I am again – as I edit the 0443 O&M inspection – I took time to SNIP a few issues, noted below.  I have never understood why the inspectors are forced use a tedious, undependable application on an iPad, instead of creating a WORD document and saving it as a PDF using a full size keyboard and monitors.  There are roughly 250 discrepancies listed for the most recent 0443 O&M inspection, but one would have to count that up by hand because the FireHouse program does not number the individual items.

Just a list of items to remind whoever deals with FH tech support:

1.) Default "YES to All" (delete NA) would save having to touch the screen up to 19 times just to begin an inspection.
2.) Default WHO the inspector is – as building is assigned & sent. (Instead of having to scroll & choose self)
3.) Delete employees from FH that are no longer inspecting or work for EHS.
4.) FH does not number each discrepancy.
5.) No need to have a place for the 2nd signature at the end of the report. (FH requires a scribble there)
6.) FH inserts whatever DATE the iPad thinks it is – have to adjust the iPad SETTINGS for the inspection report to have the actual correct inspection date, before completing the report within the application.

*[handwritten: DATE OF INSPECTION ISSUE]*

  - FireHouse - space missing between "&/Unobstructed"

> **NFPA 101 7.10.2.1 Exit Signage Functional, Directional &Unobstructed**

  - FireHouse formats OUT of the available PRINTER RANGE. (Potential that the occupant will not notice items that fail to print) -

4:17-cv-03877

## Complaint & Appeal Form
### Non-faculty Employee

*TAMU HAS NOT ANSWERED THIS COMPLAINT =*

**Privacy Notice:** State law requires that you be informed that you are entitled to: (1) request to be informed about the information collected about yourself on this form (with a few exceptions as provided by law); (2) receive and review that information; and (3) have the information corrected at no charge. To make requests, contact hrpolicy@tamu.edu or (979) 862-3331.

**INSTRUCTIONS** Please provide the information requested on this form. This information will be used by Texas A&M University, Policy & Practice Review (P&PR) following the procedures and timeframes referenced in *System Regulation 32.01.02, Complaint and Appeal Process for Nonfaculty Employees*, and *System Regulation 08.01.01, Civil Rights Compliance*. P&PR staff is available to provide guidance and assistance during any step of the process.

**TYPE OR PRINT - USE BLACK OR BLUE INK**

| Kamme O | 11-09-2015 |
|---|---|
| Complainant's Name | Date |
| Occupational Safety Inspector III | 801005252 |
| Title | UIN |
| PO Box 1231, College Station, Texas 77841 | 979-575-1091 cell, 979-862-4040 office |
| Mailing Address | Current Phone Number |
| bestillandknow.kammeo@gmail.com kammeo@tamu.edu | TAMU Environmental Health & Safety |
| Email address (optional) | Department |
| 08-13-1992 | 08-10-2015 and currently in effect. |
| Date of Hire | Date of Action or Incident that led to this Complaint. |

1. **What is the subject of your complaint (Example: Wages, termination, etc.)**

   Retaliation: Unable to use vacation time since returning from vacation July 2015.

2. **On what date(s) did you discuss this complaint with the appropriate member of management?**

   08-10-2015, 11-04-2015

3. **Who is your complaint against?**

   TAMU EHS - Christina Robertson, Brad Urbanczyk, Swati Kale.

Deadline to submit Complaint form is _____ by 5:00 p.m.

**Office Use only.**

Date Received: _____ Time Received: _____ Received by: _____



4:17-cv-03877

INSTRUCTIONS Provide firsthand information describing your Complaint & Appeal.  Also provide or list any evidence that would support your position and assist Policy & Practice Review (P&PR) with their investigation. This form may be duplicated if additional space is necessary.

TYPE OR PRINT - USE BLACK OR BLUE INK

July 2015 I returned from an extended vacation - approved April of 2015. August 10, 2015 at the very first "Monthly Review Meeting" I was informed that I would not be able to use vacation time "because inspections are behind".  The amount of inspections assigned to me is at least double what the past decade's assignments were previously and EHS keeps ADDING MORE.

While inspecting Jack E. Brown, I noticed the emergency eyewash stations are all out of date. Having been inspecting for Fire Safety 1999-May 2015, since EHS put all the inspectors together - I decided to inquire about who is responsible? Swati Kale said EHS inspects the eyewash stations on campus.

Well, if they are to be inspected annually - and the tags read 2012, WHO ELSE is "behind" on inspections?  And have

THEY been disallowed to use vacation time?  Far as I know - I am the only employee that is or has ever been disallowed the use of vacation time.  This is why I believe it is retaliation for having filed a complaint with TWC/EEOC after that restructure fiasco April/May 2015.

Inspectors at EHS are all still doing the SAME jobs we have each always done - EHS likes to call it "cross training" if someone that is a FIRE SAFETY inspector goes with an employee that is a LAB Inspector, but that is not actually TRAINING - it's more of a "see what I do? What do you do?" type situation.  There have only been TWO meetings of the inspectors together since the restructure May 1, 2015 and those were 05-05-2015 @3pm and 06-30-2015 @2pm.

It appears that the EHS "Restructure" was actually to remove me from working with James Rainer and the Fire & Life Safety Group, as I am the only full time FIRE Inspector that was removed from the FLS group. The three full-time men that inspected for Fire Safety related items - Evacuation planning, Fire drills, building inspections, plan review stayed working for James Rainer. I have no idea who is doing the evacuation planning now?  Or the fire drills on campus?

I believe that EHS "restructured" to cover the sexual discrimination and retaliation (ignored, left out, untrained) that I have been subject to for years. The discrimination that I have mentioned to each Chris

②

Myer, John Salsman, James Rainer, John Fellers, Richard Fegan and David Zeiger over the years at EHS and also to TAMU HR.

Basically, since May first, I have been physically relocated, re titled & positioned (without notice) and over-loaded with inspections and paperwork as well as absentee-micro-managed. It is apparent that EHS is now doing "Monthly Reviews" of the inspectors - **mine are the only meetings witnessed** - in attempt to create & document "faults" - to be used as an excuse to terminate my TAMU EHS employment.

So far I have been to witnessed "Monthly Review Meetings" three times recently since 1999 = JULY - 08/10/2015, AUGUST - 09-17-2015, and SEPTEMBER 10-21-2015.

The "July Review" mentioned an August 3rd building inspection - and it was stressed to me to not say "snooping" - that "saying snooping is unprofessional".

The "August Review" had a theme of "I notice you've been wearing dresses."

The "September Review" left out that I had been involved in the Resident Hall inspections at all, until I mentioned it myself, and mostly stressed "LEAVE AT 5" and how I must write an explanation if I use my ADMIN leave.  When I pointed out that the TAMU policy on the ADMIN leave says an explanation is not required - Swati Kale said, "This is a special circumstance".

October 1st I was sent another list of buildings to inspect - then at the 10-21-2015 I was given an hour by hour list of buildings - a mix of October's buildings and July-September lists. I had already contacted the October 1st list - for 16 years I have been given a list of buildings to inspect for the month and work it out as it is available. The hour by hour list, Swati Kale did not even speak to me about what I had currently in process or had completed already. She's only been with me one time for two hours to inspect the sixth floor of Blocker. Previous supervisors - Richard Fegan went with me ONCE and David Zeiger went with me once also 04-09-2015. Other than that, Danny Banks took me with him on two of his inspections back in 1999-2000.  James Rainer has never taken me on campus to learn anything - and HE was my manager for years, but he was too busy grooming John Fellers to be the next Fire Safety Manager when EHS created James Rainer his next EHS position.

Chances are the overload of work, the vague documentation of "Monthly Reviews" that are more opinion than facts, the absentee micro-managed double schedule situation is an attempt to fill up every minute -

③

so I won't be able to write my perspective to TAMU HR about EHS and what has been happening at this office, along with EHS has BEEN trying to MAKE me quit for so long I hardly can remember when I ever actually felt my position here was wanted or appreciated?

After John Fellers left EHS for HSC, I did give the Fire & Life Safety presentations for a few years and received lots of positive feedback from that - even started receiving requests to give the presentation by departments on campus.  But then fall of 2013, Richard Fegan asked me to do a presentation for the morning EHS meeting - and soon as it was completed, Richard Fegan came to me and told me he had been told to tell me that I would no longer be doing ANY presentations. He wouldn't say why or who.  That was also the same fall that Christina Robertson told James Rainer that I was wearing a Halloween costume, and then James Rainer told Richard Fegan to come tell me to "go home and not return until I was out of costume". One problem: I was not wearing a costume.  And there was no notice at EHS that it was even disallowed,

Pretty much, ever since I confronted James Rainer about ignoring and overlooking me for the previous eleven years - the day he informed me that the part-timer Richard Fegan was getting the FLS Supervisor position instead of me, even though Richard Fegan had no Resident Hall inspection experience and had only been working for TAMU campus just over a year – and at that point, I had eleven years of ResLife inspection experience, 17 years total TAMU campus experience. (Which that position James Rainer awarded to retired fireman Richard Fegan, would manage the ResLife inspections and campus building inspections for fire safety.)

Since Adam Chavarria has been moving up the ranks of EHS so quickly since having begun as a EHS student worker - Him being awarded that FLS Construction Manager position within a year of becoming a Technician II, after I had applied for it numerous times previously - only getting an interview for the FLS Construction position once, EHS had to do something to MOVE ME away from James Rainer - because the discrimination is just STARK, BLATANT and REPETITIVE against me TAMU EHS via James Rainer and EHS Directors have enabled him throughout it all.

Attached are Swati Kale's version of a "review". I looked up the TAMU form and filled out the facts of what I have been inspecting because the "Manager Notes" Swati Kale writes don't justify that I am and have been busy working.

④

EHS department is such a mess - Anyone at TAMU HR listening?

From my perspective, it has been entirely frustrating how fast TAMU is to accept credit for anything, while actively avoiding responsibility for everything having to do with the discrimination and miss-management of TAMU EHS. I am seriously curious if there is actually an investigation into any of this or not - so far what I have received are certified letters of denial. And of course "Open Records" avoids actually sharing information.

Reminds me of that "Emperor's New Clothes" story - I'm like, "HEY?! The Management is basically NAKED over at EHS?! Anyone besides ME notice this?"



**From:** Kale, Swati G
**To:** O, Kamme
**Subject:** RE: 0386 Eye Wash Showers 2015
**Date:** Wednesday, November 04, 2015 3:16:44 PM

Thanks for the information. EHS tests the showers.

Swati

**From:** O, Kamme
**Sent:** Wednesday, November 04, 2015 1:13 PM
**To:** Kale, Swati G <swati_17@tamu.edu>
**Cc:** Urbanczyk, Bradley D <burbanczyk@tamu.edu>
**Subject:** 0386 Eye Wash Showers 2015

FYI – So far, it appears as if the eye-wash showers in Jack E. Brown are out of date:
Who is responsible for inspecting them?
KO



Out of Date Shower Tests

1220-1228 Animal Isolation Buildings – 2012
1508 Hobgood – 2013
0969 Bus Operations – 2012
1040 Cardiovascular Pathology Lab – 2013
2944 Center for Food Safety – 2013
0971 Commissary Dining – 2013
0516 Computing Information Systems – 2009
7063 Conservation Research Lab – 2013
0513 Doherty – 2013
1232 Equine Pavilion – 2010
0435 Harrington Education Center Office – 2010
1165 Hazardous Waste Storage – 2013
1297 Heat Transfer Research – 2004
1098 Hyperbaric Research Lab - 2013
0432 Langford Architecture Center – 2009
0740 McNew Lab – 2011
1505 Meat Science and Technology – 2009
7441 Riverside Pump Station – 2013
1095 Nuclear Science Center – 2013
0970 Physical Plant-Grounds Maintenance – 2011
0957 Purchasing and Stores – 2013
1560 Recreational Sports Complex – 2011
0478 Scoates Hall – 2013
0806 Soil Testing Lab – 2013
1904 Texas Center for Preclinical Studies – 2013
0958 Transportation Services – 2013
7090 TTI Safety Division Hangar – 2013
1085 Veterinary Small Animal Hospital – 2013
4050 Waste Water Treatment – 2013
8004 TEEX Waste Water Lab – 2013
8578 Water Lab at Central Utility Plant – 2013
4053 WWTP Disinfection Lab - 2012





**Use of Vacation Suspended without warning July 17, 2015 to November 13**



| November 2015 | December 2015 | January 2016 |
|---|---|---|
| 13 days included | 22 days included | 19 days included |

**YELLOW = Vacation**

**Terminated 47 Work**
**submission of Eye-Wash**
**behind to TAMU Policy 8**

---

**From:** Kale, Swati G
**To:** O, Kamme
**Cc:** Urbanczyk, Bradley D
**Subject:** Annual/Vacation Leave
**Date:**

3 days after submitting a written Complaint to TAMU PPR 11-10-2015, about the eye-washes being YEARS behind inspection. (Same supervisor, male inspectors)

---

Kamme O,          Define "progress"?          Which reports? How many?

the restriction on your annual/vacation leave is being removed.

Based on the the restriction may be reinstated.

**The NEXT evaluation/review meeting: November 20, 2015.** Swati Kale stood over her desk beating her fists on it, while yelling for over an hour – While John Fields just sat there. Swati Kale yelled- daring Me to file another complaint.

Thanks,

*Swati*

**Swati Kale** | OS&H Inspector Supervisor
Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

**4:17-CV-03877**

ph: 979.845.7067 | fax: 979.845.1348 | swati_17@tamu.edu

DIVISION OF FINANCE AND ADMINISTRATION
ENVIRONMENTAL HEALTH & SAFETY



**4:17-cv-03877**

October 20, 2015

TO:    Kamme O

RE:    Position Title Change

With the restructuring of Environmental Health and Safety, your title as Fire Inspector III has changed to Occupational Safety and Health Inspector III, effective May 1, 2015.

Sincerely,

Christina Robertson, Director

1111 Research Parkway
4472 TAMU
College Station, TX 77843
Tel. 979.845.2132 Fax. 979.845.1348
https://ehsd.tamu.edu

4:17-cv-03877

Response to Memorandum dated 10/21/2015:                    November 9, 2015

TO:        Swati Kale
           Occupational Safety & Health Inspector Supervisor

FROM:      Kamme O
           Occupational Safety & Health Inspector III

SUBJECT:   Response to the Performance Expectations Memorandum

In response to the letter given to me at the "Review of September" meeting listing "Performance Expectations", as there are assorted endless perceptions of everything and everyone, I would like to add my own in relation to the recent "Reviews" & "Expectations":

> I have spoken with you regarding deficiencies in the quantity of work completed, especially in relation to inspection assignments. Your failure to complete assignments in a timely manner continues to have a negative impact in our office. When you do not complete work as scheduled, departmental obligations to our customers and staff are not adequately being met. Accordingly, my expectations and other comments follow:

The above paragraph from the "Performance Expectations" Memo includes no comment about the use of my vacation time since the restructure of EHS last April/May; nor is there any mention of the INCREASED work load assigned. While Brad Urbanczyk spoke openly about REDUCING the FLS inspections "to make time for cross training" at the June 30, 2015 Inspector meeting, the list of buildings assigned to me for July was approximately 800,000+ sqft, and my July vacation 7/20-7/28 had been approved since April. The inspection list given to me for September is 4 times the amount of inspections I have been assigned during the previous decade.  Given the hostile work environment created by the serious lack of communication and any personal regard for the EHS employees affected by the assorted changes within the entire department, and that I had over 300hrs of vacation – I opted to take a REST from the instability of the hostile work environment at TAMU EHS for most of the month of July 2015.

Allow me to explain just a few items that I perceive as a hostile work environment here at TAMU EHS:

1. While the EHS managers were instructed Monday, April 20 to inform their employees of the EHS restructure the day before the EHS morning meeting on Tuesday, April 21st – I only received a phone call at 7:22am to my personal cell phone the morning OF the EHS 8:30 meeting. And I was only told that the "restructure would be announced" at the EHS meeting, no specifics. –But he did mention that he would not be able to be at the meeting because he would be ESCORTING THE TEXAS STATE FIRE MARSHAL - something I have never been asked to do during the 16 previous year's employment for TAMU EHS FLS group.
   I learned of the specifics of the EHS restructure when the person seated next to me in that 4/21/15 EHS meeting, Jeff Truss, showed me the copy of the PDF he happened to have with him of the new "Organizational Chart" for TAMU EHS. THAT is how I learned that after almost 16

1

YEARS of working with the FLS group – I was no longer FLS. And while, far as I know, I am the only FLS employee that currently has certifications for Pyrotechnics, Flame Effects (since 2005) and the Fire Inspector I & II – the MEN listed under "Construction FLS", one started at TAMU EHS in January 2015, the other October 2014 and the other has gone from part-time student worker locating fire extinguishers at EHS for about a year and a half, to a Technician II and then a year later Assistant Manager FLS over construction at TAMU – a position I expressed interest in to James Rainer and Chris Meyer since the position was originally introduced as a Construction Supervisor position 2007.

And I believe Adam Chavarria may have even received yet another promotion to Manager since that, but I am not exactly certain at this time.  The irony to this is I have been an employee at TAMU University since 1992 and 4 years of that was with Construction Crew I as a carpenter. Yet, over & over again I was excluded from learning the FLS Construction position – while the MEN hired over & over again did not actually HAVE any construction background and some did not have any TAMU campus background. The first time the FLS Construction position was filled James Rainer told me the reason I did not receive an interview for the position was because I "did not have construction experience". The second time that position became available, I not only did not receive the opportunity of an interview – but as soon as the new man was hired, James Rainer came to me and asked me to share my study notes for the Fire Inspector certification with him. Add to that I also have four years of actual drafting experience, it is beyond my comprehension exactly why EHS overlooked my personal experience or talents for a position that I expressed interest in learning over & over, other than that I am female, am not a retired fireman, have work experience rather than an Aggie Ring and did not play a professional sport.

2.  The **first initial conversation** with my "new assistant director" Brad Urbanczyk was April 28, 2015, when he walked into the office after lunch, (where I had been seated observing men be trained and included by James Rainer over & over; within the office located across the hall from me, as I had been isolated away from all the full time FLS employees when James Rainer relocated them to that interior office years before), and informed me in a rather "authoritative" tone- that I would be moving to Babette's desk as of May first.  Brad Urbanczyk's tone to me that day was if he EXPECTED an argument. Brad Urbanczyk was asked by Babette Perkins on that Monday 4/20 to "MAKE SURE the restructure was explained to KammeO, because James always leaves her out – doesn't talk to her." And far as I can tell, even after it was suggested to him, Brad Urbanczyk did NOTHING as my soon-to-be-assistant-director to make any part of the restructure less of a personal assault for me as a 16 year veteran of EHS, 23 years TAMU.

3.  Add to this list – May 12, 2015 while logged into my TAMU SSO account, I noticed that my title no longer read FIRE INSPECTOR III, but it appeared to read Occupational Safety Inspector III. And that there was absolutely NO COMMUNICATION or explanation to me. Not even Swati Kale, my "restructured" supervisor was aware of this title/position change or why or when. Only now at the "September Review" meeting am I handed an official letter stating the title change "occurred May 1, 2015", and I had to request & insist to get actual documentation of the title/position change – and it is currently dated 10-21-2015, having occurred 05-01-2015.

4.  There's the amount of work it is both physically and emotionally to submit a formal complaint to the TAMU HR within the 7 day window.

2

5. The assorted retaliations – the increased work load, the surprise "witnesses" to the all-new "Monthly Review" meetings that so far have been more about personal perceptions than actual FACT – The first one was about an August inspection on the July Review – about how "saying snooping is unprofessional" – even when you, Swati, agreed that SNOOPING is what inspectors DO. Based on one floor, two hours of inspecting the 6th floor of Blocker – while I was accompanied, I was not informed that I was being critiqued or judged or reviewed, until I sat down in that surprise-witness-EHS Director-July-review-meeting 08-10-2015.

6. The theme of the "August Review" meeting was "I notice you have been wearing dresses"... and then on & on about "wearing pants", under the guise of "well WHEN you are trained to inspect LABS" – which I am not trained to perform lab inspections and do not inspect labs, so what was the deal about hassling me about wearing dresses exactly? There has been no training about "dress code", so the mention of it in what I was told would be a REVIEW of August was a confusing surprise and felt more like a personal assault.

7. Since this "Review" meeting is 9/1-10/15, and I began working 8-5 September first, instead of the 830-530 as I did previously, the current theme was "You must LEAVE at 5" or "let me know". I question what the big deal is about if I were to stay – because employees at EHS have keys to the building and the ID slide access to enter AND I am not paid overtime. Seems to me, that since I have changed my schedule from 830-530, where I was frequently bothered about what MINUTE I ARRIVED – speculation, as there is NO official time clock – and since I am arriving with the other 8am EHS employees now, the new focus of EHS is "What time I LEAVE" – as if I am being paid overtime.

8. There's the last minute "Performance Plan" to create and submit. And then the very vague Performance Plan in PATHways for 2016, with no meeting at all to discuss any expectations beforehand.

9. October 1st I received another list of buildings to inspect, by October 2nd I collected the information and phoned the proctors, alerting them I would be inspecting the buildings they are responsible for this month. Then 10/21 during the "September Review" meeting I am handed a revised list of buildings, scheduled by hour & day. And there was absolutely no communication about who I had already contacted or what buildings I have already inspected? Just a new detailed list – and while the MEMORANDUM reads:

You are expected to:
• Follow the attached assignment schedule for performing inspections, documenting reports in Fire House, and completing reports for final submission.

What I was verbally instructed was that I "do not have to go EXACTLY by this schedule." I can only speculate how this "schedule" will be used in the next "Review Meeting".

10. Since the Performance Plan was vague and the Occupational Safety Inspector III position reads that it requires a AOHST, "OHST preferred" – During this "Review" meeting - I inquired about receiving training for that? Swati informed me that the position description currently listed on

3

the SSO TAMU website is due to be changed. I said, "If that's true – write it down and sign it", that I would like that "the certification is not required", in writing. You, Swati, asked me why I needed it in writing. The answer to why is easy, given the hostile work environment = the so called "restructure" of EHS – where employees were moved, relocated, re-titled and reassigned seven months ago but continue to do the job duties they were performing previously = I have no reason to trust what TAMU EHS may tell Swati Kale to say to me – and evidence requires more than hear-say.  And that if what you say is accurate, why not write it down?  And how ironic that you asked me WHY I wanted everything in writing as you currently documents the "monthly review" meetings, also with a witness present, which only just began being performed as of August 10th for the month of July 2015. – The "restructure" was announced April 2015 to be in effect May 1, 2015 – more evidence of a serious lack of planning by TAMU EHS.


11  The principle expectation of:
● Reports are expected to be completed timely using the resources provided.


While there is no mention of how often the iPad FireHouse application fails to sync or sends the report into the OUTBOX. How many years I have created lists of issues with the iPad and FireHouse application – emailing them to Richard Fegan, James Rainer and Christina Robertson numerous times. There is no regard for the ergonomics issue of having spent over 3 years scrolling through 26.5 feet of the inspection program itself. It took 33 taps for a report that had no deficiencies from 2012 until the revision spring of 2015 (currently it is 16 YES TO ALL taps) – without the use of a mouse, because the iPad is unable to perform with a mouse – causing severe pain in my neck from the repetitive strain, but apparently since my head is still connected to my neck and pain itself is not visual, the discomfort, the tediousness, the dependability issues of the FireHouse application are of absolutely no concern to TAMU or EHS – but apparently FireHouse iPad failures have been helpful for EHS to attempt to paint my personal performance as the concern - how ironic as I can only do what I can do with the tools available to me – and they have been seriously sub-par since late 2012. Also the "performance expectations" were edited in PATHways by James Rainer 2013-2014 from "Inspections 95% complete" to a 3 day turn around for inspections. There was no discussion prior to this change and when I inquired about the change, James Rainer basically lied and told me, "The description is a work in progress." (It's remained the same verbiage since then.)  Also, the supervisors and managers at EHS are using FireHouse on their full size PCs, generally not actually entering reports on the iPad itself – so easy for them to misjudge the employees actually having to use that little iPad for full time report writing.

4

12. Next is the:

- You must arrive at 8 am and leave at 5 pm daily as you have not requested a flexible work schedule. Any variation to your hourly work schedule requires prior approval by your Supervisor.

As of the date of this "review meeting" 10-21-2015, I only recently as of September first changed from 830-530 to 800-500, does EHS think I forgot already? Previous years EHS harassed me about what MINUTE I arrive – and now that I can observe EHS employees arrive to the office myself because I am no longer the last employee to arrive, EHS is all about telling me to LEAVE. I am amiss to exactly why this statement is included in the "expectations" letter other than more passive aggressive retaliation, as I have only requested comp time once after having been locked in a resident hall room during an inspection, when the doorknob fell off.

13. Then there is that position title statement:

- Use your job title of Occupational Safety & Health Inspector III for all business matters.

It was just September 2013 when my title and position of "Safety Specialist" was reconfigured and renamed "Fire Inspector III". There were announcements about the coming announcements, about the changes to come, and when, and what for, and why. What a stark difference that situation was from how the 2015 restructure of the entire EHS Department was handled by just a few sentences during the EHS morning meeting April 21, 2015. Although I do remember how the 2013 EHS stressed the added expense of all the employees having to update their identification badges and business cards – as I was instructed to wait, to "save EHS money". This year there was NO notification or explanation, because I noticed the title change myself, on my SSO May 12th, but here it is included in the performance "review"? Emotionally, I have still been waiting to actually be able to learn and perform that reconfigured 2013 Fire Inspector III position description – the manner in which the EHS "restructure" has been carried out seems even less actually official. Clearly, all it took was an update to the online listings of the positions, because that's about all EHS management actually bothered with. And even that didn't stick because as of September 1st -3rd my personal SSO TAMU account and my listing as staff for TAMU read "Fire Inspector III" again, until I mentioned it to you, Swati Kale, 09/03/2015 and you informed EHS.



5

4:17-cv-03877

14. Lastly listed in the letter there is this:

- Leave requested other than sick leave requires a reason of absence for that leave. Such leave can also only be used for sick leave once all sick leave is exhausted.

  When I said to you that TAMU Policy does not require an explanation, you told me, "This is a special circumstance."
  Researching, neither SYSTEM POLICY 31.01.02 nor 31.01.09 mention anything about a special circumstance.



15. Also – the hour by hour schedule that you submitted to me at the "September Review Meeting", there was no discussion of the buildings already assigned and sent to me October 1, 2015, who has been contacted, what I already had scheduled or even a discussion about what it takes to inspect and submit the inspection via FireHouse to you.  For these reasons the hour by hour schedule is unrealistic and I view it as an attempt of EHS as more retaliation, by adding more stress to an already stressful, unorganized, ill prepared work environment.  Especially since during the sixteen previous years that I have performed Fire & Life Safety inspections of the TAMU campus buildings, I have never been scheduled hour by hour specifics by anyone. If you were to actually look at previous years' evaluations for me – my work performance and quality of work have always been exceeds expectations. Problems began as FireHouse and the iPad were introduced. And I have attempted many times to explain and list the issues about

6

that, to no avail. It is my perception that TAMU EHS is doing what it can to create a hostile work environment for me by not supplying a quality inspection program, by relocating me to an interior office desk after 15 years by a window, so I would have to get rid of my plants, (The corner there is currently completely vacant.) by changing my title and position without notice or documentation, by increasing the inspection load, by punishing me for using my approved vacation time, and creating an hour by hour schedule that is not functional given the actual job.



September 1999 to May 2015

Attached are examples of the FLS inspection assignments for September from 2005 to 2015 so you can see the difference. There is more to the job than inspecting a building room by room, roof to basement and the exterior. There is updating contact information and actually contacting the proctor, reading and replying to emails, answering and returning phone calls, downloading/syncing photos of the inspections to the PC and to the iPad for FireHouse, sometimes it is re-entering reports into FireHouse, sending the reports to you, getting the reports back and sending them to the building proctor, forwarding other safety issues as noticed to the appropriate person at EHS, general meetings and the communication that goes along in-between all of this. Because of all the assorted items that go along with being at work, I went ahead and created my own evaluation using that 717 Manager Notes from TAMU HR – It is more factual than what seems to be being kept track of so far.

4:17-cv-03877

Also, as I inspected 0386 Jack E. Brown, I noticed that the emergency eyewash stations were last inspected 2012. When I emailed and asked you about who is responsible for inspecting the eyewash stations, you replied that EHS inspects the emergency eyewash stations.

How is EHS refusing to let me use my vacation time not retaliation – when clearly there are other situations currently at EHS that are much further behind schedule than what I was assigned while going through the departmental "restructure", hostile work environment, relocation, repositioning situation? Because I know of no other employee at EHS that has ever been told or is currently being punished besides me for being "behind schedule".  There is much more going on than just "my schedule" effecting the moral of Environmental Health & Safety.

Honestly,

Kamme O

8



**EMERGENCY**
*From a CAMPUS PHONE Dial:*
**9-911**
**What is Your LOCATION?**

www.haveanexitstrategy.com
YOU HAVE 60 SECONDS....GO!

5. **Comments:**

The first presentation was way too long a
The ~~sen~~ second presentation was grea
(Kammeo) was enthusiastic and awo
The third presentation was not as
fell short any.

4. **Would you recommend this training to your colleagues?** *(check on)*
[X] Definitely
[ ] Probably
[ ] Not certain
[ ] Probably not
[ ] Definitely not

5. **Comments:** I learned a lot of stuff I
know. things I took for granted
I thought about it, I actually lit
a lot.



1988          2016



▲ YOU HAVE 60 SECONDS... GO!
**Welcome to:**
**Texas A&M University**
**Fire & Life Safety**
**AWARENESS**

**July 21, 2010, KammeO began giving the Campus FIRE SAFETY Presenta**
**Sharing Her Experience of DAILING 911 the Week They MOVED IN = She was GLAD She KNEV**



Kamme O <bestillandknow.kammeo@gmail.com>

---

## 11-20-2015 October Review Meeting Audio

1 message

---

**KammeO** <bestillandknow.kammeo@gmail.com>         Fri, Nov 20, 2015 at 3:02 PM



BOY oh BOY... "October Review Meeting" today 930-1040 is a DOOZEY... It's just over an hour...ALL of it is interesting.

Swati was the MOST upset I have ever seen or heard Her be... Loud, standing over Her desk, pointing her finger at Me... John Fields was there as witness, QUIET like a SILENT-RECORDER-MOUSE. I know He records things because He has past history via other EHS situations...And TODAY as I walked up to the meeting He was facing His phone, basically setting it to record. I didn't bother saying anything = I don't have anything to hide.

THIS meeting says just about it ALL. OMG.

I'm emotionally SPENT today... As I listen to this meeting, deciding if You should bother listening to it...I'm just like, "Daym...what a disaster the EHS situation is and has been." Makes Me feel very SAD... Why couldn't TAMU EHS & HR have been "professional" all these YEARS?? WHAT made it impossible to actually train & include ME? Why wasn't I allowed to learn & perform the job??? Why have my complaints about the discrimination, the being left out, been ignored for so many years?? It's like TAMU doesn't WANT to know that I'm intelligent, that I can learn, that I'm talented...??? TAMU would rather hire & promote younger MEN and submissive Indian decent females...? A degree from a University is NO Guarantee that whoever is actually management material.. A job is a job... I deserved to be allowed the opportunities to learn and do the JOB.

I hope You make time to hear this.. It's basically a verbal version of the situations and things I have been explaining in writing all summer long...

KO

 **11-20-2015 Review Meeting.m4a**

https://drive.google.com/file/d/0B-CwKxn6MlrOOFhSNVJyaW1fYWc/view?usp=sharing

---

## Kamme O v. TEXAS A&M UNIVERSITY     4:17-cv-03877

TAMU EHS Supervisor SWATI KALE stood, beating her fist on the desk, yelling at KammeO. (seated too close to the desk to be able to leave) Witness EHS Supervisor JOHN R. FIELDS did nothing, said nothing 11-20-2015.

11-10-2015 Kamme O submitted a written COMPLAINT to TAMU PPR, Proof of RETALIATION:Eyewash station inspections YEARS BEHIND, while the men that inspected them, that also were supervised by SWATI KALE were not suspended from using vacation.

EEOC 31C-2015-01426 submitted by Kamme O 06-18-2015.

4:17-cv-03877

**From:** O, Kamme
**To:** Yetter, Sheridan L
**Bcc:** "hk-law@austin.rr.com"
**Subject:** Mediation?
**Date:** Friday, December 04, 2015 9:34:27 AM

(1 of 2)  *TO: TAMU PPR*

Thought I would ask you...

The communication between Swati Kale and I seems to at a disadvantage – interpretation, restructure stress, lack of understanding/awareness.

Does TAMU HR provide mediation between employee & supervisor? How to go about having someone impartial?

The 11-20-2015 October Review meeting was very stressed – Swati seriously appeared to be TRYING to get me to argue/fight back = She accused me of yelling, when she was yelling but I was calm, assertive yes, but my tone was normal. Swati on the other hand was standing, pointing, and hitting her fist on her desk over & over.

Just now I received an email from her:

Fri 12/4/2015 9:15 AM

**Kale, Swati G**
**Meeting today at 11:00**

To O, Kamme

*9:15AM EMAIL FOR A 11:00AM WITNESSED MEETING*

Kamme O,

I would like to meet with you at 11am today in my office.

Thanks,

*Swati*

Swati Kale | OS&H Inspector Supervisor
Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

ph: 979.845.7067 | fax: 979.845.1348 | swati_17@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - -
It's Time for Texas A&M

*9 WORKING DAYS AFTER "WORK PROGRESS" A MEETING FOR THE "CORRECTIVE ACTION" FOR BEING BEHIND.*

And to tell you the truth – I am afraid to go in there. Of course I replied that I would be there and I asked "Regarding?"

John Fields was witness to that 11/20 meeting. I submitted a complaint, you know already.

Uncertain other than remaining calm as possible what I can do??

Given the recent notice of the "Anonymous" complaint this week about "Me" – seems Swati was attempting to pick a fight to HAVE something to file a complaint about. **I have kept quiet** about that complaint notice on purpose.

I'm glad John Fields was in that 11/20 meeting – but it would certainly be better if the witness were not related to EHS directly.

And other than the June 30th meeting with Swati – every meeting with her since that has either had Christina Robertson or John Fields in there.
Is to say, I feel outnumbered over here.

Mediation would be helpful with Swati & I, as the situation feels more & more tense.

Suggestions?
Thanks,
KO

*2 of 2*

**Kamme O**
1111 Research Parkway, MS 4472, College Station, Texas 77843
Environmental Health and Safety | Texas A&M University
ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu
www.tamu.edu

4:17-cv-03877

HUMAN RESOURCES



January 5, 2016

**MEMORANDUM**

*Approved Jlanuree 1/6/2016*

TO:         Janelle Ramirez
            Interim Vice President for Human Resources

FROM:       Dr. Anna Satterfield
            Director
            Employee Support Services

SUBJECT:    Request for Approval of Investigation Extension

Ms. Kamme O, Occupational Safety and Health Inspector III for Environmental Health and Safety, filed a series of formal complaints on October 22, 2015 and November 10, 2015 in accordance with *System Regulation 08.01.01 – Civil Rights Compliance*. Due to the fact that these complaints cited additional allegations of retaliation related to previously completed complaint investigations, the allegations are being investigated together. Regulation *08.01.01* currently allows time for the investigating authority to evaluate the allegations, then 30 business days to conduct an official investigation and provide a draft report of findings to the Office of General Counsel for review. As circumstances dictate, it also allows for an investigation extension upon approval from the human resources officer.

Due to the number of allegations involved, the availability of witnesses, the recent holiday break, and the volume of formal complaints currently in progress, we are requesting an extension of up to 15 business days to complete our investigation and finalize the investigation report.

If you should have any questions, please contact me at annas@tamu.edu or 862-3331.

Copies:     Kamme O
            Swati Kale
            Brad Urbanczyk
            Christina Robertson
            Christopher Meyer

General Services Complex, Suite 1201
1255 TAMU
College Station, TX 77843-1255

Tel. 979.862.3331   Fax 979.862.3610
hrpolicy@tamu.edu
http://employees.tamu.edu

Complaint 10-22-2015 Evidence of Hostile Work Environment
*Includes the 1999 EXIT interview of the list of TAMU Management that was supposed to have gotten a copy & did not.
And how EHS is instructing employees not to communicate with KammeO

Complaint 11-10-2015 Vacation Retaliation,
*Eyewash Shower Inspections YEARS BEHIND, the men are not suspended from using their vacation time.

4:17-cv-03877

Kamme O
3503 Winding Road
Hearne, Texas 77859
March 9, 2013

Frustrated by years of being excluded at TAMU EHS,
this is the coverletter that I included with the job application
to document my perceptions of what TAMU continued to ignore.
The month after this - Asst EHS Director CHRISTINA ROBERTSON
started creating vague issues against me about every 3 months.
And JAMES RAINER tried to find faults with my work.
RICHARD FEGAN seemed to run interference often - before he left in
2014, he said, "If I were you, I would find a job some place else."

Texas A&M University
Environmental Health & Safety
Fire & Life Safety
1111 Research Parkway
College Station, Texas 77843-4472

To whom it may concern:

Well, here we are "again". This is the first time I've applied for the position currently titled "Environmental Safety Assistant Manager" – formally replacing the position titled "Environmental Safety Supervisor" that I previously applied for three separate times over the past five or six years and only just received an interview for the position prior to the it being cancelled, reconfigured and renamed to this current offering of "Environmental Safety Assistant Manager".

I am applying yet again, even though I honestly feel like if I were wanted/appreciated as a thirteen+ year employee here at EHSD, I would have been included more over the years on the acceptance tests, the plan reviews and any other training that would have helped me become a more useful employee. I certainly have made it known that I am and have been interested.

I've asked. I applied. I've waited. I've been passed over, passed by and basically ignored compared to the employees that have been hired after me that somehow eventually wind up as my supervisor. That's occurred twice. And the second time, I had eleven years' experience inspecting the residence halls and he hadn't been on one residence hall inspection yet? And while I can very much appreciate him as either a supervisor or a coworker, I certainly have become aware that he has been promoted again without having to interview for the position. Whereas, I'm lucky if I even have had the courtesy of an interview for a position that I apply for here at EHSD; that didn't stop James Rainer for asking me to share my study notes for the certifications that I do have, to the person hired for the Construction Supervisor position did not have. What is that?! He got the job and I didn't even get an interview?

It's an easy assumption that since I'm the only employee left in the Fire Safety section that's been here longer than three or four years, and I was not even given the courtesy of an interview the first two times these construction position was originally opened – that I am left out, not wanted, for whatever reason(s). Because it has been pretty apparent over the thirteen years that I have worked for EHSD that this office encourages, trains and promotes some people while basically doing the bare minimum for others. I may not have an Aggie Ring, be a retired fireman, play college baseball or football, but I've been a loyal employee of this campus for over twenty years and somehow I think that should count for something more than what I have been experiencing here at EHSD. (I received a promotion every year until I came to work at EHSD.) So, I will sure apply again and give it shot just to see if by chance my assumption is incorrect and that I will be introduced, trained, taught, included and made use of more in the future here, and hope that I would actually be given the opportunity for growth and advancement, even if I do have to practically demand it?

I am familiar with plenty, I could learn the rest. I doubt seriously anyone begins a new position knowing everything there is to know ahead of time. I am tired of being treated like I cannot learn or be more useful with the acceptance tests, and plan reviews. James Rainer cannot possibly continue to do everything indefinitely – I do not understand why he has not made more use of me over the years, because I'm the one that's been loyal the longest. He hires these guys, they get their training and they leave, while I watch, occasionally get to be included and wind up basically ignored. I'm tired of greeting & breaking in the new employees only to watch them wind up promoted over me.

I seriously deserve the opportunity to learn and be the new Environmental Safety Assistant Manager.
Just think, if I had been given and interview years ago and actually seriously been considered for the construction position, I would be GREAT at it by now... and I'd still be happily working here as a TAMU employee. If I can learn to design & build cabinets, when I didn't even know drills had reverse – I can certainly learn anything else. I wish someone would actually clue in about that. Not everyone chooses the college route. Managers are not BORN managers, someone had to actually believe in, encourage them and offer the opportunity.

Sincerely,
Kamme O

4:17-cv-03877

7-10-2013 Wednesday
To: Richard Fegan, rfegan@tamu.edu

Today, Robert "had a talk" with Babette again about "Me" and how "They are watching Her" and how "He doesn't want Her job affected by whatever They are going to do about Me". And that He saw Her go down to My office and talk with Me and that She shouldn't be seen associating with Me at the office, "because THEY are watching ME." That it is OKAY if I stop by HER OFFICE but She shouldn't be seen coming to My office.

Then He goes on about "Well, Richard doesn't want to do anything – but They are going to insist He do something, especially with Him getting that promotion."

\*\*\*

**This has been going on for years,** Robert asking Babette where I am? Did She SEE that I didn't come in until 9:30am? Or whatever? And She'll explain that I had a doctor appointment or a lab appointment and that She is SURE that YOU know about what I am doing. And via Her, He'll say, "Oh well, I was just wondering BECAUSE THEY ARE WATCHING HER."

I've thought about saying something sooner but didn't want to stir the pot – and I just let it go. Today at lunch, I asked Babette how She felt about Me finding out WHAT THE DEAL IS, after She told Me it happened again today? And She said She is to the point that if I want to take to HR, She will gladly be witness to how long & how often Robert White has been "warning Her about Me" and the "They are watching Her" threats.
So, here I am emailing You, asking:

**WHO is watching Me? And WHAT is the deal???**
I'd really like to know, because whatever has been going on feels like **indirect harassment** via My best friend.

This year, **during Babette's employee evaluation,** at the end He brought up "being seen with Me" again and how it doesn't look good for Her job – that He's "just warning Her" And He went on to tell Her what He THINKS I'm doing or not doing at the office..?????? WHAT IS THAT?

If I'm being tracked, watched, documented about anything I would sure like to know so that I can change or conform so that this STOPS and Everyone is happy/satisfied.

And as far as stopping by Babette's office on the way to get coffee in the morning – most of the time I just stick My head in and wave "good morning" because I'VE KNOWN for years that Robert watches Me come & go. And most of the time Babette will meet Me in the break room and We both get whatever We are there for and then go back to Our desks. And quite often I've noticed that Robert shows up in the break room also, right after She & I walk in there. Is He following Us? I don't know. I'm not hiding anything, so I've never really cared and it IS "the break room".
I just figure He is trying to rush Us along and so We do end whatever the conversation is, or even include Him in it and then continue on to Our desks.

4:17-cv-03877

May 10th, When I was home on vacation, Robert called My personal cell phone looking for Babette – asked Me if I knew why She didn't fill out Her vacation?

I was asleep. I told Him, "I don't know, She's in Phoenix." He wanted to know if I could contact Her and tell Her that She needs to submit Her time sheet? So, I woke up and texted Her – but She was on the plane? And then I just let it go because it's not My job to track Her vacation paperwork.

I personally think if an employee is on vacation, the office ought not contact them unless it is an actual emergency; time-sheets can wait. And I do not work for Him, so WHY did He call Me to find Her, when EACH of Us were on VACATION?

I would appreciate it if You could confirm that I'm NOT being watched and that if I am, Someone actually let Me know to My face what the deal is, so that this situation may be remedied as soon as possible.

Sincerely,
KammeO

**Kamme O** | Safety Specialist
Environmental Health and Safety | Texas A&M University
ph: 979.862.4040 | fax: 979.845.1348 | kammeo@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - -
www.tamu.edu

*Forwarded Message*

**From:** "O, Kamme" <kammeo@tamu.edu>
**To:** "Salsman, John M" <jmsalsman@tamu.edu>
**Sent:** Mon, September 13, 2010 9:28:49 AM
**Subject:** Just curious..?

*AN EMAIL TO EHS DIRECTOR JOHN SALSMAN = NO REPLY.*

**Good Morning John,**
Thanks for the Admin leave.... I'm curious what it is based on considering I've been TAMU for **18 years**, EHS for 11 and I got 8 hours.... And Cary got 24 hours and he

**What is it I'm not doing that gets Me overlooked for interviews, training and such things?**
I am and have been interested & say so regularly.

Like the position I applied for a couple years ago (twice actually). I didn't get an **interview** for – James came in and said to Me it was "because I didn't have enough CON the US Dept of Labor Certificate for Carpentry on my wall, he changed the subject.) While he didn't think I was worthy for an interview, James did happen to ask Me for **certification test TO GIVE TO NATHAN** since he didn't have the certification when he was hired. (I thought that was rude of James really, but I obliged because it's a te

*I have plenty of vacation time really.... I'm just seriously wondering why life is the way it appears sometimes or if I am not seeing the entire picture?*

James **turned Me down for training** to Vegas this year because I got a "Doesn't meet expectations" on the time thing – but I DID get TWO **EXCEEDS expectations** for appeared to Me that he WAITED until late May to actually make the Vegas NFPA reservations for the FIRST WEEK OF JUNE... as if he was waiting for the employee e **see how NOT TRAINING Me was justified.** I didn't say anything to you at the time because I figured it would just look like I was annoyed about it being a Vegas thing worked out to be a good thing not to go then. It did feel personal to Me tho, since I was the one all these past years forwarding the NFPA training in VEGAS to James ove getting HIM to go... I have been and can go to Vegas on My own..... not that I wouldn't have enjoyed the trip. **James DID send Cary..... and if My 8:30 punctuality is 5 o'clock to STOP and GET OUT OF HERE attitude an issue?**

And the clock thing – EHS gets more than the 8 hours... because I am not one to watch a clock and JUMP out the door on the minute. **I am generally where I need to be** ever read the exact same time – so to ME, watching minutes is a control issue for some people. **I have MANY positive qualities that far outweigh that one thing, in M** focused upon.

I'm good at many different things, and I've generally always made myself available for the on-call gas response, the drawing of the cartoons for a few years. I am honest, People I meet seem to look forward to seeing Me again the next year, even if I am asking them to change something.

All this has been on My mind for a few years.... I keep thinking it'll change each time I watch someone get hired & leave for a position that I applied for and didn't get an overlooked, underestimated and underappreciated.

So yeah, 8 hours verses 24 feels like that too..... even tho I generally make a point NOT to compare numbers. I just have to ask, **"What is it that I am not?"**

Sincerely,
KammeO

DIVISION OF FINANCE AND ADMINISTRATION
ENVIRONMENTAL HEALTH & SAFETY



**January 29, 2016**

**Kamme O**
**3503 Winding Rd.**
**Hearne, Texas 77859**

# 4:17-cv-03877

Dear Kamme,

This letter is to inform you of the decision to terminate your employment with Texas A&M University effective at the close of business on February 12, 2016. You will not return to your assigned position during this two week notice period.

This decision is based on your unacceptable job performance. Any future applications for employment with Texas A&M University will not be forwarded for review for a period of 5 years. If you wish to appeal your dismissal, the appeal must be made in accordance with the provisions of System Regulation 32.01.02, *Complaint and Appeal Process for Nonfaculty Employees.* However, an appeal alleging discrimination, sexual harassment and/or related retaliation must be filed in accordance with System Regulation 08.01.01, *Civil Rights Compliance.* (Copies enclosed). Any questions regarding the appeal process should be addressed to the Policy and Practice Review office at 979-862-3331.

Federal and State laws require Texas A&M University to offer continuation of your health/dental coverage. You will be mailed a COBRA form (Health/Dental Coverage Continuation Form) shortly. Any questions regarding your COBRA options should be addressed to Human Resources Benefit Services at 979-862-1718.

Upon receipt of this letter, you are required to turn in all keys assigned to you, any University property in your possession, and your Texas A&M Staff identification card.

Sincerely,

**Swati Kale**
**OS&H Inspector Supervisor**

**Christina Robertson**
**Director**

Attachments:   System Regulation 32.01.02
                          System Regulation 08.01.01

Cc w/out attachments:      Brad Urbanczyk
                                          Chris Meyer
                                          Employee Relations
                                          Personnel File

1111 Research Parkway
4472 TAMU
College Station, TX 77843

Tel. 979.845.2132 Fax. 979.845.1348
https://ehsd.tamu.edu