IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAMME O<br><br>Plaintiff,<br><br>v.<br><br>TEXAS A&M UNIVERSITY<br>and System<br>Defendant. | § § § § § § § § § § § § § | CIVIL ACTION No. 4:17-cv-03877 |

## MOTION TO RECONSIDER COURT APPOINTED ATTORNEY FOR PLAINTIFF:

TO THE HONORABLE JUDGE OF THIS COURT:

1. Plaintiff respectfully requests that the Court reconsider appointing Legal Counsel; as

2. Plaintiff has searched off and on since 1996 and been unable locate one.

3. Plaintiff owes the Court an apology for having "APPEALED" instead of "MOTIONED".

4. Plaintiff apologizes for that, blame it on television "Law & Order"? Plaintiff did not

5. actually plan to experience PRO SE, but it is so past the time that the Defendants,

6. **Texas A&M University**, who is regularly "Audited" **by Texas A&M SYSTEM** actually

7. "behave as advertised", follow their own Policies and the Laws of the State of Texas

8. and The United States of America. Plaintiff has experience over 23 consecutive years of

9. employment both witnessing and experiencing TAMU and TAMUS Policies and

10. Procedures verses the Experience & Behaviors. The reality of locating Legal

11. Representation as "working class" STAFF against a STATE University that so often

12. views itself as "IMMUNE" even unto itself, well: "PRO SE, here I am".

13. Plaintiff apologizes for not being more professional. So much of this experience is

14. <u>Deeply personal</u>. Overall, Plaintiff is deeply disappointed by the **MANAGEMENT's**

15. Behavior and treatment that the Plaintiff has endured 1992-2016, while employed at
16. Texas A&M University, College Station, Brazos County, Texas; especially 2007 to
17. present day.
18. <u>DOCKET 03877, #12 NOTICE OF APPEAL</u> on 02-01-2018 was intended to answer
19. <u>#6R ORDER Denying Motion to Appoint.</u> Plaintiff was unaware until recently naming
20. it APPEAL would send it to the 5th Circuit Court of Appeals.
21. Plaintiff phoned the CLERK on 02-09-2018 to inquire when would the Magistrate
22. respond to the APPEAL? How would Plaintiff know? He said there was no APPEAL.
23. Plaintiff explained it was mailed in the envelope WITH the RESPONSE and it was
24. Titled APPEAL. He told me I had to pay for the appeal. I explained I already had been
25. approved for the FEE WAIVER, but he said I had to send another one. So I did, that
26. day. Then it turns out, it was not needed after all. He hung up on me that afternoon,
27. 02-09-2018. I did not call back, but I ask for the NAME of who I am speaking with
28. each time I phone the CLERK since that day; lesson learned.
29. <u>This has been a very PAINFUL experience for me</u>, emotionally, physically and
30. financially. There is no part of my life that this experience has not affected and
31. continues to affect. I am doing the best I can, Me & God. I have been unemployed for
32. the most part since the termination 01-29-2016. I do not have internet access at
33. home because the only coverage available is by satellite and is cost prohibitive at this
34. point. My vehicle has 303079 miles on it. Thank God for WiFi. My mortgage is a year
35. behind. Clinical depression ought to be named "brain flu" – it is like a well-brand
36. hangover to a party I did not attend. Breathing is automatic, functioning is optional.
37. The original complaint LISTS **a list of written COMPLAINTS** that were submitted <u>to</u>
38. <u>the Defendant 2015-2016.</u> There were also APPEALS. <u>The situation was shunned.</u>
39. Here, I will copy/paste what I included in the appeal. There are 66 or so pages to that

40. APPEAL – evidence, emails and such that document how complicated this case is.

41. Rather than reprint and resend, could the Court look at #12 APPEAL? ..is that even

42. how this works? I am not sure, but I am learning.

COPY/PASTE from the #12 "APPEAL":

1. **Plaintiff Respectfully appeals** the Court's ORDER to DENY Court Appointed Legal Representation and requests the COURT reconsider as to guarantee the Plaintiff <u>her right to DUE PROCESS</u> against a STATE UNIVERSITY of TEXAS, as she has had no experience as an attorney and the <u>case is both lengthy and complicated.</u>

2. Plaintiff qualifies as *in Forma Pauperis* – Employment Lawyers appear to advertise that they defend "Executives".

3. **Plaintiff has contacted an excessive amount of Law Firms** in the Continental U.S.A. via telephone, email, Twitter, AVVO.com, Facebook, the ACLU, the NWLC, Lone Star Legal Aid, Peckham-Martin, Attorney Bryan E. Wilson, Daiclaw.com, Bush-Law, Baron and Bud, Azalaw, Ellwanger Law, Kennard Law, Vagnini Law Firm, Scharfman Law, Leichter, Welscher, Fiddler & Associates, Armstrong Law, HLRS.org, NWLC.org, Lazars, Spencer & Scott Law, Warren & Zurick, Devadoss Law, EEOCAdvocates.com, Attorney Peter Costeal, Poerschke Law Firm, Murphy Law Practice, Shane A. McCellan, ROSSLAWGROUP.com, Watson Law Firm, Payne Law Group, TXLAWHELP.org, Baylor.edu professor, Attorney Stewart Campbell, Attorney Mahoney, Kilgore & Kilgore, Coane.com, ACLU.org, LAPIDUS & KNUDSEN, Cohen & Associates, Filteau & Sullivan, Bush-Law, Vas Manthose, AzaLaw, Attorney Bryan E. Wilson, Wayne Rife, BRUCHEZ.com and that's not all of them – but it's what I have written down in my calendar.

4. **Defendant's responses to the EEOC complaint 31C-2015-01426 is mostly the omission of facts & documents, conjecture and misrepresentation of the Plaintiff.**

5. **CONFLICT of INTEREST**: Vice President of TAMU Finance, Jerry Strawser was **listed as management for both** TAMU Human Resources and the department where the Plaintiff was employed - Environmental Health & Safety.

    a) The final decision of every written complaint submitted by the Plaintiff was signed off on by the V.P. of Finance as "no valid evidence".

    b) OPEN RECORDS doesn't have to release documents if the investigation found "no valid evidence", according to the GOVT CODE.

    c) After the Plaintiff was terminated from her 23+ years of employment at TAMU - **Human Resources was RESTRUCTURED to be directly under the PRESIDENT of TEXAS A&M UNIVERSITY, effective August 1, 2016.**

6. TAMU Human Resources Policy & Practice Review **violated Policy, encouraging RETALIATION** by taking 67 working days to answer the Plaintiff's initial written complaint received April 27, 2015.

    a. First Complaint by the Plaintiff was not answered until July 31, 2015.

> 2.5 If additional time is needed to complete the investigation, an ~~extension of up to~~ ~~additional~~ ~~days~~ may be allotted to P&PR with approval from the AVP HRAS. Notification of the extension will be sent to the complainant, complainant's supervisor and department/unit head and the respondent, respondent's supervisor and respondent's department/unit head. The extension ~~…~~ unless required by unusual circumstances.

7. **TAMU PPR letters were vague and misleading** - omitting dates and details of which Complaint was being answered. TAMU PPR

combined COMPLAINTS of **on-going RETALIATION** with the original 04-26-2015 Complaint of DISCRIMINATION.

   a. TAMU PPR Sheri Yetter had met with the Plaintiff January 3, 2014 – the discrimination situation was not new-news to those assigned to investigate it. **Plaintiff believes that the RESTRUCTURE of the department of Environmental Health & Safety was at least in part to protect JAMES RAINER, who TAMU EHS had been using & rewarding for discriminating against the Plaintiff since 1999, when he hired her to inspect the female resident hall rooms.**

8. **Plaintiff has audio of witnessed meetings 2015-2016 and can prove that at no time did she yell at anyone.**
9. Plaintiff believes that the Defendant refusing to promote her after the 2007 meeting with the TAMU Environmental Health & Safety Director CHRIS MEYER is RETALITORY in nature, to keep her position **"HOURLY", to be able to create a hostile work environment:**
   a. **There was/is no time CLOCK.**
   b. **Supervisors APPROVED the bi-weekly TIMESHEETS.**
   c. **All TIMESHEETS for the Plaintiff list her as TIMELY.**
   d. "late to work" was first and generally only mentioned at annual evaluations; used to limit training & % raises.
10. Plaintiff never gave any presentation mentioning "sex with her boyfriend" as is written in the EEOC witness statement, as JAMES RAINER.
   a. **Plaintiff actually successfully presented FIRE SAFETY 2010-2013.** She was **never told WHY** she was not allowed to continue giving the Fire Safety presentations in late 2013. She even asked during the 2013-2014 evaluation by JAMES RAINER why EHS stopped allowing

       her to give the SAFETY PRESENTATIONS? And he only fidgeted an answer about "they wanted to shorten the presentation".
    b. Plaintiff gave the Fire Safety presentation 2010-2013, **until** the Plaintiff's POSITION DESCRIPTION actually included "giving presentations".
    c. Plaintiff volunteered to accept the responsibility of giving the Fire Safety presentations when her supervisor JOHN FELLERS vacated the position 2010.
        a) EHS later gave the promotion to RICHARD FEGAN (no Res-Life inspection experience), but **Plaintiff continued to present Fire Safety because the survey reviews by the audience were so POSITIVE.**

11. <u>Plaintiff's first report of injury 03-27-2015 was back-dated and then denied by WORKER's COMP.</u>

12. Plaintiff was told injury was <u>**"probably just age"**</u>, April 2015 by SUSAN KARLI.

13. <u>Plaintiff was offered FMLA numerous times 2015:</u>
    a. By email, in office mailbox, by voicemail, by meeting with SUSAN KARLI and then also by a meeting with EHS Director CHRISTINA ROBERTSON, witnessed by SWATI KALE.
    b. At no time did the Plaintiff request FMLA and refused signing each time it was told to her *"we are just trying to make sure you get the benefits you deserve".*

14. <u>**TAMU intended to terminate the Plaintiff's employment** for previous unrelated doctor appointments</u> that she took regularly for type II diabetes – had she signed the documents for FMLA.

15. <u>**Use of vacation was suspended in attempt to force Plaintiff to use FMLA.**</u>

   a. <u>**MEN who were YEARS behind on eye-wash shower inspections were not suspended from using their vacation time. (same supervisor)**</u>
   b. Plaintiff used vacation leave to rest injured neck after the Worker's Comp was denied. Not enough emotional energy to keep track of both documentation processes. Neck still hurts.
16. <u>**Plaintiff had current CERTIFICAITONS of Pyrotechnics and Flame Effects from 2005-2016 that went completely unused.**</u> While the younger male that JAMES RAINER mentored was listed online as the person to contact for a BURN PERMIT. Plaintiff was the only person who had those Certifications, but **JAMES RAINER refused to have anything to do with the Plaintiff and TAMU EHS rewarded him for it year after year after year with promotions, raises and by continuing to shun the Plaintiff.**
17. <u>**November 20, 2015 SWATI KALE,**</u> the Plaintiff's supervisor since summer of 2015, <u>**stood yelling & beating her fist on the desk at the Plaintiff**</u> for over an hour while the employees in the EHS office stood in the hallway listening. <u>**SWATI KALE yelled at the Plaintiff, "GO AHEAD, I DARE YOU, I DARE YOU TO FILE ANOTHER COMPLAINT WITH HR!"**</u>
18. TAMU listened to the audio of the Plaintiff's <u>supervisor yelling and threatening</u> her during that November 2015 meeting JANUARY 4, 2016, **BEFORE the Plaintiff was wrongfully terminated JANUARY 29, 2016 for "work performance".**
19. <u>**TAMU PPR did not answer the 11-10-2015 written COMPLAINT about the Eye-wash Showers being YEARS BEHIND INSPECTION**</u> – the men that worked for SWATI KALE were not suspended from vacation or having witnessed meetings and micro-managed revolving schedules.

a. Plaintiff sent PHOTOS of the eyewash showers and the database to HR PPR with the 11-10-2015 COMPLAINT.

20. **The Plaintiff phoned TAMU HR and asked for help**, expressing that <u>every meeting was worse than the one before</u> and that she was afraid for her safety at the office because of the **hostile work environment.**

   a. No one did anything to protect the Plaintiff. No one listened. No one cared how many years the Plaintiff had been discriminated against. No one cared to even follow the laws or the policies.

21. <u>Even the Anonymous complaints against the Plaintiff were RETALIATION</u>, as the info is false – and reads as if it was written by Susan Karli, the same person that told the Plaintiff it was "old age" and then back-dated the injury report so that the Worker's Comp would be denied.

22. Plaintiff submitted evidence of <u>**FALSE INSPECTION DATES of the Fire Safety Inspections**</u> by ADAM CHAVARRIA, the younger male, mentored for the CONSTRUCTION FIRE SAFETY MANAGER position by JAMES RAINER to the TEXAS STATE FIRE MARSHAL'S OFFICE December 29, 2016.

   a. **TXSFMO has avoided answering to the complaint of FALSE DATES of INSPECTION at TEXAS A&M UNIVERSITY.**

   b. TXSFMO sent the younger female hired instead of the PLAINTIFF 2016 to TEXAS A&M UNIVERSITY in 2017 to inspect a few of the items the Plaintiff submitted to the TXSFMO. The report is full of mistakes, is very vague, does not even list room numbers.

Plaintiff thanks the Court for its' time.

Kamme O
3503 Winding Road, Hearne, Texas 77859
979-575-1091   <u>AggieCarpenterMom@gmail.com</u>

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of **MOTION TO RECONSIDER COURT APPOINTED ATTORNEY FOR PLAINTIFF** has been served via USPS mail and via email, on this 13th day of March, 2018, to:

Yvonne D. Bennett
Texas Bar No. 24052183
Southern District No. 814600
Attorney-in-Charge
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Yvonne.bennett@texasattorneygeneral.gov

_____
Kamme O
AggieCarpenterMom@gmail.com
979-575-1091