4:17-cv-03877

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

APR 11 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| KAMME O | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION No. |
| | § | 4:17-cv-03877 |
| VS. | § | |
| | § | |
| TEXAS A&M UNIVERSITY and | § | |
| TEXAS A&M SYSTEM | § | JURY TRIAL DEMAND |
| *SEE ALSO ATTACHED LIST | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF KAMME O's FIRST UNOPPOSED AMENDED COMPLAINT:**

---

TO THE HONORABLE MAGISTRATE JUDGE NANCY K. JOHNSON:

COMES NOW pro se Plaintiff, Kamme O ("KammeO"), complaining of Defendants, TEXAS A&M UNIVERSITY ("TAMU"), TEXAS A&M SYSTEM ("TAMUS"), related Defendants (see attached list) and would respectfully show unto the Court as follows:

O
**LEGAL REPRESENTATION:**

1.) Plaintiff qualified for "LEGAL AID", except LONESTAR LEGAL AID does not help with "*fee generating cases*". Plaintiff phoned, emailed, Tweeted, Facebook-ed and emailed some +/-100 Law Firms and CIVIL RIGHTS organizations = "too busy". Plaintiff lives +/-100 miles

from a LEGAL LIBRARY and is doing her best to find out about LAWS to cite - <u>writing this is emotionally and physically taxing</u> = #write-panic-meditate-breathe-research-write-panic-cry-write-research-write.(refer to DOCUMENT #10 & then DOCUMENT #19)

Plaintiff respectfully requests a serious, ethical talented, Law Firm/Attorney to help her with this process after 23+ years of experiences listed within the Complaints.

## I
## <u>JURISDICTION AND VENUE</u>

1. The U.S. District Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under the Constitution and laws of the United States.

2. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

3. Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

4. Other federal law *(specify the federal law)*:
   Texas Penal Code "Tampering with Governmental Records" PENAL-SECT-37-10.html
   Relevant state law *(specify, if known)*:
   TEXAS A&M SYSTEM REGULATIONS 08.01.01 and 33.99.01

5.    Venue is appropriate in this Court because a majority of the events giving rise to this Complaint occurred in Brazos County, Texas.

## II
## JURY DEMAND

6.    A jury trial has previously been demanded and the application of forma pauperis has been approved by the Court.

## III
## ADMINISTRATIVE OR OTHER PREREQUISITES TO FILING SUIT SATISFIED

It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

06-17-2015      *also 03-16/22-2000 to EEOC about TAMU, EEOC replied 03-21-2000.

## IV
## PLAINTIFF & HERSTORY

1.    Plaintiff, Kamme O (KammeO) is an individual who is a citizen of the State of Texas and a resident of Robertson County, Texas.

2.    Plaintiff moved to Texas July 2, 1992 from Florida (28% unemployment rate = FOOD STAMPS) after having spent most of her life growing up 20 miles outside of Atlanta, Georgia, upper-middle-class.

3.    She grew up enjoying being a "barn brat" at a nearby stable that had over 250+ stalls.

4.  KammeO grew up riding horses to FIND OUT if they rode and exercising polo ponies for the Atlanta Polo Club. Saddling horses on weekends for the rental line; all jobs that did not care about being male or female.

5.  The Plaintiff never heard of Texas A&M before seeing it. Her main priority was to be a parent for her 1 ½ year old son.

6.  Plaintiff was first employed by the TEXAS A&M UNIVERSITY beginning <u>August 13, 1992</u> as a Parking Officer I for $6.19hr ($20 too much a month for FOOD STAMPS, single parent)

7.  The Plaintiff did not see it as reasonable to go into debt <u>for another student loan</u> and spend her off time away from her son, to *possibly* be allowed to perform the **job she already had** at TAMU EHS 1999-2016.

8.  Especially, since she already earned the CONSTRUCTION experience by completing the Carpentry Apprenticeship at TAMU 1995-1998.

9.  KammeO's Fire-Safety Inspector, Pyrotechnics & Flame Effects CERTIFICATIONS were shunned by the Defendants 1999-2016. She was not allowed to learn or perform most

of her position descriptions – but she needed the job, so she kept quiet mostly.

10. After what she had already been through at TAMU and having not been able to locate an attorney back in 1996-2000 (The stress had affected her motor skills.)

11. "Two years work experience is supposed to count as one year college" was not the experience KammeO received while employed by TEXAS A&M UNIVERSITY, College Station, Texas 77845. She was all but invisible.

12. JAMES RAINER refused to acknowledge or work with the Plaintiff and TAMU encouraged the behavior by promoting him over & over while her coworkers observed.

13. And then finally, "restructuring" Environmental Health & Safety in an attempt to make it appear as if the Plaintiff had not worked for JAMES RAINER – protecting the very person the DEFENDANTS used to discriminate and bully the Plaintiff, while also retaliating and terminating her.

14. AFTER KammeO had been terminated, the Defendants TAMU and TAMUS, restructured and renamed Human Resources to be under the TAMU President.

15. EHS and HR had both been listed under the VP of Finance

**V**

**DEFENDANTS**

**A. Texas A&M System:**

   1. RAY BONIALLA – Managing Counsel

   2. KAYE BALL – Claims Adjuster

**B. Texas A&M University**

   1. MICHAEL K. YOUNG – TAMU President

   2. MARK HUSSEY – Professor/Interim TAMU President

   3. BARBARA ABERCROMBIE – V.P. of Human Resources

   4. ANNA SATTERFEILD – Director of Employee Support Services

   5. JERRY R. STRAWSER – Vice President of Finance & Administration and CEO

   6. JANELLE RAMIREZ – Interim Associate Vice President

   7. SHERI YETTER – HR Administrator PPR

   8. CARMEN ESPITIA – Employee Relations Administrator

   9. DON CUMBY – Human Resources Investigator

  10. WANDA BOYD – Senior PPR Specialist

  11. CHRISTOPHER MEYER – Associate Vice President

  12. CHRISTINA ROBERTSON – EHS Director

  13. JAMES B. RAINER – EHS Assistant Director

  14. BRADLEY D. URBANCZYK – EHS Assistant Director

  15. DAVID ZEIGER – EHS Fire Safety Manager

16. SWATI G. KALE – EHS Occupational Safety & Health
    Inspector Supervisor

17. JOHN R. FIELDS – EHS Occupational Safety & Health
    Inspector Supervisor

18. SUSAN KARLI – EHS Business Administrator I

19. KRISTEN ROBINSON – EHS Assistant Manager

20. DAVE RICE – EHS Assistant Manager

21. MONICA HARTMAN – EHS Assistant Manager

22. MICHAEL R. BOWE – EHS Occupational Safety & Health
    Inspector II

23. TASSIE HERMANN – Environmental Compliance
    Supervisor

### CONFLICT OF INTEREST:



## "Human Resources" = MISNOMER

1. KammeO incorporates all other provisions of this pleading by reference as if set forth in full herein.

2. While the Plaintiff worked for/with the Defendants **Texas A&M University Human Resources ("TAMU HR")** was named in part, **"Policy & Practice Review" ("PPR")**.

3. **VP JERRY STRAWSER was over both Human Resources and Environmental Health & Safety** -where the Plaintiff was employed before she asked HR to be enabled to do her job. And explained what type of environment EHS was.

4. **SHERI YETTER** was the person the Plaintiff met with February 3, 2014; after her Supervisor RICHARD FEGAN

warned her, ***"If I were you I would find a job someplace else."*** Right before he vacated without as much as a farewell lunch on 02.10.2014.

5. Plaintiff was asked if she would be willing to meet again on February 6, 2014 – with BARBRA PARKER. Plaintiff agreed.

6. February 6, 2014 CARMEN ESPITIA was there to fill in for BARBRA PARKER because of the icy weather. SHERI YETTER attended this meeting also.

7. Plaintiff explained how **JAMES RAINER had refused to work with her ever since 1999 and how she was not allowed to perform her position description as FIRE INSPECTOR III.**

8. Plaintiff also explained how the work environment had been more hostile than usual, as she seemed to be accused of random issues about every three months:

   a. Told "Go home and change out of her costume" at Halloween, when she wasn't wearing one. That RICHARD FEGAN had tried to tell JAMES RAINER that the Plaintiff was not wearing a Halloween costume, but RICHARD FEGAN told the Plaintiff, JAMES RAINER told him to tell her anyway.

b. There had been no directive NOT to dress for Halloween.

c. This is one of assorted instances of the hostile work environment the **Plaintiff explained in the 2015-2016 written complaints to TAMU HR PPR.**

9. Plaintiff also explained the history of how **JAMES RAINER mentored the younger men** and took them everywhere with him and how the Plaintiff had been on campus with JAMES RAINER to only one meeting at Physical Plant back in 2000.

10. Plaintiff explained how she had **met with CHRIS MEYER in 2007,** when JAMES RAINER told the Plaintiff, *"The reason she did not get an INTERVIEW for the CONSTRUCTION FIRE SAFETY SUPERVISOR position was **because she did not have CONSTRUCTION experience."** And how she pointed to the U.S. Department of Labor CARPENTER Certificate she had earned before transferring to Environmental Health & Safety (EHS).

11. JAMES RAINER's mouth fell open that day and he backed OUT of her office without explanation.

12. Plaintiff had already been sitting there watching JAMES RAINER mentor JOHN FELLERS and take him everywhere – until he became the Plaintiff's second supervisor at EHS, as JAMES RAINER was promoted into a position EHS created for him.

13. Similar happen again in 2010 – Plaintiff had 11 years of inspection experience, RICHARD FEGAN had none. JAMES RAINER promoted the new part-timer.

14. Rather than repeat everything explained and submitted to the Defendants 2015-2016 again the list of WRITTEN COMPLAINTS that VP Strawser kept responding with letters stating "no valid evidence" is included on the Plaintiff's initial 12.26.2017 COMPLAINT FORM:

Case 4:17-cv-03877   Document 1   Filed in TXSD on 12/26/17   Page 8 of 9

Case 4:17-cv-03877   Document 1   Filed in TXSD on 12/26/17   Page 9 of 9

**15. Plaintiff thought it reasonable that after having spoken with HUMAN RESOURCES that she would be enabled to the FIRE INSPECTOR III position. Because of the POLICY:08.01.01.M1.01 STANDARD ADMINISTRATIVE PROCEDURE:**

PROCEDURES FOR FILING COMPLAINTS

1.1   Many problems can be resolved through discussions between the complainant and the immediate supervisor or department head, as appropriate. The complainant or supervisor is encouraged to contact Human Resources Employee Relations for guidance. The outcome of this process includes the full range of options ranging from no action up to and including dismissal. The supervisor or department will promptly notify the University's Title IX Coordinator if the complaint alleges sexual harassment or another form of sex discrimination.

**16.** JAMES RAINER was the Plaintiff's DIRECT SUPERVISOR after RICHARD FEGAN vacated 02.10.2014 and he was too busy **mentoring the younger male ADAM CHAVARRIA** to even respond to the Plaintiff's emails, must less actually make eye contact with her.

17. Plaintiff enabled JAMES RAINER to know what her annual inspection assignments were by sending him the information from previous years.

18. Plaintiff believes that JAMES RAINER avoided sending her an assignment list, so it might be more difficult to compare the assignments between 2014 and the 2015 retaliatory OVERLOAD.

**08.01.01.M1.01:**

2.3   The University will take reasonable action to ensure that the complainant, the respondent, witnesses, and those participating in the investigation, are protected from retaliation. Employees who retaliate against such persons will be subject to disciplinary action up to and including dismissal. This disciplinary action can be taken at any time during or following an investigation of an illegal discrimination, sexual harassment or related retaliation complaint.

19. Plaintiff believes the Defendants conspired to attack her rather than enable her to do her job, because **BRAD URBANCZYK was interviewed more than JAMES RAINER.**

20. BRAD URBANCZYK was interviewed right before the 07.17.2015 VACATION SUSPENSION witnessed by CHRISTINA ROBERTSON, (after SWATI KALE told the Plaintiff on 06.30.2015 she was treating everyone like a NEW EMPLOYEE, starting fresh) and also before the 12.04.2015 CORRECTIVE ACTION DOCUMENT that occurred only **nine working days** from the 11.13.2015 email awarding the Plaintiff her use of VACATION again; right after the **11.10.2015  COMPLAINT** about the EYE WASH SHOWERS being YEARS behind inspection on campus. (male inspectors, not suspended from vacation)(Complaint UNANSWERED.)

21. The Plaintiff only crossed BRAD URBANCZYK's path about 5-6 times in 2015-16.

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17-cv-03877

22. **There's also the way the Plaintiff's FIRST REPORT OF INJURY was backdated** after SUSAN KARLI told the Plaintiff it was probably just age. And how unhelpful she was as Liaison.

23. KAYE BALL did not notify the Plaintiff of the status of the FIRST REPORT OF INJURY until the Plaintiff contacted HER on 07.14.2015.

24. The Plaintiff's VACATION USE was SUSPENDED on 07.17.2015 the day after she declined signing the FMLA application that the Defendants' kept offering and re-offering the Plaintiff between 06.26.2015 and finally a witnessed meeting with the EHS Director CHRISTINA ROBERTSON, by SWATI KALE on 07.29.2015. Plaintiff didn't sign anything and did not request FMLA.

25. All the while, the pre formatted letter hoping to claim the sick-leave the Plaintiff had used for non-neck, regular endocrinologist appointments and shrink appointments was written and waiting to terminate the Plaintiff.

26. Defendants were aware the Plaintiff enjoyed going to the "shrink". She thought everyone ought to have one – is like an emotional mirror that asks the right questions to

lead a person to their own answers. Sort of like "religion" minus the "Hell & Damnation" perceptions.

27. After the Plaintiff had been subjected to hostile work environment for over 20 years, she went to the shrink for logical conversation. It was incredibly hostile and retaliatory how the Defendants harassed the Plaintiff in 2015 and 2016. It wasn't the Plaintiff that went "postal" – it was TEXAS A&M UNIVERSITY, College Station, Texas.

28. Plaintiff having to be PRO SE is both "retaliatory" and somehow "healing" – as she has had to explain what happened to her so MANY times, she has basically memorized the dates, who, what, where and noticed that while "CROSS TRAINING" was said so often in 2015 – there was none. No plan. No nothing and only 2 "Inspector meetings" in 2015.

29. Whatever Plaintiff may not have included within this first amended complaint, is included within the written **complaints listed in DOCUMENT ONE.**

30. TAMU was not timely with the response to any of the Plaintiff's written Complaints 2015-2016.

31. 10 out of 12 of the "witnessed statements" in the 03.04.2016 66 page Amended Response to the EEOC by TAMU are slanderous/liable.

32. EVERY timesheet approved for the Plaintiff by her supervisors 1999-2016 = TIMELY. There was no time clock at EHS. It was just an imaginary way to harass the Plaintiff. #HOSTILE WORK ENVIRONMENT

33. No promotions for the Plaintiff after meeting with CHRISTOPHER MEYER in 2007 and her *EXCEEDS* evaluations went to *MEETS* until RICHARD FEGAN got so fed up with whatever was going on, he wrote very COMPLIMENTARY things on the Plaintiff's evaluations before vacating.

34. Imagine working in an office 16+/- years where you hung the sheetrock, built and installed the cabinets and countertops and was isolated from your co-workers who had been moved across the hall where you could see JAMES RAINER go to that room daily while IGNORING you exist even though you were the one with the higher job position title. And the men you worked with KNEW you weren't allowed to perform the POSITION TITLE you had.

35. Plaintiff was treated disparagingly in so many ways she learned to expect it even though she kept hoping the Defendants would actually BE what they advertise.

36. AGGIELAND would have been better off if SHARP would have OUTSOURCED human resources instead of tossing out the working-class that cared about campus, because HR sure didn't care about them.

37. Plaintiff cannot believe that people who have college degrees from a University justify decisions based on simple math learned by most in first grade.

38. Out of about 850 Majors to choose from at TAMU, Plaintiff is convinced now that none of them are named "INTEGRITY" and that "beware of false profit" isn't about religion.

39. **Defendants sent the office home early 01.29.2016,** (OFF the clock) BEFORE CHRISTINA ROBERTSON, BRAD URBANCZYK, SWATI KALE and JOHN FIELDS walked into the Plaintiff's office, shut the door and told her to pack up her things and do not return. The termination letter reads *"for work performance"* while the letter to VP Strawser was two pages long and the Plaintiff did not get to read what it said until 10.28.2016 but she had to get through reading

the slander/liable comments about her first, some by people she hardly knew and plenty by people that she worked with for 10-20 years.

40. AFTER the PLAINTIFF was terminated 01.29.2016, TAMUS Board of Regents met May 26, 2016 and voted to move HR out from under VP Strawser and give it a new name too:

# Barbara A. Abercrombie Named VP for Human Resources and Organizational Effectiveness

May 26, 2016

41. May 2015, the same month of the "restructure" – Plaintiff OPEN RECORDS requested her personnel file. Now she has a letter to the TXAG from TAMU that refers to her as **MR.O** to go with the "being female" evaluation. Plaintiff politely explained that she is female to TREVOR and he never replied. Someone else started having to be who answered the Plaintiff's emails. If it had been an accident – he would have apologized.

42. The younger male that JAMES RAINER mentored that went from student worker, to TECH II, to CONSTRUCTION FIRE SAFETY MANANGER a year later – signed inspections as 12.13.2013 that show to have been DEMOLISHED 2012. TXFMO knows, but ignores the Plaintiff who alerted them 2016.

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17–cv–03877

## CAUSE OF ACTION: DISCRIMIATION UNDER TITLE IX

1.   KammeO incorporates all other provisions of this pleading by reference as if set forth in full herein.

2. At all times relevant to this claim, KammeO was a full-time employee of TEXAS A&M UNIVERSITY, College Station, Texas, an employer that receives federal assistance.

3. Title IX prohibits discrimination on the basis of sex by any education program or activity receiving federal assistance.

4. Environmental Health & Safety educates students, grad-students, staff and faculty via assorted SAFETY TRAININGS and PRESENTATIONS across campus in person and online.

5. KammeO successfully taught FIRE SAFETY 2010-2013 and <u>was not informed as to why</u> JAMES RAINER told her supervisor RICHARD FEGAN that she would no longer be giving any presentations just as her position description was <u>UPDATED</u> from SAFETY SPECIALIST to **FIRE INSPECTOR III** in September of 2013; the description then included "presenting FIRE SAFETY PRESENTATIONS" as well as "campus point of contact for Fire Safety in the absence of the FIRE SAFETY MANAGER". She was not allowed to be that either. **09.01.2013-05.01.205**

6. Plaintiff passed the exams in 2005 with the other male Fire Inspectors and was never enabled or asked to use her Certifications for **FLAME EFFECTS or PYROTECHNICS 2005-2016.**

7. 2014-2016 EHS listed the younger male that JAMES RAINER mentored for the CONSTRUCTION FIRE SAFETY MANAGER position, as the contact for a BURN PERMIT.

8. The CONSTRUCTION FIRE SAFETY position was the one the Plaintiff had applied for since 2007 and had been <u>told by JAMES RAINER</u> *"she did not get an interview because she did not have CONSTRUCTION experience."* (She is a CARPENTER.)

9. **Being the only female FIRE INPECTOR that JAMES RAINER ever hired 1999-2016,** (JOHN FELLERS hired a female in 2006 that worked for EHS less than 2 years) KammeO was denied opportunity and inclusion, <u>enduring years of employment disparities because of her gender and previous hostile work environment in CONSTRUCTION at TAMU.</u> (The FIRE SAFETY profession is notoriously "male".)

10. KammeO believes this was in part because of her having been **discriminated against to begin with in 1996** by a <u>very biased interim supervisor</u> that harassed her and wrote her up for **"being female she is a distraction to the male**

*workers"* and told her *"he didn't care if she could do the job or not — FEMALES don't belong in the Carpenter Shop!* (It was just the PROOF she had of how she had been treated at work for accepting that Apprenticeship.)

*Being Female She is a Distraction to Male Employees on Job!*

11. KammeO had been **the first and the last female** to complete the U.S. Department of Labor CONSTRUCTION Apprenticeship at TEXAS A&M UNIVERSITY. She was the only female to work in that shop besides the Administrative Assistant ever that she knew or heard of.

12. The Defendants claimed to have lost that 1996 evaluation and asked the Plaintiff to sign a different one. That is when the Plaintiff let the Defendant know that she had a copy, *would they like one?*

13. Plaintiff believes this is **temporal proximity** AND discrimination, retaliation and hostile work environment, (mixed with WHISTLEBLOWER, and FMLA/WORKERS COMP issues also) **because of the Defendants' BIAS against the Plaintiff**

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17-cv-03877
TITLE IX

for what **happened TO HER** in 1996; it affected the **Plaintiff's employment opportunities for the next 20+/-years,** until she was eventually severely retaliated against 2015-2016 for having finally gone to HUMAN RESOURCES in 2014 and asked to be enabled to do her job; instead of just meeting with the EHS Management again and the situation be IGNORED.

14. Plaintiff met with EHS management herself in 2007 - it was CHRISTOPHER MEYER and in 2010 with JOHN SALSMAN and CHRISTOPHER MEYER again. And at no time did they arrange any meeting or discussion between the Plaintiff and JAMES RAINER. And the only thing that changed for her was her workload of inspections - of PICNIC SHELTERS and BARNS.

**08.01.01.M1.01 STANDARD ADMINISTRATIVE PROCEDURE:**

1.  PROCEDURES FOR FILING COMPLAINTS

    1.1  Many problems can be resolved through discussions between the complainant and the immediate supervisor or department head, as appropriate. The complainant or supervisor is encouraged to contact Human Resources Employee Relations for guidance. The outcome of this process includes the full range of options ranging from no action up to and including dismissal. The supervisor or department will promptly notify the University's Title IX Coordinator if the complaint alleges sexual harassment or another form of sex discrimination.

    1.2.3  P&PR will promptly notify the University's Title IX Coordinator if the complaint alleges sexual harassment or another form of sex discrimination (if applicable).

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17-cv-03877 TITLE IX

15. Plaintiff believes JAMES RAINER did not know about the 1996 "being female" discrimination until <u>AFTER she had been</u> **<u>hired to inspect the female dorm rooms</u>** for Fire Safety.

16. The VP of Physical Plant, CHARLES SIPPIAL, had been made INTERIM DIRECTOR OF HUMAN RESOURCES just as the Plaintiff changed departments from PHYSICAL PLANT to ENVIRONMENTAL HEALTH AND SAFETY in late 1999.

17. HUMAN RESOURCES did not follow through and distribute the Plaintiff's <u>EXIT INTERVIEW from 09.21.1999</u> as promised.

18. Following a 2014 HR meeting with the Defendants, where the Plaintiff asked to be allowed to learn and perform the FIRE INSPECTOR III position description that she already had, the Defendants organized a **<u>complete restructure</u>** of Environmental Health and Safety instead.

19. **Plaintiff suffered neck pain and intermittent hearing loss**, an injury from the 26.5' of scrolling on the iPad FIREHOUSE application the Defendants refused to do anything about 2012-2016.

20. In retaliation for having submitted a **FIRST REPORT OF INJURY 03.27.2015** the form was back-dated by SUSAN KARLI on April 1, 2015. After SUSAN KARLI came to the Plaintiff to

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17-cv-03877
TITLE IX

ask her about her injury, telling the Plaintiff **"it was probably just age."**  ***Violation of the AGE Discrimination in Employment Act (ADEA) of 1967***

21. APRIL 21, 2015 the "restructure" was announced to almost everyone except KammeO.

22. was removed from FIRE SAFETY after +/-16 years, while the full-time Fire Safety Inspectors, who were MALE were assigned to kept working with/for JAMES RAINER. The even renamed it CONSTRUCTION FIRE SAFETY.

23. In retaliation for meeting with SHERI YETTER and CARMEN ESPITIA stating she has a right to be free from discrimination and enabled to perform her position description as FIRE INSPECTOR III as an employee of a federally funded educational institution, TEXAS A&M UNIVERSITY.

24. As a direct and proximate result of Defendant's retaliatory conduct in violation of Title IX, KammeO has and will continue to be deprived of wages, fringe benefits, status, seniority, and other advantages of employment. Additionally, KammeO has, and will continue to experience, mental anguish, humiliation, damage to her reputation,

physical pain of her neck from the strain of that 26.5' of scrolling inspection application 2012-2016, and other embarrassment, resulting from Defendants' violation of Title IX.

## iPAD & 26.5' of Scrolling

Plaintiff believes the Defendants were **negligent** in that they ignored the many issues concerning the iPad and the FIREHOUSE application that failed often, had 26.5' of scrolling from top to bottom from December 2012 until February 2015, created FALSE dates of inspection and caused pain and injury to the Plaintiff's neck and right ear.

Even after Plaintiff offered OPTIONAL available inspection programs, offered LISTS of corrections and suggestions. Defendants failed to acknowledge the Plaintiff's assorted attempts to improve the inspection application situation and refused to acknowledge the iPad FIREHOUSE application was tedious, slow, barely functioning inspection program that went without for years, many corrections and edits – instead blaming the Plaintiff for "work performance" issues and eventually wrongfully terminating her 23+ years of employment with TAMU as well as causing injury to her neck from the ergonomic strain 2012-2016.

## **FLMA FORCE ATTEMPTS 2015**

1.   KammeO  incorporates  all  other  provisions  of  this pleading by reference as if set forth in full herein.

2.   Defendants  attempted  to  force  the  Plaintiff  into applying  for  FMLA  by  suspending  (without  warning)  the Plaintiff  from  being  able  to  use  vacation  leave  from  July 17, 2015 until November 13, 2015.

3.  November  10,  2015  the  Plaintiff  submitted  a  written complaint  to  TAMU  PPR  of  EVIDENCE  that  the  EYE-WASH-SHOWERS on  campus  were/are  years  behind  inspection,  inspected  by male  employees  who  are  also  supervised  by  SWATI  KALE. #WHISTLEBLOWER

4.  To  the  Plaintiff's  knowledge,  no  one  else  she  ever  knew at  TEXAS  A&M  UNIVERSITY  1992-2016  had  ever  been  suspended indefinitely  from  using  vacation.

## **FMLA OFFERED FOUR TIMES**

5.   FMLA  was  offered  to  the  Plaintiff  from  June  2015  until the  end  of  July  2015.

6.   First,  in  a  meeting  with  SUSAN  KARLI.

7.   Second,  by  email  the  next  week  after  Plaintiff  denied signing  the  application  in  SUSAN  KARLI's  office.

8.   Third,  by  email  reminder.

9.   Fourth,  in  a  meeting  with  EHS  Director  CHRISTINA
ROBERTSON,  witnessed  by  the  Plaintiff's  Supervisor  SWATI
KALE.

## BACK-DATED FIRST REPORT OF INJURY

10. April 1, 2015 - SUSAN KARLI back-dated the FIRST REPORT
OF INJURY from MARCH 27, 2015 to OCTOBER 1, 2015, causing
it to be DISMISSED.

## DISCRIMINATION based on AGE

11. April 1, 2015 - SUSAN KARLI told the Plaintiff that the
neck and ear pain was **"probably just old age"**; in violation
of the Age Discrimination Employment Act, ADEA.

## ANONYMOUS RETALITION

12. Plaintiff received notice from HR PPR December 1, 2015
that an "anonymous" complaint had been filed against her.

13. December 16, 2015 when TAMU HR DON CRUMBY informed the
PLAINTIFF of the 2nd anonymous complaint, as she arrived to
the meeting at HR for the 1st one.

14.   DON  CUMBY  told  the  Plaintiff,  *"Both  complaints
basically say they are afraid to work with you, they are
afraid you are going to go POSTAL."*

15. Plaintiff smiled and said, *"You know what that means
don't you? That means THEY think THEY would go POSTAL given*

this is all definitely being used to alarm her rate to slow down.

17. The environment was certainly "POSTAL" at Environmental Health & Safety but it was not due to the Plaintiff's behavior.

18. Plaintiff apologizes to the Court for any repetitive information in this Amended Complaint – it has all been rather overwhelming to puzzle together and write about.

## Texas Causes of Action

### 41. Damages

### B. Personal-Injury Damages

**§3. Mental Anguish**

In a personal-injury case, a plaintiff can recover damages for past and future mental anguish. Texas PJC—General Negligence, Intentional Personal Torts & Workers' Compensation (2014), PJC 28.3 & cmt.

19. The Plaintiff's neck still aches if she looks down. She has been without insurance since the 2016 termination.

*the RETALITION they have been witnessing against me for months."*

16. Plaintiff knew she had been sitting at her desk wearing headphones, pecking on that iPad and keeping notes of all

## 2016   RETALITORY TERMINATION

The elements of a whistleblower cause of action are contained in section 554.002 of the government code:

A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(1) **Plaintiff in good faith reported a violation of law:**

11.10.2015 a WRITTEN COMPLAINT to the Defendants, TAMU HR PPR, concerning the **EYE WASH SHOWER INSPECTIONS being YEARS BEHIND** and that the male inspectors that also worked for SWATI KALE had been not suspended from their vacation time.

**11.13.2015** Plaintiff received an email from SWATI KALE:

| | |
|---|---|
| From: | Kale, Swati G |
| To: | O, Kamme |
| Cc: | Urbanczyk, Bradley D |
| Subject: | Annual/Vacation Leave |
| Date: | Friday, November 13, 2015 11:38:28 AM |

Kamme O,

Due to the progress shown in the recent reports, the restriction on your annual/vacation leave is being removed.
Based on the future evaluations the restriction may be reinstated.

Thanks,

*Swati*

**Swati Kale** | OS&H Inspector Supervisor
Environmental Health and Safety | Texas A&M University
4472 TAMU | College Station, TX 77843-4472

ph: 979.845.7067 | fax: 979.845.1348 | swati_17@tamu.edu
------------------------
It's Time for Texas A&M

**(2)   Plaintiff   in   good   faith   made   her   report   to   an appropriate law enforcement authority:**

a) Plaintiff was "taught" by EHS that TEXAS A&M UNIVERSITY is "exempt" from OSHA — from what the Plaintiff understands, OSHA has to be invited by the Defendant or the Governor can request TAMU be inspected. (Plaintiff suggested that to him — no answer as of yet.)

b) <u>11.10.2015 Plaintiff submitted a WRITTEN COMPLAINT to the Defendants **that went UNANSWERED.**</u>

<u>01-05-2016 TAMU Policy & Practice Review Investigation Extension Letter</u>
  o   10/22/2015 Performance Plan Vague, *10-22-2015 to 01-05-2015: 43 working days.
  o   10/22/2015 Discriminated Against, *10-22-2015 to 01-05-2015: 43 working days.
  o   11/10/2015 Eye-Wash Shower Complaint) *11-10-2015 to 01-05-2015: 28 working days

c) Plaintiff contacted the EEOC, Congressman BILL FLORES, Senator TED CRUISE, Senator JOHN CORNYN and 1600 Pennsylvania Avenue Washington D.C. President OBAMA, the TEXAS STATE FIRE MARSHAL, University Police and the GOVERNOR about the behaviors and SAFETY ISSUES the Plaintiff was/is aware of.

**(3) Plaintiff was terminated in retaliation for making a report:**

**a)** <u>**FIVE working days after**</u> the 11.13.2015 email from SWATI KALE for "progress" – on NOVEMBER 20, 2015 **SWATI KALE stood over her desk, beating her fist, yelling at the Plaintiff for over an hour** – <u>while a crowd of EHS employees listened from the hallway and did nothing.</u> (**Plaintiff never yelled or even yelled back at anyone at work, "on the clock", ever.**)

    1. Plaintiff thinks it is ironic that the Defendants put a female (work visa manipulation?) in the position to be the one to retaliate in 2015-2016 against the Plaintiff, while the "churchy" man that Plaintiff has known since the days of PTTS sat by as the witness not wanting to be there. And each witness statement listed with their names slandered the Plaintiff.

**b)** The 11.20.2015 meeting was witnessed by JOHN R. FIELDS.

(The IRONY is they were all probably afraid for THEIR "jobs", including SWATI KALE, all the way back to 1995

and VP GASTON's decision to give the Plaintiff a PAY
CUT for accepting that Apprenticeship.)

(Maybe JOB applications ought not list male/female.)

**c)** <u>Plaintiff submitted a written complaint to the
Defendants 12.01.2015 about 11.20.2015.</u>

**d)** **The 03.04.2016 EEOC Amended Response from the
Defendants reads that the <u>investigators listened to an
audio of the 11.20.2015 meeting on JANUARY 4, 2016.</u>**

**e)** **JANUARY 21, 2016** VP STRAWSER (who <u>was</u> over HR and
EHS until 08.01.2016) issued the "final" determination
of the Plaintiff's 12.01.2015 COMPLAINT to TAMU HR PPR
as:

> The investigative authority found: "that there is no evidence to support Ms. O's allegation that Ms. Kale's attitude and Ms. Kale asking Ms. O to abide by her 8:00 a.m. to 5:00 p.m. schedule were retaliatory actions taken against Ms. O for her previously filing complaints of discrimination.
>
> I have carefully reviewed and considered your complaint and the investigation report with exhibits and agree with the investigative authority's findings. Any appeal of this decision must be in accordance with A&M System Regulation 08.01.01, *Civil Rights Compliance*, subsection, 4.5.1.
>
> Sincerely,
>
> Dr. Jerry R. Strawser
> Executive Vice President and Chief Financial Officer

**f)** <u>**NINE working days after**</u> the 11.13.2015 "WORK PROGRESS" email from SWATI KALE, the Plaintiff received another email from SWATI KALE the morning of 12.04.2015, (NO MENTION OF THE WITNESS) and was issued a "CORRECTIVE ACTION" document for "being behind on inspections", no specifics.

> **From:** Kale, Swati G
> **Sent:** Friday, December 04, 2015 9:15 AM
> **To:** O, Kamme <kammeo@tamu.edu>
> **Subject:** Meeting today at 11:00
>
> Kamme O,
>
> I would like to meet with you at 11am today in my office.
>
> Thanks,
>
> *Swati*
> Swati Kale | OS&H Inspector Supervisor
> Environmental Health and Safety | Texas A&M University
> 4472 TAMU | College Station, TX 77843-4472
>
> ph: 979.845.7067 | fax: 979.845.1348 | swati_17@tamu.edu
> ------------------------
> **It's Time for Texas A&M**

**g)** **Plaintiff was terminated on January 29, 2016 without warning by EHS Director CHRISTINA ROBERSTON, Assistant Director BRADLEY URBANCZYK and Supervisors SWATI KALE and JOHN R. FIELDS, after the office was sent home early off the clock.**

**h)** The witness statements of persons listed on the Defendant list slandered the plaintiff to the EEOC.

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT 4:17-cv-03877

**12-01-2015 Complaint – I DARE YOU. (November 20, 2015 meeting)**

**12-01-2015 Notice of Anonymous Complaint**

December 2, 2015 – Swati Kale approved Vacation Leave @3:46pm for 3:00.

December 4, 2015 – 930am email for 11am meeting – CORRECTIVE ACTION Document. (9

working days after the 11/13 email about PROGRESS/Vacation use available.) Swati Kale insisted

any response be written there in front of her & John Fields.

**12-04-2015 Email Appeal to Strawser.**

**12-07-2015 Complaint – "Ahead or Behind".**



Texas A&M Univ
Environmental Healt
979.845.2132    447
Fire & Life Safety Inspe

March 22, 2013

462- Academic Bldg
377 Houston ST
College Station, TX 77843

An inspection of your facility on Mar 22, 2013 revealed the discrepan

Please address all items on this report with the appropriate personne
taken.

| Violation Code |
| --- |
| 10.614 (FacSvcs) Fire/Smoke spread: Other |
| Note   Roof Door at the very top of dome is missing;   412, 119A - Floor penetration, conduit not filled. |

Out of Date Shower Tests

1220-1228 Animal Isolation Buildings – 2012
1508 Hobgood – 2013
0969 Bus Operations – 2012
1040 Cardiovascular Pathology Lab – 2013
2944 Center for Food Safety – 2013
0971 Commissary Dining – 2013
0516 Computing Information Systems – 2009
7063 Conservation Research Lab – 2013
0513 Doherty – 2013
1232 Equine Pavilion – 2010
0435 Harrington Education Center Office – 2010
1165 Hazardous Waste Storage – 2013
1297 Heat Transfer Research – 2004
1098 Hyperbaric Research Lab - 2013
0432 Langford Architecture Center – 2009
0740 McNew Lab – 2011
1505 Meat Science and Technology – 2009
7441 Riverside Pump Station – 2013
1095 Nuclear Science Center – 2013
0970 Physical Plant-Grounds Maintenance – 2011
0957 Purchasing and Stores – 2013
1560 Recreational Sports Complex – 2011
0478 Scoates Hall – 2013
0806 Soil Testing Lab – 2013
1904 Texas Center for Preclinical Studies – 2013
0958 Transportation Services – 2013
7090 TTI Safety Division Hangar – 2013
1085 Veterinary Small Animal Hospital – 2013
4050 Waste Water Treatment – 2013
8004 TEEX Waste Water Lab – 2013
8578 Water Lab at Central Utility Plant – 2013
4053 WWTP Disinfection Lab - 2012

> Plaintiff respectfully requests an Attorney from the Court



WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877

## WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF?

### 1. 1992-1955 PARKING TRAFFIC & TRANSIT SERVICES:





| 02/11/94 | Driving Record |
| 02/22/94 | Leave of Absence (.75 hrs. vacation) |
| 02/23/94 | Memo: Promotion to PSO II |
| 03/01/94 thru 03/02/94 | Leave of Absence (11.75 hrs. sick) |
| 03/11/94 | Office of Cont. Education Certificate |
| 03/17/94 | Certificate: Interpersonal Comm. Skills |

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877

Tuesday, January 25, 1994

# Directions, please



Raun Nohmitza/THE BATTALION

Officer No. 265 of the University Police Department directs cars away from Lubbock Street Monday. Lubbock Street, on the south side of campus, will remain closed through Jan. 28.

Kamme Wilson has been employed with this department as a Parking Services Officer since August 13, 1992.  During her time at PTTS we have been pleased with her performance and will be sorry to lose her if she decides to make a job change.

Ms. Wilson's assertiveness and organizational skills have been tremendously helpful in her job responsibilities.  Her capabilities in working with others contributed to her promotion to Parking Services Officer II (training) late last year.   It is typical for her to act responsibly and conscientiously.

Kamme was very supportive when the leadership of the Parking Services unit changed last November.  She has continued to support new ideas and often offers suggestions to improve our processes.  She is a self-starter and would be an asset to any organization.

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877



To whom it may concern:

I am writing this letter to the Supervising officer(s) of PTTS to express my opinion about one of your employees. Tammy O. has been a familiar face to me over the years I have spent at Texas A&M. Many times I have discussed where I or someone I was with was parking, about to park, etc, and one thing over these meetings has not changed, Tammy's incredibly good attitude toward not only her job, but the people she deals with. This morning, for the first time in a long time, mind you, I ran into Tammy again after trying to leave my truck in a staff lot for 2 or 3 minutes to run an errand (Just for the record I honestly didn't know where a nearby 30 min. or loading zone was!) Anyway, I want to make sure that (for this morning and every other day I have had a run in with Tammy) she is rewarded with a little praise, for being a respectful and just plain friendly person on the job. She is out there conducting herself in a way that you should be proud of.   THANK YOU,
                                    MIKE BROOM '95 THRU

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877

## 2. 1995-1999 TAMU PHYSICAL PLANT:

FAX (409) 845-0051                                              August 24, 1995

Executive
Director
MEMORANDUM

TO:        Dr. Jerry Gaston
           Interim Vice President
           for Finance and Administration

SUBJECT:   Transfers to Lower Pay Classifications

           We have recently completed the selection process for new apprentices to begin training in our Apprenticeship Program on September 1.  We selected two current university employees who are serving in a classification range higher than that of a beginning apprentice.  TAMU PPM 2.2.5 states that in cases such as this, authorization to transfer an employee to a lower classification must be requested by memorandum to the president or his designee for approval.  Accordingly, the following data is submitted.

| Name | Current Classification | Future Classification | Current Pay | Proposed Pay | Funding Source |
|------|------------------------|------------------------|-------------|--------------|----------------|
| Jose Sanchez | 17 | 14 (7.02/hr) | 7.97/hr | 7.50/hr | 270160 |
| Kammie Wilson | 13 | 11 (6.36/hr) | 6.79/hr | 6.58/hr | 270190 |

           Since neither of these selectees possess any appreciable skills not possessed by other selectees, we really can't justify paying them at their current rates, however in fairness to all concerned, I am recommending a pay rate half way between their current rate and that to be received by other new apprentices.

> BEING FEMALE SHE IS A DISTRACTION TO MALE
> EMPLOYEES ON JOB!

**(Where Plaintiff learned "men" are generally geared VISUAL no matter WHO you are or what you do.)**

**Supervisor Remarks:** (Required in all cases. Stress strong and weak points not covered above).

> Kammie is a hard and courteous worker, as is related to me by the people she works with as well as the customers she has worked for. Any weak points of the trainee are not apparent to me at this point.

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877

**OVERALL EVALUATION OF PERFORMANCE**
( ) Outstanding   ( ) Exceeds expectations   ( ) Meets expectations   ( ) Does not meet expectations

Overall Comments: Kamme is doing an excellent job. She is under the supervision of ▓▓▓▓. There is no job that she will not try to tackle. She has a good work attitude and gets along very well with her co-workers.

**EMPLOYEE'S COMMENTS**

**SIGNATURES**
I understand that my signature indicates only that I have read and discussed this performance evaluation with my supervisor. It does not necessarily mean that I agree with the evaluation's contents. I may attach written comments, if desired. Check yes ____ if comments are attached, or check no ✓ if comments are not attached.

| Employee | 2/20/97 | Supervisor | 2-20-97 |
| Date | | Date |



Carpenter Kamme O. Wilson tells Willie Schulz how much it meant to her to have him teach her how to design and build cabinetry. Willie retires from Sam Young's Construction Crew 1 after 15 years.

( ) Outstanding   ( ) Exceeds expectations   (X) Meets expectations   ( ) ▓▓▓▓▓▓▓▓▓▓

**Comments:** Kamme can go only as far as her trainer will allow, however I have not seen a drop in production. All work so far has been completed on a time schedule that is acceptable.

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877

**Evaluation:**

( ) Outstanding   ( x ) Exceeds expectations   ( ) Meets expectations   ( ) Does not meet expectations

**Comments:** Kamme most always gets along with co-workers and customers.  She does not mind helping others and if asked will do other tasks not specific to the trade.

**Evaluation:**

( ) Outstanding   ( x ) Exceeds expectations   ( ) Meets expectations   ( ) Does not meet expectations

**Comments:** As far as her training has lead her, Ms. Wilson understands what she needs to know.  If she needs information she knows where to find the answers and has her job priorities in order.

**OVERALL EVALUATION OF PERFORMANCE**

( ) Outstanding   ( ) Exceeds expectations   ( x ) Meets expectations   ( ) Does not meet expectations

**Overall Comments:** Kamme is a hard worker who gets along well with her trainer and co-workers.  She is a member of the Physical Plant Employee Advisory Council. She carries her end of the load and pays a great deal of attention to details.

## The United States Department of Labor

### Bureau of Apprenticeship and Training
### Certificate of Completion of Apprenticeship

*This is to certify that*

**Kamme Owens Wilson**

*has completed an apprenticeship for the occupation*

**Carpenter**

*under the sponsorship of*

**Texas A&M University - Physical Plant Department**

*in accordance with the basic standards of apprenticeship established by the Secretary of Labor*

Assistant Vice President for Physical Plant

Apprenticeship Supervisor

Supervisor and Acting Apprentice

**August 24, 1998**
Date Completed

Secretary of Labor

Director Bureau of Apprenticeship and Training

WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?  4:17-cv-03877

## 3.  TAMU ENVIRONMENTAL HEALTH & SAFETY 1999-2016:

My 2006 Evaluation Before Meeting with the @TAMU EHS Director in 2007 about #Discrimination Concerns....

### Overall Performance Rating:

☐ Outstanding

☒ Exceeds Expectation

☐ Meets Expectation

☐ Does Not Meet Expectation

Comments or Performance Examples (required for rating of Does Not Meet Expectations):
Kamme O is efficient at scheduling and completing her assigned inspections.  She has met all required deadlines that I have given to her regarding monthly inspections.

**SUPERVISOR'S OVERALL COMMENTS:** ☐ Additional comments are attached
KammeO has shown great interest in furhtering her knowledge and ability to apply the fire codes. She continues to be very meticulous in her inspections and cares about the quality of her work.

#### 1999-2016 Overall Evaluations:
Volunteered to draw cartoons for Safety Dispatch Newsletter. (2006-2010)

| | | | |
|---|---|---|---|
| 1999-2000 | Safety Tech I | Exceeds | James Rainer |
| 2000-2001 | Safety Tech I | Exceeds | James Rainer |
| 2001-2002 | Safety Tech I | Exceeds | James Rainer |
| 2002-2003 | Safety Tech II | Exceeds | James Rainer |
| 2003-2004 | Safety Tech II | Exceeds | James Rainer |
| 2004-2005 | Safety Tech II | Exceeds | James Rainer |
| 2005-2006 | Safety Tech II | Exceeds | James Rainer |
| 2006-2007 | Safety Tech II | Exceeds | John Fellers |
| 2007-2008 | Safety Specialist | Meets | John Fellers |
| 2008-2009 | Safety Specialist | Meets | John Fellers |
| 2009-2010 | Safety Specialist | Meets | John Fellers |
| 2010-2011 | Safety Specialist | Meets | Richard Fegan |
| 2011-2012 | Safety Specialist | Exceeds | Richard Fegan |
| 2012-2013 | Safety Specialist | Exceeds | Richard Fegan |
| 2013-2014 | Fire Inspector III | Exceeds | James Rainer |
| 2014-2015 | Fire Inspector III | Achieves | David Zeiger |
| 2015-2016 | Occupational Safety Inspector III | Termination 02-12-2016 | Swati Kale |

1. **Quality of Work:** *Performs assigned duties accurately and thoroughly with only minimal errors. Completes necessary steps that make up their assigned duties.*

☐ Outstanding
☒ Exceeds Expectations
☐ Meets Expectations
☐ Does Not Meet Expectations

Comments or Performance Examples (required for rating of Does Not Meet Expectations):
Kamme O conducts quality, thorough inspections with minimal or no errors.

**WHAT TYPE OF EMPLOYEE WAS THE PLAINTIFF WHILE EMPLOYED AT TAMU?   4:17-cv-03877**

Plaintiff requested her personnel file May of 2015:



Wed 7/29/2015 3:59 PM

**O, Kamme**

**Open Records Request**

To   'tporemba@tamus.edu'

No reply from Trevor:



Thu 8/20/2015 1:56 PM

O, Kamme

RE: Your Public Information Requests (O, Kamme 15-670, 15-671)

To   'Poremba, Trevor'

Trevor,
Thank you for the update.
By the way, it would be much more accurate if you addressed me as either "Ms. O" or "KammeO".
I'm not sure how you came up with "Mr. O" — I assure you that I am female, not male.
It is ironic to be addressed as "Mr. O" after having been written up at TAMU in 1995 for "being female she is a distraction to the male workers".
In the future, you may want to check who you are addressing rather than assume.

Thanks again,
KammeO

Kamme O | Fire Inspector III
1111 Research Parkway, MS 4472, College Station, Texas 77843
Environmental Health and Safety | Texas A&M University
ph: 979.862.4049 | fax: 979.845.1343 | kammeo@tamu.edu
www.tamu.edu

From: Poremba, Trevor [mailto:tporemba@tamus.edu]
Sent: Thursday, August 20, 2015 1:12 PM
To: O, Kamme <kammeo@tamu.edu>
Cc: SO-Open Records <OpenRecords@tamus.edu>; TAMU Open Records <open-records@tamu.edu>
Subject: Your Public Information Requests (O, Kamme 15-670, 15-671)

Mr. O:



**DID YOU KNOW?**

- Your refrigerator should be set at or just below 40°F to keep food safe.

- Texas law requires all children younger than 5 years old and less than 36 inches in height be properly restrained in a child passenger safety seat.

- Texans dump enough trash every two weeks to fill the Astrodome.

- You should run your fan clockwise during the summer and counter-clockwise during the winter.

- Texas Recycles Day is November 15.

**ENTER TO WIN A GREAT FALL PRIZE!** Do you know who invented the first fire extinguisher in 1813? Email your name, phone #, and answer to safetydispatch@tamu.edu, or drop it in campus mail to Safety Dispatch at MS 4472. We will draw for the winner in October.

**WHAT'S WRONG WITH THIS PICTURE?**   Can you spot all the safety violations? Email your answers to safetydispatch@tamu.edu for another chance to win a great prize!

## **PRAYER**

1. For these reasons, Plaintiff asks that the Defendants TAMU, TAMUS, and attached list of Defendants, be cited to appear and answer and, on final trial, that Plaintiff have judgment against Defendants and the Court order relief that includes the following:

1. Declare Defendants' conduct to be in violation of Plaintiff's rights.
2. Award Plaintiff front pay and the value of lost benefits for the period remaining until her normal retirement age.
3. Award Plaintiff back pay and the value of lost benefits up to the date of front pay accrual;
4. Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;
5. Award PLAINTIFF exemplary damages;
6. Award PLAINTIFF medical expenses;
7. Award PLAINTIFF punitive damages;
8. Award PLAINTIFF special and nominal;
9. A written apology.

Respectfully,

Kamme O      aggiecarpentermom@gmail.com 979-575-1091

4:17-cv-03877 PLAINTIFF KAMME O's FIRST UNOPPOSED AMENDED COMPLAINT

4:17-cv-03877

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2018, I mailed via U.S. Postal Service: a copy of

PLAINTIFF KAMME O's UNOPPOSED FIRST AMENDED COMPLAINT to

Counsel for the Defendant as follows:


YVONNE D. BENNETT
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

03877 PRO SE PLAINTIFF: Kamme O