United States Courts
Southern District of Texas
FILED

MAR 11 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAMME O | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION No. |
| | § | 4:17-cv-03877 |
| VS. | § | |
| | § | |
| TEXAS A&M UNIVERSITY, et al., | § | |
| | § | JURY TRIAL DEMAND |
| Defendants. | § | |

---

**PLAINTIFF'S REPLY TO ORDER DKT 43
and DEFENDANT'S ORIGINAL ANSWER DKT 45**

---

TO THE HONORABLE U.S. DISTRICT JUDGE SIM LAKE:

COMES NOW pro se Plaintiff, Kamme O ("KammeO"), complaining of Defendants, TEXAS A&M UNIVERSITY ("TAMU"), et al.,

### REQUEST OF COUNSEL

Plaintiff respectfully continues to request legal assistance from the Court.

DKT 6, ORDER, Denies Plaintiff's motion for appointment at this time and further states:

However, there is no automatic right to the appointment of counsel in a civil case. In determining whether to appoint counsel, the court may consider the merits of the plaintiff's claims, the efforts taken by the plaintiff to obtain counsel and the plaintiff's financial ability to retain counsel.

Gonzalez v. Carlin, 907 F.2d 573, 580 (5th Cir. 1990). The court may also take into account whether the plaintiff is capable of adequately presenting her case. Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982). The court is not required to appoint counsel unless the case presents exceptional circumstances. Branch, 686 F.2d at 266.

**Plaintiff pleads with the Court that she believes her Complaint/Case presents <u>exceptional circumstances</u>, that she is fee waiver approved and has contacted many, many lawyers and legal assistance entities to no avail:**

1.) 23.5 year STATE EMPLOYEE - less than $50,000 year income when she was employed.

2.) While "300 days" is the legal limit of Title VII, the Plaintiff has endured so many more work related situations - she is not sure what is and isn't hostile or discriminating in the perception of law? Choosing correct legal vocabulary is confusing - what to explain, what to re explain, what is already noted, what needs to continue to be explained and in what order and what to title it?

3.) Plaintiff feels she is still in the process of recovering from the verbal assault of SWATI KALE and the fact that no one did anything to stop it. And they filed anonymous complaints to further perpetuate the false statements about the Plaintiff in the witness statements to the EEOC. Since the 2015-2016 experience Plaintiff deals with the depression and anxiety by meditating and staying home. She either cannot sleep or cannot wake up. How to decide anything when even the rules & policies are false?

4.) Plaintiff has difficulty concentrating from the stress in order to communicate clearly AND learn the legal process while

having to relive everything that has happened - on top of what she had already been through 1992-2014. There are so many times Plaintiff didn't say anything because when she did, it only made the work environment worse. Plaintiff changed jobs 3 times at Texas A&M University - every time the experience was related to "being female", so she learned put up with allot. It didn't occur to the Plaintiff until around 2007 that all those jobs had the SAME HUMAN RESOURCES, but by then she had worked for the University so long it didn't make fiscal sense to leave. And why go in debt with a student loan for "education" to do a job she already had, when she wasn't allowed to use the certifications she did earn because she is "female"?

No matter what type of work the Plaintiff can do, she cannot change the fact that her body is female. Texas A&M University only allowed her to stay in the Carpenter Shop and learn to build cabinets with a layout stick because the Plaintiff had a copy of that 1996 "being female" evaluation - TAMU HR said they lost it, "here, sign THIS one". Expected to fail, when she succeeded they increased her workload and the difficulty of the jobs. Plaintiff's evaluations included things like, "We haven't found anything wrong with her yet.."

Ironically, JAMES RAINER hired her 1999 after a dorm fire - to inspect the female dorm rooms unaware that she was the female that had been written up for "being female" and the VP of Physical Plant suddenly became the Interim Director of Human Resources. Guess that pay cut in 1995 was supposed to keep the Plaintiff from accepting the Carpenter Apprenticeship?

5.) With whatever the rules are about financial settlement via a claim against the STATE - Attorneys aren't interested in fighting a case like this one. The Attorney the Plaintiff did hire in 2015 avoided her and totally failed to mention the VERBAL ASSAULT to the TWC/EEOC even though the Plaintiff kept

asking about it but there is a December 2015 Retaliation Complaint to the EEOC.

6.) Texas A&M University and System ought not be able to treat citizens/employees the way the Plaintiff has been treated, especially because it is a STATE University. Based on the Plaintiff's experiences, the policies and rules are mostly advertising, even safety.

7.) Plaintiff's neck still hurts – it's like a reminder to keep going. Ironically funny to have a literal pain in the neck from being employed by the STATE and even more annoying because Plaintiff knows that the 26.5' scrolling iPad application inserted false dates of inspection since 2012 and believes it was an effort to increase the difficulty of the job and limit her "too thorough" inspection reports.

8.) Plaintiff has the evidence – calendars, emails, photos, inspection reports, written complaints, extension letters, "no valid evidence" determination letters, denied Open Records requests, audios, transcription, memories, witnesses – but Plaintiff has no prior legal experience, lives 2 hours from the nearest legal library, is unemployed, fee waiver approved and diabetic.

9.) Plaintiff is a talented artist that painted murals in school instead of having to go to class, beginning 6th grade, ran away from home at 17, quit school for awhile and then returned. She graduated high school but she didn't go to the graduation. <u>Her experience with "education system" has been less than positive</u>.

Plaintiff taught herself to be able read sentences via READER's DIGEST when she stopped smoking 1992-1994; before that she just thought she didn't LIKE to read.

The only graduation the Plaintiff ever attended was the TAMU Carpenter Apprenticeship 1998 – And then 2007 JAMES RAINER

tells her, "She didn't get the interview because she didn't have construction experience". No matter what tests she passed, what certifications she had - Texas A&M University wasn't about to let her promote past an hourly employee and harassed her for years about "time" - but every payroll timesheet approved by her supervisors is timely.

10.) Plaintiff has applied to ACLU and other organizations, contacted Legal Professors, applied for legal assistance… it's a really good thing that the Court has to give DEFENDANTS legal representation or we would all be in jail.

11.) Plaintiff doesn't know how to site the laws in the documents or how to look them up. If it weren't for the internet and the grace of God, she wouldn't have even made it to Court. She barely survived 2015-2016 - it was 2017 before she could lift her head up and look around and wonder what year is this? How did I get here? That's when she started puzzling the documents together to understand WHAT and WHY? And NOW what? (LOL - yes, I am completely sober. BREATHING is the trip.)

12.) Plaintiff apologizes for rambling to the Court - focusing is difficult because ALL of the experiences surface like a Pandora's box of employment nightmares. This case matters because integrity, purpose and do unto others matters.

13.) Could the court please assign someone to coach the Plaintiff on how to research and cite laws and how to do this? No one that lives in Texas with a legal career is going to go against Texas A&M University and System - they are too big. God is bigger, that's how I got here. Plaintiff notices Jesus was the "original wrongful termination" - she requests assistance.

## REPLY TO ORINGINAL ANSWER

1.) Plaintiff strongly objects to the Defendants claim the termination of her employment 2016 was for "legitimate, non-discriminatory and non-retaliatory business reasons."

Plaintiff's 23.5 years of employment ended based on hear-say and defamation of the Plaintiff's character.

2.) Every claim by the Defendants that the Plaintiff yelled is objectively false. Claims against the Plaintiff published within the 31C-2015-01426 TAMU EEOC Response documents, are unprivileged statements that caused financial injury to the Plaintiff.

3.) Defendants are also guilty of defaming the Plaintiff to the Texas Workforce Commission 2016. [EXHIBIT 17, pages 9 & 11 of 14]

4.) Within the audio recording of 11-20-2015 meeting, Plaintiff's supervisor SWATI KALE stood yelling at the Plaintiff while beating her fist on the desk for over an hour, as the witness JOHN R. FIELDS said nothing. SWATI KALE yelled at the Plaintiff "I DARE YOU to file another Complaint with HR!", the audio the Defendants recorded is evidence to this and yet the 01-21-2016 VP Strawser letter avoids addressing this by making the subject about "8:00 to 5:00 schedule" and alleges to the Plaintiff being who was "insubordinate".

5.) December 2015 there were also two "anonymous" complaints filed against the Plaintiff that allege she was heard yelling. Both supervisors and assorted TAMU EHS employees lied in the 66 page TAMU AMENDED RESPONSE to the EEOC, claiming that the Plaintiff yelled at her supervisor, when the opposite is true.

6.) Before the statue of limitations was up, 11-06-2017 Plaintiff sent the 11-20-2015 audio and documentation to the Texas A&M University Police Department via the <u>upd-chiefs@tamu.edu</u> email and asked them to look into if assault charge could occur against SWATI KALE? Plaintiff avoided going to the UPD office because it is located in the same building where her office used to be. Plaintiff still believes what occurred 11-20-2015 is assault, but that it being Texas A&M University, defended by Office of the Attorney General - single female pro se Plaintiff is at a disadvantage for justice.

## 07.01 ETHICS - EXHIBIT 13

1.) Plaintiff notices that Texas A&M University SYSTEM 07.01 Ethics policy only addresses "Board members and system employees" and that there is no "Member Rule Requirement". {EXHIBIT 13 - 07.01 Ethics, Revised 2015, pages 1-3}

2.) Plaintiff located the only mention of ETHICS for Texas A&M University College Station, Texas listed under "07 ETHICS, CONFLICT OF INTEREST - (SAP) 07.01.99.M0.01 Purchasing

Guidelines (05-03-17) and 07.03.01.M1 Political Campaign Events and Partisan Political Activities on Texas A&M University Property. (04-25-2017)

http://rules-saps.tamu.edu/TAMURulesAndSAPs.aspx#07

3.) Since Texas A&M System Policy 07.01 ETHICS speaks only of "Board members and system employees" and lists "A rule is not required to supplement this policy." – And the Defendants claim the Plaintiff was not an employee of SYSTEM. Then Plaintiff's managers and coworkers were also neither "System Employees" nor "Board members". And there appears to be no rule of ETHICS for "Member – Texas A&M University College Station, Texas" other than Purchasing and Political Events…?

4.) The lack of a rule for ETHICS would imply the Aggie Code of Honor of "doesn't lie, cheat or steal" has no integrity concerning "members", that's ironic if employees aren't considered AGGIES.

5.) Plaintiff finds this all very depressing, but it explains how the people she worked with were able to ignore policies and laws for such a long time, ultimately conspiring against her.

6.) If 07.01 Ethics <u>do</u> relate to Texas A&M University Members/Employees, then Plaintiff contends that the Defendants failed to adhere to 07.01.01 PRINCIPLES OF ETHICAL CONDUCT, 07.01.02 CODE OF ETHICAL CONDUCT: a, b, d, k, l.

### HOSTILE WORK ENVIRONMENT?

1.) Plaintiff questions the Court, since she did not yell - and the 11-20-2015 audio [DKT 31, 12A & 12B] is evidence of this fact - would the audio & numerous methods of defamation of the Plaintiff's character and the coworkers creating 12/2015 anonymous complaints, that are also false, be considered hostile? 15+/- written complaints that were returned to the Plaintiff as "no valid evidence" or that incorrectly blamed the Plaintiff; would these items be considered proof of a hostile work environment by the Defendant against the Plaintiff?

While also Plaintiff's first report of injury was back-dated by the EHS department's HR liaison SUSAN KARLI 04-01-2015 to be October 2014 and FMLA was not offered within 5 days as the rules require? But FMLA was offered 4 separate instances beginning JUNE 26, 2015. The letter denying FMLA was already created before the Plaintiff denied signing any FMLA application. [31.03.05.05.02 http://policies.tamus.edu/31-03-05.pdf]

2.) There's also how the restructure of the TAMU EHS department failed to be communicated. The unanswered questions affecting the Plaintiff's job position. How it was October 2015 before she was officially notified of the "OCCUPATIONAL SAFETY INSPECTOR III" position title and it actually be documented

like all the previous position title changes 1992-2013 had been documented.

3.) September 1st, 2nd and 3rd Plaintiff's position title on the TAMU SSO had reverted back to "FIRE SAFETY INSPECTOR III".

4.) There were only 2 meetings with the "inspectors" 2015-2016, why restructure when everyone continued to do the job they always did?

5.) Why so many "required" Human Resources trainings – that no record or credit was then added to the employee's online SSO training profiles? **For the Plaintiff, those trainings were about how she was being treated, while nothing was being done to make it stop.**

6.) If irony were icing on a cake, the Open Records letter to the OAG dated May 21, 2015 from the Defendant refers to the Plaintiff as "Mr. O" – on Texas A&M University letterhead no less.

7.) So much happened to the Plaintiff, especially in May 2015, that it felt like an attack that continued until they finally walked in and told her she was terminated for "work performance", no other explanation.

8.) <u>Termination effective February 12, 2016 = exactly 297 days after the announcement of the "RESTRUCTURE" April 21, 2015</u> of Texas A&M University's Environmental Health & Safety Department – the Plaintiff's direct employer since September 27, 1999.

9.) The Plaintiff's employment experience of 2014-2016 certainly FELT hostile - still does. The more the Plaintiff puzzles the timeline together, the more there is that is wrong with what was happening, so much at once over a period of months, but Plaintiff doesn't know all the laws - she keeps noticing more was wrong at TAMU each time she attempts to learn case law.

10.) Also the 01-29-2016 employment termination occurred 47 business days after the Plaintiff submitted the Complaint dated 11-09-2015 to TAMU HR PPR via email on 11-10-2015; a Complaint about the <u>male inspectors also supervised by SWATI KALE were years behind on the inspections of the eyewash showers</u> on Texas A&M University College Station, Texas campus. To the Plaintiff's knowledge, no male inspectors had been suspended from being able to request vacation leave.

11.) Defendants denied OPEN RECORDS requests for the investigation that took 96 days - instead of "15 business days with a 15 day extension" failing to follow policy that's included in the EEOC Response 31C-2015-01426.

12.) Defendants also denied the OPEN RECORDS request for the 11-20-2015 audio.

13.) These OPEN RECORDS requests go back & forth from Texas A&M University System and the Office of the Attorney General and ultimately denied the Plaintiff access, but there is mention of

the 15+/- Complaints and assorted names and titles. Perhaps the Court can understand it all better than the pro se Plaintiff?

### APOLOGY TO THE COURT

Plaintiff regrets that she has no idea what she is doing as far as writing legal documents and the process and she doesn't know who to ask for help that would take any of this on? She's written more than she bothers the court with - trouble remembering what has already been explained - please refer to the enclosed copy of the 2015-calendar as a timeline even though not everything is listed - it serves as a visible reference of the timing.

Plaintiff submitted 15+/- Complaints to her employer, not to be a bother but because she wanted what was happening documented. Plaintiff has copies of the Complaints she submitted.

That 11-20-2015 audio and all the efforts the Defendant did to ignore what happened, while also using it as a weapon against the Plaintiff speaks volumes.

### PRAYER

For these reasons, Plaintiff asks that the Defendants be cited to appear and answer and, on final trial, that Plaintiff have judgment against Defendants and the Court order relief that includes the following:

Declare Defendants' conduct to be in violation of Plaintiff's rights.

Enjoin the Defendants from engaging in such conduct.

Award Plaintiff front pay and the value of lost benefits for the period remaining until her normal retirement age.

Award Plaintiff back pay and the value of lost benefits up to the date of front pay accrual;

Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

Award PLAINTIFF exemplary damages - DEFENDANT(s) acted with malice.

Award PLAINTIFF medical expenses;

Award PLAINTIFF punitive damages;

Award PLAINTIFF special and nominal

Respectfully,

_____
Kamme, O            aggiecarpentermom@gmail.com   979.575.1091

**CERTIFICATE OF SERVICE**

I hereby certify that on or before 03-07-2019, Plaintiff emailed a copy of this document to:

YVONNE D. BENNETT
Yvonne.bennett@oag.texas.gov
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
Pro se Plaintiff: Kamme O