# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAMME O, *Plaintiff,* | § § § § | |
| vs. | § § | Civil Action No.: 4:17-cv-03877 |
| TEXAS A&M UNIVERSITY *Defendant.* | § § § | |

## DECLARATION OF SWATI KALE

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF HARRIS | § |

I, Swati Kale, declare the following:

1. My name is Swati Kale and I am of sound mind, over the age of eighteen years, have never been convicted of a felony or crime involving moral turpitude, am capable of making this Declaration, have personal knowledge of the matters contained in this Declaration and they are true and correct.

2. I am employed as an Assistant Manager for Laboratory Safety with the Environmental Health & Safety Department at Texas A&M University (TAMU), a position I have held since June 2019.

3. Prior to that I was an Occupational Safety & Health Inspector Supervisor and one of my direct reports was Plaintiff Kamme O.

4. Ms. O was hired at TAMU on August 13, 1992 and transferred to Environmental Health & Safety on September 27, 1999.

5. Ms. O's job title at the time of her termination in 2016 was Occupational Safety & Health Inspector III. Ms. O was responsible for conducting building inspections for fire and life safety and preparing and completing fire and life safety inspection reports.

6. I began supervising Ms. O in May 2015 and almost immediately observed that she consistently exhibited poor job performance. Ms. O failed to complete monthly assignments, she was argumentative, and she failed to adhere to my direction.

7. On June 30, 2015, a meeting was held with all inspectors, during which they were informed that job performance would be measured every 30 days beginning July 1, 2015. On July 17, 2015, I held a pre-evaluation meeting with Ms. O to discuss pending inspection assignments. At this time, I asked Ms. O to provide a status of pending assignments and proposed schedule for inspections.

8. I conducted additional monthly performance evaluations with Ms. O on August 10, 2015; September 17, 2015; October 21, 2015; November 20, 2015; and January 19, 2016.

9. On October 21, 2015, I issued Ms. O a memorandum setting forth TAMU's expectations for acceptable job performance. In the memorandum I noted that I had already spoken with Ms. O regarding deficiencies in the quantity of work completed, which continued to have a negative impact in the office. I informed Ms. O that I expected her to complete her assigned inspections, submit timely reports, work from 8:00 a.m. to 5:00 p.m., use her official title for all business matters, and provide a reason for absences other than sick leave. I stated that the list of expectations would be reviewed periodically. A true and correct copy of my memorandum dated October 21, 2015 is attached as **Exhibit B-1**.

10. During each performance evaluation meeting I held with Ms. O, she was very disrespectful towards me. Ms. O would yell at me during these meetings, creating a disruption in the work environment. During the November 20, 2015, meeting, Ms. O behaved so unprofessionally that two anonymous reports were filed through the EthicsPoint Hotline concerning Ms. O's conduct. One reporter stated that Ms. O "has created an extremely hostile work environment" and she "was heard throughout the Department yelling extremely loudly at her supervisor." A true and correct copy of the Hotline Web page report opened November 20, 2015 is attached as **Exhibit B-2**. These allegations were investigated and upheld. A true and correct copy of the final decision regarding the merits of the complaint is attached as **Exhibit B-3**.

11. On December 4, 2015 I issued Ms. O a Personnel Corrective Action Template to address her continued failure to meet her inspection schedule. The action plan stated, among other things, that Ms. O was to complete the assigned building inspections. The action plan also stated that Ms. O's work hours were 8am to 5pm unless changes were approved by me, her supervisor. A true and correct copy of the Personnel Corrective Action Plan is attached as **Exhibit B-4.**

12. On January 19, 2016, during the final performance evaluation meeting before Ms. O's termination, Ms. O became so argumentative and disrespectful that I was forced to suspend the meeting until later that afternoon. However, my attempt to reconvene the meeting met with the same unprofessional behavior by Ms. O and I dismissed the meeting.

13. Completely frustrated with Ms. O's unprofessional behavior and having lost all confidence in her willingness to complete her job assignments, I met with my direct supervisor, Brad Urbanczyk and discussed Ms. O's conduct. Together we contacted the Employee Relations Department and discussed the fact that Ms. O had failed to comply with her Expectations Memorandum and her Personnel Corrective Action Template.

14. A collective decision was made after reviewing the documentation to proceed with a Request for Approval for Termination of Employment memorandum.

15. On January 25, 2016, I prepared a memorandum for Christina Robertson, Director of Environmental Health and Safety, requesting approval to terminate Ms. O's employment because of her unacceptable job performance. *See* **Exhibit A-1**.

16. Ms. Robertson approved the request to terminate Ms. O's employment and we both signed a termination letter for Ms. O. which was hand delivered to her on January 29, 2016 by myself, Ms. Robertson, and Mr. Urbanczyk. *See* **Exhibit A-2**.

17. I deny any allegation that Ms. O was terminated because of her gender, religion, or in retaliation for her administrative complaint of employment discrimination filed with the EEOC in June 2015. My request to terminate Ms. O's employment was made in good faith and based solely on information, observation, and evidence of Ms. O's unacceptable job performance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th day of July, 2019.

*Swati Kale*
Swati Kale

# EXHIBIT B-1

DIVISION OF FINANCE AND ADMINISTRATION
ENVIRONMENTAL HEALTH & SAFETY

**TEXAS A&M UNIVERSITY**

**Memorandum**

Date: 10/21/2015

**TO:** Kamme O
Occupational Safety & Health Inspector III

**THROUGH:** Brad Urbanczyk
Assistant Director

**FROM:** Swati Kale
Occupational Safety & Health Inspector Supervisor

**SUBJECT:** Performance expectations.

This memorandum is written to clarify department expectations regarding your performance and other work related issues. I am providing this list of expectations which will be reviewed periodically with you.

I have spoken with you regarding deficiencies in the quantity of work completed, especially in relation to inspection assignments. Your failure to complete assignments in a timely manner continues to have a negative impact in our office. When you do not complete work as scheduled, departmental obligations to our customers and staff are not adequately being met. Accordingly, my expectations and other comments follow:

You are expected to:
- Follow the attached assignment schedule for performing inspections, documenting reports in Fire House, and completing reports for final submission.
- Reports are expected to be completed timely using the resources provided.
- You must arrive at 8 am and leave at 5 pm daily as you have not requested a flexible work schedule. Any variation to your hourly work schedule requires prior approval by your Supervisor.
- Use your job title of Occupational Safety & Health Inspector III for all business matters.
- Leave requested other than sick leave requires a reason of absence for that leave. Such leave can also only be used for sick leave once all sick leave is exhausted.

We will review your efforts to meet the department's expectations periodically and as the need may arise.

These performance standards are offered to assist you in meeting acceptable levels of performance. Your job performance is subject to all applicable rules and regulations of this department, Texas A&M University, and the Texas A&M University System. Your failure to meet any expectation listed above or your failure to meet the requirements of established regulations may subject you to disciplinary action, up to and including termination.

1111 Research Parkway
4472 TAMU
College Station, TX 77843

Tel. 979.845.2132 Fax. 979.845.1348
https://ehsd.tamu.edu

DIVISION OF FINANCE AND ADMINISTRATION
ENVIRONMENTAL HEALTH & SAFETY



You are encouraged to contact the Texas A&M Employee Assistance Program at 979-845-3711 if you feel a personal problem is contributing to these performance issues.

Please do not hesitate to contact me if you have questions pertaining to these or any other job expectations.

I have received a copy of this document and I understand that I have the opportunity to address the contents in writing and/or otherwise:

_____   /  10-21-2015
Employee Signature                   Date

\* RESPONSE LETTER TO FOLLOW.

1111 Research Parkway
4472 TAMU
College Station, TX 77843

Tel. 979.845.2132 Fax. 979.845.1348
https://ehsd.tamu.edu

TAMU-000802

# EXHIBIT B-2

**Case: 47 - Hotline Web**
**Texas A&M University (TAMU)**
**Human Resources**

## Case Snapshot

**Opened:** 11/20/2015
**Days open:** Less than 24 hours
**Last modified:** 11/20/2015 3:35 PM
**Intake method:** Hotline Web
**Status:** In Process
**Alert:** Green

## Case Details

**Reported tier information**

**Case type:** Allegation

**Intake method:** Hotline Web

**Location**

**Location/Address:** Texas A&M University at College Station
Environmental Health and Safety Department

**City:** College Station

**State/province:** TX

**ZIP/postal code:** 77845

**Reporter contact information**

**Reporter anonymous:** Yes

**Case Information**

**Relationship to Institution:** Employee (management, staff, full-time & part-time)

**Please identify the person(s) involved:** Kamme O

**How long do you think this problem has been going on?** Don't know

**Details:** This individual has created an extremely hostile work environment for the Department. There have been several cases where this person has created a culture of hostility. This person was heard throughout the Department yelling extremely loudly at her supervisor. As an employee I was unable to conduct work while this person made such a scene.

https://tamus.ethicspointvp.com/case.aspx?command=submit&fromOptionsPage=yes&ca...   11/20/2015

TAMU-000825

**DIVISION OF FINANCE AND ADMINISTRATION** EXHIBIT B-3

OFFICE OF THE VICE PRESIDENT FOR FINANCE AND ADMINISTRATION
AND CHIEF FINANCIAL OFFICER



Jerry R. Strawser
Vice President and Chief Financial Officer

11 January 2016

Dr. Anna Satterfield
Director, Employee Support Services
1255 TAMU
College Station, Texas 77843-1255

Dear Dr. Satterfield:

I received the complaint and appeal documents related to the anonymous allegations of creation of a hostile work environment against Ms. Kamme O. These documents were provided by your office in accordance with 32.01.02 *Complaint and Appeal Process for Nonfaculty Employees*.

Having carefully reviewed the documentation, I conclude that the allegation that Ms. O disrupted the work environment and acted in an unprofessional manner towards her supervisor during the November 20, 2015 meeting and on other occasions is with merit and credible evidence. Therefore, this portion of the complaint is upheld.

I further conclude that the allegation that Ms. O is difficult to work with because she constantly questions the Director's decisions and brings up inappropriate personal experiences is not supported by the evidence provided for this investigation. Therefore, this portion of the complaint is dismissed.

Pursuant to **University Rule 32.01.02.M1** this will be the final decision regarding the merits of the complaint.

Sincerely,

Dr. Jerry R. Strawser
Vice President and Chief Financial Officer

Copies: Kamme O
Swati Kale
Christina Robertson

Jack K. Williams Administration Building, Suite 202
1181 TAMU
College Station, TX 77843-1181

Tel 979.862.7777  Fax 979.862-7778
www.finance.tamu.edu

# EXHIBIT B-4



**HUMAN RESOURCES**
TEXAS A&M UNIVERSITY

## Personnel Corrective Action Template

**INSTRUCTIONS** This template is a guide to help supervisors prepare for, conduct, and document the discussion with employee of the corrective action plan established to address job performance or conduct problems. This action is taken in accordance with University SAP 32.02.02.M0.02. When acknowledged by employee signature, this document stands as a record of the discussion. No additional documentation is necessary.

### I. Employee Information

| Name | Kamme O | Title | Occupational Safety and Health Inspector III |
|---|---|---|---|
| UIN | 801005252 | Work Unit | |
| Department | Environmental Health and Safety | | |

### II. Background

Previous communications with employee about this issue [Date(s) and Topics(s)]:
- Kamme O has been provided 30 day evaluations with supervisor beginning in July 2015.
- Monthly inspection assignments have been communicated via emails

*WITNESSES HAVE ALMOST ALWAYS BEEN UNANNOUNCED TO KAMMEO* (handwritten)

### III. Specific Information

**Expected Job Performance:** Kamme is expected to complete assigned building inspections which are assigned to her. Inspections are completed by inspecting the facility, preparing and sending the reports to her supervisor for review. Once the inspection is reviewed and approved by her supervisor, she is expected to send the report out to the facility contact.

Kamme is expected to arrive to work at 8am and leave at 5pm, unless expressly authorized by the supervisor to alter this work schedule.

**Employee response:** (handwritten)
EMPLOYEE EXPECTS A REASONABLE AMOUNT OF BUILDINGS TO INSPECT AND A COMPUTER PROGRAM THAT IS DEPENDABLE. ALSO ERGONOMICS OF THE IPAD IS AN ISSUE FOR MY NECK - IS VERY UNCOMFORTABLE
SSO STILL THINKS KAMMEO WORKS 830-530

**Actual Job Performance:** Kamme has not completed her monthly assigned inspections. As of ~~June~~ December – S.K. 2015 there are 32 pending inspections that have not been completed. The lack of completing monthly inspections continues to put building inspections behind schedule.

Kamme continues to stay at work after 5:00 p.m. without prior supervisor approval.

**Employee response:** (handwritten)
KAMMEO HAS BEEN SHUTTING DOWN & LEAVING @ 5 — OUT THE DOOR AS I AM PACKED UP
SUBMITTED JULY VACATION IN APRIL — JULY INSPECTION LIST ALMOST 4 TIMES PREVIOUS YEARS JULY. JUNE 30TH MEETING BRAD URBANCZYK SAID WE WOULD BE CUTTING BACK ON THE INSPECTIONS — THAT WAS NOT MY EXPERIENCE. I SAID IT WAS MORE THAN I COULD DO BACK IN JUNE FOR JULY. THE ADDITIONS →

**Organizational effects of actual performance:** The lack of productivity and failure to complete assignments each month continues to place building inspections further behind schedule and disrupts the entire yearly inspection schedule.

Pending inspections will need to be reassigned thus increasing the workload of other inspectors. Buildings are required to be inspected on an annual basis for fire and life safety to protect occupants of the building and keep the buildings free of fire hazards.

**Employee response:** (handwritten)
JORGE GARZA'S 2013 BUILDINGS WERE ALREADY ADDED TO MINE - EHS IS BEHIND →

Personnel Corrective Action Template
#705

revised 03/29/2013
Page 1 of 3

MANY ARE BEHIND FROM 2013 JORGE GARZA.
THE COMMUNICATION OF WHAT TO DO & WHEN HAS BEEN CONFUSING AND OVERLOADED.
GIVEN THE HOSTILE RESTRUCTURE APRIL - JULY THERE WERE MANY UNANSWERED
QUESTIONS — NOTHING BUT MORE ASSIGNMENTS THAN COULD BE ACCOMPLISHED —
GIVEN THE ENVIRONMENT — IT HAS BEEN ALL VERY OVERWHELMING.

ON BUILDING INSPECTIONS BEFORE ME/THIS. FIREHOUSE DOESN'T WORK - IS TEDIOUS
HAS NOT BEEN DEPENDABLE OR 100% FUNCTIONAL SINCE DATE 2012.
2012 — FEB 2015 FIREHOUSE APP HAD 26.5 FEET TO SCROLL THRU TO ENTER
A REPORT. =NECK INJURY FROM STRAIN OF OVER USE, BAD ERGONOMICS
KAMMEC EMAILED RICHARD ELAN. JAMES RINER & CHRISTINA ROBERTSON OFTEN
ABOUT FIREHOUSE PROBLEMS AND WAS IGNORED. (EYEWASH INSPECTIONS @ SBL
                                              RE4D 2010, 2012.)

|  |
|--|
|  |

| Individual effects of continued inappropriate job-related conduct or job performance: **Jeopardizes merit raises or promotions and may result in further corrective action or in disciplinary action up to and including termination.** |
|---|

| Other factors to consider in evaluating this issue: | | | |
|---|---|---|---|
| ☒ Length of service | ☒ Overall work record | ☒ Skill level or training | |
| ☒ Changes to work environment | ☐ Recent discussions about this or other issues | | |
| ☐ Need to consult with others | | | |

| Impact of these factors on my decision: Kamme O's length of service and experience as an inspector should assist her in completing the assigned inspections in a timely manner. *Kammeo's length of service should have included her in communications about the EHS restructure and the title change. — Not to mention the →* |
|---|

| Corrective Action Plan: |
|---|
| Kamme is expected to complete the assigned inspections, prepare report and send it to her supervisor for review by the end of the assigned month. Immediately after the reports are approved they should be sent to appropriate inspection contacts. We will evaluate the inspections in January 8, 2016. *I also update contact info, out of date eyewash station and any other safety related item + notice.* Kamme is expected to arrive at 8am and leave at 5pm unless prior approval is given by her supervisor. |

### IV. Key questions asked during the corrective action meeting (Y/N)

| Y | N | Do you understand the requirements of the action plan? *I understand I am only responsible —* |
|---|---|---|
| Y | N | Can you meet the requirements of the action plan? *If it is what it is, yes.* |
| Y | N | Do you agree to meet the requirements of the action plan? *To the best of my ability yes.* |

If you feel a personal problem is contributing to this job-related conduct or job performance issue, you are encouraged to contact the Texas A&M Employee Assistance Program at (979) 845-3711.

### V. Signatures

| Supervisor Name | Supervisor Signature: |
|---|---|
| Swati Kale | |
| Date 12/04/2015 | *[signed] Skal* |
| Next Higher Level Supervisor Name | Next Higher Level Supervisor Signature: |
| Brad Urbanczyk | *[signed] Bradby Urbanczyk* |
| Date: 12/04/15 | |

### VI. Acknowledgments for receipt of a copy of this document

Personnel Corrective Action Template
#705

revised 03/29/2013
Page 2 of 3

OVERALL LACK OF COMMUNICATION ABOUT THE JOB, JOB EXPERIENCE, OR WHAT IT TAKES TO DO THE JOB WAS NOT ASKED OF KAMMER. JUST A LIST OF BUILDINGS EMAILED LIKE "HERE, IT'S LISTED, JUST DO IT." THE PEOPLE CREATING THE LISTS HAVE NOT DONE THE JOB. NOR DOES EHS INCLUDED KAMMER IN THE OVERALL DISCUSSIONS OF THE FIRE INSPECTIONS OR FIREHOUSE — WHEN KAMMER HAS 16 YEARS EXPERIENCE WITH CAMPUS BUILDING INSPECTIONS AND HAS WORKED WITH FIREHOUSE SINCE IT'S IMPLEMENTATION 2012.

OVERALL WORK RECORD — LEFT OUT OF LEARNING OPPORTUNITIES FOR YEARS & YEARS EVEN AFTER EXPRESSING INTREST OVER & OVER. 10 YRS OF CERTIFICATION PYRO/FLAME EFFECTS & NEVER TRAINED TO FILL OUT A BURN PERMIT. CONSTRUCTION & DRAFTING EXPERIENCE PREVIOUS TO EHS YET EVEN THOU MY FIRE INSPECTOR III POSITION DESCRIPTION READ THAT THESE THINGS & OTHERS WERE MY POSITION DUTIES — I WAS NOT ALLOWED TO LEARN OR PERFORM THE JOB. NOW EHS MOVES, RELOCATED RETITLED & OVERLOADS KAMMER TO TRY AND EITHER FIRE HER OR MAKE HER QUIT.

— FOR THE BUILDINGS LISTED ON THE CALENDAR LIST 11/21 – 12/20.

| Employee Name | Employee Signature |
|---|---|
| Kamme O <br> Date: 12-04-2015 | |
| Witness Name | Witness Signature |
| Date: 12-4-2015 | |

**Distribution:**
Original to Employee's Official Personnel Records
Copy to Employee
Copy to Supervisor

**NEED HELP?**
Employee Relations Office
Phone (979) 862-4027
Employee-relations@tamu.edu

Personnel Corrective Action Template
#705

revised 03/29/2013
Page 3 of 3

TAMU-000863